UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

| | |
|---|---|
| DANIEL WEST, on behalf of himself and all others similarly situated, | Civil Action No. 21-cv-5382 |
| Plaintiff, | |
| -against- | **CLASS AND COLLECTIVE ACTION COMPLAINT** |
| LASERSHIP, INC., SO SURE TRANSPORTS, INC., and UNKNOWN SUBCONTRACTOR COMPANIES A, B, and C, | **JURY TRIAL DEMANDED** |
| Defendants. | |

------------------------------------------------------------x

Plaintiff Daniel West ("Plaintiff"), on behalf of himself and all others similarly situated, alleges as follows:

## PRELIMINARY STATEMENT

1. Plaintiff Daniel West seeks to represent a New York State-wide Rule 23 Class and Fair Labor Standards Act ("FLSA") Collective consisting of delivery drivers who worked for Defendant LaserShip and one or more of its subcontractors (identified here as So Sure Transports, Inc., and Unknown Subcontractor Companies A, B, and C).

2. For approximately one and a half years, Plaintiff was jointly employed by Defendants LaserShip, Inc. ("LaserShip") and So Sure Transports, Inc. ("So Sure"), as a delivery driver. He was responsible for delivering packages to customers on a pre-determined route in and around Westchester County, New York. Misclassified as an "independent contractor," Mr. West spent the entirety of his employment working 48- and 50-hour weeks for less than the New York State minimum wage and without receiving overtime premiums for hours worked in excess of 40 in a week.

3. Defendant LaserShip, a "last mile" courier company that structures itself as a "sharing economy service" for online retailers like Amazon, fundamentally relies on the work of drivers like Plaintiff and the proposed class and collective to carry out the crux of its business model. LaserShip obtains these drivers by hiring them directly and by contracting with companies like So Sure and Unknown Subcontractor Companies A, B, and C (together with So Sure, "the Subcontractor Defendants") who, alongside LaserShip, jointly employ the drivers. On information and belief, these Subcontractor Defendants function as interchangeable "strawmen" to insulate LaserShip from liability for its wage and hour violations.

4. This action is brought to recover unpaid minimum and overtime wages owed to Plaintiff and others similarly situated employees of Defendants, as well as attorneys' fees, costs, liquidated damages, and injunctive and declaratory relief against Defendants' unlawful actions.

5. Plaintiff brings this action on behalf of himself and all similarly situated current and former employees pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and specifically the collective action provision of the FLSA, 20 U.S.C. § 216(b), to remedy violations of the wage and hour provisions of the FLSA by Defendants that have deprived Plaintiff and others similarly situated of their lawful wages.

6. Plaintiff also brings this action on behalf of himself and a class of similarly situated current and former employees of Defendants, pursuant to Fed. R. Civ. P. 23, for violations of New York Labor Law ("NYLL") §§ 190 *et seq.*

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. In

addition, the Court has jurisdiction over Plaintiff's federal claims under the FLSA pursuant to 29 U.S.C. § 216(b).

8. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(1), as Defendants conduct business in this district to a sufficient degree to be considered residents of this district under 28 U.S.C. § 1391(d).

9. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

### Daniel West

10. Plaintiff Daniel West is an adult individual residing in Port Chester, New York.

11. At all times relevant to this Complaint, Defendants LaserShip and So Sure jointly employed Plaintiff as a delivery driver based out of LaserShip's regional warehouse at 10 Midland Ave., Port Chester, NY 10573.

### LaserShip, Inc.

12. Defendant LaserShip, Inc. ("LaserShip"), is a Delaware corporation with its headquarters located at 1912 Woodford Road, Vienna, Virginia 22182.

13. LaserShip transacts business in the State of New York.

14. On information and belief, LaserShip operates at least 10 warehouses in the State of New York substantially similar to the warehouse where Plaintiff's employment was based.

### So Sure Transports, Inc.

15. Defendant So Sure Transports, Inc. ("So Sure"), is a New York corporation with its headquarters and principal place of business in New York.

3

16. On information and belief, So Sure operates out of two residential buildings located at 35-05 191st St., Apt. 5A, Flushing, NY 11358, and 24026 70th Ave., Apt. 1, Little Neck, NY 11362.

17. On information and belief, So Sure employs no more than 6 people (exclusive of delivery drivers like Plaintiff, who Defendants misclassify as "independent contractors").

18. On information and belief, So Sure contracts with LaserShip for the purpose of jointly employing and supervising delivery drivers in the State of New York. These delivery drivers perform delivery services in the name of, and for the primary benefit of, LaserShip.

<u>Unknown Subcontractor Companies A, B, and C</u>

19. On information and belief, based on public records and court filings, Unknown Subcontractor Companies A, B, and C are corporations which, like Defendant So Sure, contract with LaserShip for the purpose of jointly employing and supervising delivery drivers in the State of New York (collectively, with So Sure, "the Subcontractor Defendants"). These delivery drivers perform delivery services in the name of, and for the primary benefit of, LaserShip.

20. Although the precise number of such companies is presently unknown to Plaintiff, and calculation of such numbers would require facts in the sole control of Defendant LaserShip, upon information and belief, there are at least two such corporations who have conducted business in the State of New York during the limitations period.

21. At all times relevant to this Complaint, Plaintiff and other members of the putative class and collective were employed by Defendant LaserShip and one or more Subcontractor Defendants within the meaning of the FLSA, 29 U.S.C. § 203(e), and NYLL § 190(2).

## CLASS ALLEGATIONS

### FLSA Collective Action

22.     Plaintiff brings his FLSA minimum wage and overtime claims on behalf of himself and all similarly situated persons who have worked for LaserShip and one or more Subcontractor Defendants performing delivery driver services in the State of New York from June 17, 2018, until the date Defendants cease, or are enjoined from, violating the FLSA ("FLSA Collective").

23.     Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff, and as such, notice should be sent to the FLSA Collective.

### Rule 23 Class Action

24.     Plaintiff brings his New York Labor Law minimum wage, overtime, and § 195 claims on behalf of himself and a class of persons under Rule 23 of the Federal Rules of Civil Procedure consisting of all delivery drivers employed by LaserShip and one or more Subcontractor Defendants in the State of New York from June 17, 2015, until the date Defendants cease, or are enjoined from, violating the NYLL ("Rule 23 Class").

25.     The persons in the class identified above are so numerous that joinder of all members is impracticable. Although the precise number of such persons is presently unknown to Plaintiff, and calculation of such numbers would require facts in the sole control of Defendant, upon information and belief, there are more than 100 members of the class during the class period. This calculation is based on information and belief that LaserShip operates at least 10 warehouses in New York State, each one estimated to employ at least 10-12 delivery drivers.

26.     The claims of Plaintiff are typical of the claims of the Rule 23 Class.

27.     Plaintiff will fairly and adequately protect the interests of the Rule 23 Class.

28. A class action is superior to other available methods for the fair and efficient adjudication of the controversy—particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants. The members of the Rule 23 Class have been damaged and are entitled to recovery as a result of Defendants' common and uniform policies, practices and procedures. Although the relative damages suffered by individual class members are not *de minimus*, such damages are small compared to the expense and burden of individual prosecution of this litigation. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation which might result in inconsistent judgments about Defendants' practices.

29. Defendants have acted on grounds generally applicable to the Rule 23 Class, thereby making declaratory relief appropriate for the class.

30. There are questions of law and fact common to the class, which predominate over any questions solely affecting individual members of the class, including:

   a. whether Defendants are joint employers of Plaintiff and the Rule 23 Class;

   b. whether Plaintiff and the Rule 23 Class are employees or independent contractors;

   c. whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiff and the Rule 23 Class;

   d. whether Defendants failed to pay Plaintiff and the Rule 23 Class minimum wage within the meaning of the New York Labor Law Article 19 and the supporting New York State Department of Labor Regulations, 12 NYCRR 142-2.1; and

   e. whether Defendants failed to pay Plaintiff and the Rule 23 Class overtime wages at a wage rate of one and one-half their lawful regular rate of pay times within the

meaning of the New York Labor Law Article 12 and the supporting New York State Department of Labor Regulations, 12 NYCRR 142-2.2.

## COLLECTIVE AND CLASS-WIDE FACTUAL ALLEGATIONS

31. The proposed Rule 23 Class and FLSA Collective consist of delivery drivers whose job duties involved loading, handling, and delivering packages from LaserShip warehouses to commercial and residential buildings in the State of New York.

32. Members of the Rule 23 Class and FLSA Collective worked fixed schedules in exchange for a flat weekly salary that amounted to less than the minimum wage and did not include overtime premiums for hours worked in excess of 40 in a week.

33. Each morning, members of the Rule 23 Class and FLSA Collective reported to regional warehouses owned and operated by Defendant LaserShip. They loaded their delivery vans with packages assigned to them by LaserShip, and they delivered those packages in a specific order along routes dictated by LaserShip.

34. The delivery drivers accessed and uploaded information about their routes and deliveries using a proprietary LaserShip application ("app") on their personal smartphones.

35. The LaserShip app instructed delivery drivers which routes to take and in which order to deliver their packages. Delivery drivers were not permitted to deviate from these routes.

36. The LaserShip app used GPS to track delivery drivers' locations in real time.

37. Delivery drivers were required to wear LaserShip uniforms and drove vans with the LaserShip logo prominently displayed on their exteriors.

38. At no point did any proposed class member receive a legally sufficient wage statement as required by NYLL § 195(3).

### Defendants' Joint Employer Status

39. Each individual delivery driver was jointly employed by Defendant LaserShip and one or more Subcontractor Defendants.

40. Both LaserShip and the Subcontractor Defendants controlled drivers' day to day activities and the terms and conditions of their employment.

41. LaserShip controlled the delivery drivers' routes, schedules, and job responsibilities.

42. The Subcontractor Defendants assisted in the day-to-day supervision of delivery drivers' activities.

### Plaintiff's and the Proposed Class and Collective Members' Employee Status

43. Though characterized as "independent contractors" by Defendants, Plaintiff's work and the work of all class and collective members was performed under Defendants' total direction and control, thereby rendering them "employees" within the meaning of the FLSA and the NYLL.

44. LaserShip dictated when, where, and to whom each delivery driver delivered packages.

45. Delivery drivers took no part in determining the rate of pay they would receive for their services.

46. For some delivery drivers, including Plaintiff, LaserShip and/or the Subcontractor Defendants owned and controlled the vehicles they used to make deliveries.

47. Customers could not specifically request delivery services from any particular delivery driver.

48. Delivery drivers were not responsible for fielding customer complaints. LaserShip was solely responsible for fielding such complaints.

49. LaserShip and/or the Subcontractor Defendants retained all liability for incorrect or damaged deliveries.

50. If delivery drivers could not show up for work on a given day, they were not responsible for finding a replacement delivery driver or rearranging routes to accommodate their absence.

## INDIVIDUAL FACTUAL ALLEGATIONS

### Background

51. Plaintiff Daniel West worked as a delivery driver for Defendants LaserShip and So Sure from approximately December 15, 2018, to approximately May 15, 2020.

52. Plaintiff worked exclusively for Defendants LaserShip and So Sure during this time period.

53. Defendants LaserShip and So Sure jointly controlled the terms and conditions of Plaintiff's employment and were Plaintiff's joint employers within the meaning of the FLSA and the NYLL.

54. Upon his hire, Plaintiff received a LaserShip identification ("ID") card and long-sleeved t-shirts with the LaserShip name and logo on the front. Plaintiff was required to wear the LaserShip t-shirt while delivering packages on his route. He was also required to carry his ID card, which identified him as an independent contractor for LaserShip.

55. Each day, Plaintiff reported to a warehouse at 10 Midland Avenue which also displayed the LaserShip name and logo.

56. Plaintiff was one of approximately 10-12 delivery drivers who reported to this warehouse.

57. To make his deliveries, Plaintiff drove a Ford Transit Connect van registered to and provided to him by So Sure. The van bore the LaserShip name and logo on its exterior.

58. Plaintiff was not permitted to carry any unauthorized passengers in his delivery van.

59. Plaintiff was not responsible for any costs associated with the upkeep, repair, or general maintenance of his delivery van. The van was insured by LaserShip and/or So Sure.

60. If Plaintiff's van needed gas while he was making deliveries, he was not responsible for the cost of the gas. In order to pay for the van's gas, Plaintiff simply drove up to a BP gas station and entered the numerical portion of the van's license plate on the gas pump's keypad. This would activate the gas pump. Plaintiff was instructed to write "So Sure" on any gas station receipts he received, though his supervisor rarely collected them.

61. To access and upload information about his routes, packages, and deliveries, Plaintiff used a LaserShip proprietary app on his smartphone. This app tracked his location in real time using GPS.

62. Plaintiff was paid via direct deposit from So Sure. He received no paystubs.

63. No withholdings were taken from Plaintiff's pay.

64. At the end of the year, Plaintiff received a Form 1099 with So Sure's name on it.

65. At no point did Plaintiff ever receive a legally sufficient wage statement notice as required by NYLL § 195(3).

Plaintiff's Job Responsibilities

66. Plaintiff was interviewed for his delivery driver position in December 2018 by Matthew Sohor, President of So Sure.

67. The interview took place in the LaserShip warehouse located at 10 Midland Avenue. During the interview, Mr. Sohor checked and made a copy of Plaintiff's driver license.

68. Plaintiff began his employment with Defendants shortly thereafter.

69. For his first two days on the job, Plaintiff was required to shadow another delivery driver.

70. Once he began his own route, Plaintiff worked on a fixed schedule and was required to report to the warehouse at 7 a.m. each morning, Sunday through Thursday.

71. The warehouse did not contain a time clock or any other timekeeping mechanisms. Instead, when Plaintiff arrived at the warehouse in the morning, he would text his supervisor to inform him that he had arrived.

72. Plaintiff would then load his van with the packages that were placed beside his van before he arrived, scanning each package with his LaserShip app. Plaintiff did not choose the packages he was responsible for delivering.

73. Nor did Plaintiff choose his delivery route or the order in which he delivered packages. Plaintiff's delivery route and schedule were pre-determined and conveyed to him by the LaserShip app, from which he was not permitted to deviate. The LaserShip app also instructed Plaintiff in which order he was required to deliver his packages.

74. When Plaintiff arrived at a particular location to make a delivery, he was required to scan the package with his LaserShip app and then take a photo of the package at its destination. This photo would then automatically upload to the LaserShip app.

11

75. Plaintiff would typically complete his route and return to the warehouse between 4 and 5 p.m.

76. He would then park his assigned van and place the keys to the van in a dedicated key box inside the LaserShip warehouse.

77. When he left the warehouse to go home, he would text his supervisor to "check out."

78. Plaintiff resigned from his job with Defendants in or around May 2020. He provided his two weeks' notice to Mr. Sohor.

## Minimum Wage and Overtime Violations

79. Over the course of his employment, Plaintiff worked at least 9-10 hours per day, five days a week, for a total of at least 48-50 hours per week.

80. During some weeks, Plaintiff worked more than 50 hours.

81. When Plaintiff was hired, he was told that he would receive a flat rate of $500 each week. There was no discussion with Defendants about how many hours the $500 per week was meant to compensate.

82. In reality, Plaintiff's pay varied from $320 to $620, without explanation, for the entirety of his employment.

83. For at least 52 weeks of Plaintiff's employment (out of a total of at least 66 weeks), he earned $500 or less per week. During these weeks, his regular hourly rate for purposes of the FLSA was no more than $12.50 per hour and sometimes as little as $8 per hour.

84. In 2018, the New York State minimum wage rate applicable to Westchester County was $11.00 per hour. For those workweeks in 2018 in which Plaintiff worked 48 hours,

pursuant to New York State's minimum wage requirements, he was entitled to at least $11 per hour plus at least $16.50 per hour for every hour over 40, for a total of at least $572.

85. Plaintiff was not paid the required minimum wage in 2018.

86. For example, for the week of December 16, 2018, Plaintiff was paid $420 for at least 48 hours of work, amounting to only $8.75 per hour, with no overtime premium paid.

87. In 2019, the New York State minimum wage rate applicable to Westchester County was $12.00 per hour. For those workweeks in 2019 in which Plaintiff worked 48 hours, pursuant to New York State's minimum wage requirements, he was entitled to at least $12 per hour plus at least $18 per hour for every hour over 40, for a total of at least $624.

88. Plaintiff was not paid the required minimum wage in 2019.

89. For example, for the weeks of January 6, June 16, July 7, August 4, and October 20, 2019, Plaintiff was paid $400 per week for at least 48 hours of work, amounting to only $8.33 per hour, with no overtime premium paid.

90. In addition, for the weeks of May 2, June 23, and September 15, 2019, Plaintiff was paid $320 per week for 48 hours of work, amounting to $6.67 per hour.

91. In 2020, the New York State minimum wage rate applicable to Westchester County was $13.00 per hour. For those workweeks in 2020 in which Plaintiff worked 48 hours, pursuant to New York State's minimum wage requirements, he was entitled to at least $13 per hour plus at least $19.50 per hour for every hour over 40, for a total of at least $676.

92. Plaintiff was not paid the required minimum wage in 2020.

93. For example, for the weeks of January 19, February 1, and March 29, 2020, Plaintiff was paid $400 per week for at least 48 hours of work, amounting to only $8.33 per hour, with no overtime premium paid.

<u>U.S. Department of Labor's Settlement with Defendant LaserShip</u>

94. On or around February 17, 2021, Plaintiff received a letter from the United States Department of Labor ("DOL"), Wage and Hour Division, informing him that a settlement had been reached between the DOL and Defendant LaserShip as a result of allegations that LaserShip violated the FLSA between December 30, 2017, and May 31, 2020.

95. The letter further informed him that, in connection with his employment with LaserShip between December 30, 2017, and May 31, 2020, he was entitled to a gross amount of $476.11 in "back wages" as part of the terms of the settlement.

96. The letter specified that his "acceptance of this payment of wages due under the FLSA" would preclude any future lawsuit brought under Section 16(b) of the FLSA.

97. Plaintiff did not accept the DOL's payment of back wages and instead opted to retain counsel.

## FIRST CAUSE OF ACTION
**Fair Labor Standards Act – Unpaid Minimum Wages**

98. Plaintiff repeats and realleges all of the above allegations as though fully set forth herein.

99. Defendants have engaged in a widespread pattern and practice of violating the FLSA, as detailed in this Complaint.

100. Plaintiff consents to be a party to this action, pursuant to 29 U.S.C. § 216(b).

101. At all times relevant to this action, Plaintiff and Collective Members were employed by Defendants within the meaning of the FLSA, 29 U.S.C. § 203(d).

102. At all times relevant to this action, Plaintiff and Collective Members were engaged in commerce and the corporate Defendants were enterprises engaged in commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

103. Defendants violated the rights of Plaintiff and Collective Members by failing to pay them for each hour worked in each discrete work week, in violation of the FLSA, 29 U.S.C. §§ 201 *et seq.*

104. Defendants are liable to Plaintiff and Collective Members for their unpaid minimum wages, plus an additional equal amount as liquidated damages, reasonable attorney's fees and costs, and any other appropriate relief pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
### Fair Labor Standards Act – Unpaid Overtime Wages

105. Plaintiff repeats and realleges all of the above allegations as though fully set forth herein.

106. Defendants have engaged in a widespread pattern and practice of violating the FLSA, as detailed in this Complaint.

107. Plaintiff consents to be a party to this action, pursuant to 29 U.S.C. § 216(b).

108. At all times relevant to this action, Plaintiff and Collective Members were employed by Defendants within the meaning of the FLSA, 29 U.S.C. § 203(d).

109. At all times relevant to this action, Plaintiff and Collective Members were engaged in commerce and the corporate Defendants were enterprises engaged in commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

110. Defendants violated the rights of Plaintiff and Collective Members by failing to pay them overtime compensation at a rate of one and one-half times their regular rate of pay for each hour worked in excess of 40 per week, in violation of the FLSA, 29 U.S.C. § 207(a)(1).

111. Defendants' failure to pay Plaintiff and Collective Members overtime compensation was willful within the meaning of the FLSA, 29 U.S.C. § 255.

112. Defendants are liable to Plaintiff and Collective Members for their unpaid overtime compensation, plus an additional equal amount as liquidated damages, reasonable attorney's fees and costs, and any other appropriate relief pursuant to 29 U.S.C. § 216(b).

### THIRD CAUSE OF ACTION
#### New York Labor Law – Unpaid Minimum Wages

113. Plaintiff repeats and realleges all of the above allegations as though fully set forth herein.

114. Defendants have engaged in a widespread pattern and practice of violating the NYLL, as detailed in this Complaint.

115. Defendants violated the rights of Plaintiff and Class Members by failing to pay them the minimum wage for each hour worked in each discrete work week, in violation of the NYLL.

116. Defendants are liable to Plaintiff and Class Members for their unpaid minimum wages, plus an additional equal amount as liquidated damages, reasonable attorney's fees and costs, and any other appropriate relief pursuant to NYLL § 198(1-a).

### FOURTH CAUSE OF ACTION
#### New York Labor Law – Unpaid Overtime Wages

117. Plaintiff repeats and realleges all of the above allegations as though fully set forth herein.

118. NYLL § 160 requires employers to compensate their employees at a rate not less than one and one-half times their regular rate of pay for hours worked in excess of 40 per week.

119. Defendants have engaged in a widespread pattern and practice of violating the NYLL, as detailed in this Complaint, by failing to pay overtime at a rate of one and one-half of Plaintiff and Class Members' regular rate of pay for all hours worked over 40 per week.

120. Defendants' violation was willful and lasted for the duration of all relevant time periods.

121. Defendants are liable to Plaintiff and Class Members for their unpaid overtime wages, plus an additional equal amount as liquidated damages, reasonable attorney's fees and costs, and any other appropriate relief pursuant to NYLL § 198(1-a).

## FIFTH CAUSE OF ACTION
### New York Labor Law – Failure to Provide Wage Statements

122. Plaintiff repeats and realleges all of the above allegations as though fully set forth herein.

123. Pursuant to NYLL § 195(3), every employer is required to

furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.

124. Defendants knowingly failed to comply with this provision by failing to provide Plaintiff and Class Members with wage statements meeting the requirements laid out in ¶ 123.

125. NYLL § 198(1)(d) provides that any employee not provided appropriate wage statements may collect damages of $250 for each work day that the violation occurred or continued to occur, up to a total of $5,000 per employee (together with reasonable costs and attorney's fees as well as appropriate injunctive and/or declaratory relief).

126. During the course of Plaintiff and Class Members' employment, Defendants consistently and willfully failed to provide them with adequate wage statements as required by New York law.

127. Defendants are therefore liable to Plaintiff and Class Members in the amount of $5,000 per employee, plus reasonable attorney's fees and costs and any other relief appropriate under NYLL § 198.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for the following relief:

a. That, at the earliest possible time, Plaintiff through his counsel be permitted to give notice of this collective action, or that the Court issue such notice of this collective action, or that the Court issue such notice to all persons who are presently, or have at any time during the three years immediately preceding the filing of this suit, up through and including the date of the Court's issuance of court-supervised notice, been employed by Defendants. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper hourly compensation and overtime wages;

b. Certification of this case as a class action pursuant to Fed. R. Civ. P. 23;

c. Designation of the named Plaintiff Daniel West as class representative and designation of Mr. West's counsel of record as class counsel;

d. Unpaid wages, attorneys' fees, costs, and interest pursuant to 29 U.S.C. §§ 201 *et seq.*;

e. An additional and equal amount in unpaid wages as liquidated damages pursuant to 29 U.S.C. §§ 201 *et seq.*;

f. Statutory damages pursuant to NYLL §§ 198(1)(b) and (d);

g. Issuance of a declaratory judgement that the practices complained of herein are unlawful under the FLSA and NYLL and a permanent injunction against Defendants' continued engagement in such practices.

## JURY TRIAL DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

Dated: New York, New York
June 17, 2021

MENKEN SIMPSON & ROZGER LLP

*s/ Bruce E. Menken*
*s/ Jason Rozger*
*s/ Raya F. Saksouk*
80 Pine St., 33rd Fl.
T: 212-509-1616
F: 212-509-8088
bmenken@nyemployeelaw.com
jrozger@nyemployeelaw.com
rsaksouk@nyemployeelaw.com


WILLIAM K. LI LAW, PLLC

_____
William Li
200 Park Ave., Ste. 1700
New York, NY 10166
T: 212-380-8198
wli@wlilaw.com


*Attorneys for Plaintiff Daniel West and the Rule 23 Proposed Class and FLSA Proposed Collective*