UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
DANIEL WEST, ROMAINE CLARKE,
RYON MORGAN, and SAADALA
ABOULESSAN, on behalf of themselves and
all others similarly situated,                                        Civil Action No. 21-cv-5382

                                   Plaintiffs,              **FIRST AMENDED**
                                                            **CLASS AND COLLECTIVE**
                    -against-                               **ACTION COMPLAINT**

LASERSHIP, INC., SO SURE                                    **JURY TRIAL DEMANDED**
TRANSPORTS, INC., STEVEN
TRUCKING, INC., RICHARD
GRACE AND RICHARD LLC., and
UNKNOWN SUBCONTRACTOR
COMPANIES A-Z,

                                   Defendants.
-----------------------------------------------------------x

        Plaintiffs, on behalf of themselves and all others similarly situated, allege as follows:

                              **PRELIMINARY STATEMENT**

        1.      Defendant LaserShip, Inc. ("LaserShip"), bills itself on its website as providing

"Last Mile Delivery That Creates Competitive Advantage."  The source of that competitive

advantage, however, is LaserShips' exploitation of its employees, evasion of payroll taxes,  and

widespread violations of the wage and hour laws.

        2.      Plaintiffs seek to represent a New York State-wide Rule 23 Class and Fair Labor

Standards Act ("FLSA") Collective consisting of delivery drivers who worked for Defendant

LaserShip, either directly or through  one or more of its subcontractors (identified here as So

Sure Transports, Inc., Steven Trucking, Inc., Grace and Richard LLC, and Unknown

Subcontractor Companies A-Z), between June 17, 2018, and the date Defendants cease, or are

enjoined from, violating the New York Labor Law ("NYLL") and the FLSA.

3.      Plaintiffs were employed by LaserShip as delivery drivers, either directly or jointly employed through a subcontractor. They were responsible for delivering packages to customers on a pre-determined route in and around the New York City metropolitan area. Misclassified as "independent contractors," Plaintiffs worked for less than the New York State minimum wage and without receiving overtime premiums for hours worked in excess of 40 in a week.

4.      Defendant LaserShip's practice was to pay its employees directly.  Following a U.S. Department of Labor audit and subsequent settlement, which found that Lasership was misclassifying its employees as independent contractors, and failing to pay them overtime pay, Lasership began, or at the least radically expanded its practice of, paying its employees through nominal subcontractors, while maintaining the same degree of control over the delivery drivers as when it was paying them directly.

5.      This action is brought to recover unpaid minimum and overtime wages owed to Plaintiffs and others similarly situated employees of Defendants, as well as attorneys' fees, costs, liquidated damages, and injunctive and declaratory relief against Defendants' unlawful actions.

6.      Plaintiffs bring this action on behalf of themselves and all similarly situated current and former employees pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and specifically the collective action provision of the FLSA, 20 U.S.C. § 216(b), to remedy violations of the wage and hour provisions of the FLSA by Defendants that have deprived Plaintiffs and others similarly situated of their lawful wages.

7.      Plaintiffs also bring this action on behalf of themselves and a class of similarly situated current and former employees of Defendants, pursuant to Fed. R. Civ. P. 23, for violations of New York Labor Law ("NYLL") §§ 190 *et seq.*

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367. In addition, the Court has jurisdiction over Plaintiffs' federal claims under the FLSA pursuant to 29 U.S.C. § 216(b).

9.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(1), as Defendants conduct business in this district to a sufficient degree to be considered residents of this district under 28 U.S.C. § 1391(d).

10.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

### Daniel West

11.      Plaintiff Daniel West is an adult individual residing in Port Chester, New York.

12.      At all times relevant to this Complaint, Defendants LaserShip and So Sure Transports Inc. ("So Sure") jointly employed Plaintiff as a delivery driver based out of LaserShip's regional warehouse at 10 Midland Ave., Port Chester, NY 10573.

### Richard Clarke

13.      Plaintiff Romaine Clarke is an adult individual living in Hempstead, New York.

14.      At all times relevant to this Complaint, Defendants LaserShip and Richard Grace and Richard LLC ("Richard") jointly employed Plaintiff as a delivery driver based out of LaserShip's regional warehouse in Ridgewood, New York.

### Ryon Morgan

15.      Plaintiff Ryon Morgan is an adult individual living in West Babylon, New York.

16.     From the summer of 2016 until the summer of 2017, Plaintiff was employed and paid directly by Lasership.  Beginning in the summer of 2017, Defendants LaserShip and Steven Trucking, Inc. ("Steven") jointly employed Plaintiff as a delivery driver based out of LaserShip's regional warehouse in Ridgewood, New York.

Saadala Aboulessan

17.     Plaintiff Saadala Aboulessan is an adult individual living in Brooklyn, New York.

18.     At all times relevant to this Complaint, Defendant LaserShip employed Aboulessan as a delivery driver based out of Laserships' warehouses in New York, New York and Ridgewood, New York.

LaserShip, Inc.

19.     Defendant LaserShip, Inc. ("LaserShip"), is a Delaware corporation with its headquarters located at 1912 Woodford Road, Vienna, Virginia 22182.

20.     LaserShip transacts business in the State of New York.

21.     On information and belief, LaserShip operates at least 10 warehouses in the State of New York substantially similar to the warehouse where Plaintiffs' employment was based.

So Sure Transports, Inc.

22.     Defendant So Sure Transports, Inc. ("So Sure"), is a New York corporation with its headquarters and principal place of business in New York.

23.      So Sure operates out of two residential buildings located at 35-05 191st St., Apt. 5A, Flushing, NY 11358, and 24026 70th Ave., Apt. 1, Little Neck, NY 11362. Upon information and belief, So Sure had no other customers aside from LaserShip.

24.     On information and belief, So Sure employs no more than 6 people (exclusive of delivery drivers like Plaintiffs, who Defendants misclassify as "independent contractors").

25.     On information and belief, So Sure contracts with LaserShip for the purpose of jointly employing and supervising delivery drivers in the State of New York. These delivery drivers perform delivery services in the name of, and for the primary benefit of, LaserShip.

### Richard Grace and Richard LLC

26.     Defendant Richard is a New York corporation with its headquarters and principal place of business in New York.

27.     Richard operates out of a residential building located at 188-32 119th Avenue, Flushing, NY.   Richard had no other employees aside from the drivers.

28.     On information and belief, Richard contracts with LaserShip for the purpose of jointly employing and supervising delivery drivers in the State of New York. These delivery drivers perform delivery services in the name of, and for the primary benefit of, LaserShip.

### Steven Trucking, Inc.

29.     Defendant Steven is a New York corporation with its headquarters and principal place of business in New York.

30.     Steven operates out of a residential building in Brooklyn, New York.  Steven had no other employees aside from the drivers.

31.     On information and belief, Steven contracts with LaserShip for the purpose of jointly employing and supervising delivery drivers in the State of New York. These delivery drivers perform delivery services in the name of, and for the primary benefit of, LaserShip.

### Unknown Subcontractor Companies A-Z

32.     On information and belief, based on public records and court filings, Unknown Subcontractor Companies A-Z are corporations which, like Defendant So Sure, contract with LaserShip for the purpose of jointly employing and supervising delivery drivers in the State of

New York (collectively, with So Sure, "the Subcontractor Defendants"). These delivery drivers perform delivery services in the name of, and for the primary benefit of, LaserShip.

33.     Although the precise number of such companies is presently unknown to Plaintiffs, and calculation of such numbers would require facts in the sole control of Defendant. LaserShip, upon information and belief, assigns subcontractors according to Zip codes; accordingly, there are likely dozens of such subcontractors assigned to the New York City metropolitan area.

34.     At all times relevant to this Complaint, Plaintiffs and other members of the putative class and collective were employed by Defendant LaserShip, either directly or through one or more of its subcontractors, within the meaning of the FLSA, 29 U.S.C. § 203(e), and NYLL § 190(2).

35.     None of the named subcontractors had any other customers aside from LaserShip. Each was formed and incorporated for the sole purpose of serving as a subcontractor to LaserShip.  None have a significant amount of assets or capital.

36.     In fact, Lasership recruits so-called "Master Contractors" from the ranks of its own employees to serve as a legal buffer and strawman subcontractor in an attempt to insulate itself from liability for minimum wage and overtime violations, which are the basis for its business model.

## CLASS ALLEGATIONS

### FLSA Collective Action

37.     Plaintiffs bring their FLSA minimum wage and overtime claims on behalf of themselves and all similarly situated persons who have worked for LaserShip, either directly or through one or more of its subcontractors, performing delivery driver services in the State of

New York from June 17, 2018, until the date Defendants cease, or are enjoined from, violating the FLSA ("FLSA Collective").

38.     Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs, and as such, notice should be sent to the FLSA Collective.

<u>Rule 23 Class Action</u>

39.     Plaintiffs bring their New York Labor Law minimum wage, overtime, and § 195 claims on behalf of themselves and a class of persons under Rule 23 of the Federal Rules of Civil Procedure consisting of all delivery drivers employed by LaserShip, either directly or through one or more of its subcontractors, in the State of New York from June 17, 2015, until the date Defendants cease, or are enjoined from, violating the NYLL ("Rule 23 Class").

40.     The persons in the class identified above are so numerous that joinder of all members is impracticable. Although the precise number of such persons is presently unknown to Plaintiffs, and calculation of such numbers would require facts in the sole control of Lasership, upon information and belief, there are more than 100 members of the class during the class period. This calculation is based on information and belief that LaserShip operates at least 10 warehouses in New York State, each one estimated to employ at least 10-12 delivery drivers.

41.     The claims of Plaintiffs are typical of the claims of the Rule 23 Class.

42.     Plaintiffs will fairly and adequately protect the interests of the Rule 23 Class.

43.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy—particularly in the context of wage and hour litigation where individual Plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants. The members of the Rule 23 Class have been damaged and are entitled to recovery as a result of Defendants' common and uniform policies, practices and

procedures. Although the relative damages suffered by individual class members are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation which might result in inconsistent judgments about Defendants' practices.

44.     Defendants have acted on grounds generally applicable to the Rule 23 Class, thereby making declaratory relief appropriate for the class.

45.     There are questions of law and fact common to the class, which predominate over any questions solely affecting individual members of the class, including:

    a.   whether Defendants are joint employers of Plaintiffs and the Rule 23 Class;

    b.   whether Plaintiffs and the Rule 23 Class are employees or independent contractors;

    c.   whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiffs and the Rule 23 Class;

    d.   whether Defendants failed to pay Plaintiffs and the Rule 23 Class minimum wage within the meaning of the New York Labor Law Article 19 and the supporting New York State Department of Labor Regulations, 12 NYCRR 142-2.1; and

    e.   whether Defendants failed to pay Plaintiffs and the Rule 23 Class overtime wages at a wage rate of one and one-half their lawful regular rate of pay times within the meaning of the New York Labor Law Article 12 and the supporting New York State Department of Labor Regulations, 12 NYCRR 142-2.2.

## <u>COLLECTIVE AND CLASS-WIDE FACTUAL ALLEGATIONS</u>

46.     The proposed Rule 23 Class and FLSA Collective consist of delivery drivers whose job duties involved loading, handling, and delivering packages from LaserShip warehouses to commercial and residential buildings in the State of New York.

47.     Members of the Rule 23 Class and FLSA Collective worked fixed schedules in exchange for a flat weekly salary that amounted to less than the minimum wage and did not include overtime premiums for hours worked in excess of 40 in a week.

48.     Each morning, members of the Rule 23 Class and FLSA Collective reported to regional warehouses owned and operated by Defendant LaserShip. They loaded their delivery vans with packages assigned to them by LaserShip, and they delivered those packages in a specific order along routes dictated by LaserShip.

49.     The delivery drivers accessed and uploaded information about their routes and deliveries using a proprietary LaserShip application ("app") on their personal smartphones, or with a handheld device owned and issued by LaserShip.  Drivers were required by LaserShip to use this app or device.

50.     The LaserShip app or device instructed delivery drivers which routes to take and in which order to deliver their packages. Delivery drivers were not permitted to deviate from these routes.

51.     The LaserShip app used GPS to track delivery drivers' locations in real time.

52.     Delivery drivers were required to wear LaserShip uniforms and drove vans with the LaserShip logo prominently displayed on their exteriors.

53.     During the time of the travel restrictions enacted due to the COVID pandemic, drivers were issued letters from LaserShip titled "Notice to Enforcement Officials – The Carrier of This Notice Is An Essential Employee of Lasership, Inc."  The letter was intended to be

shown to law enforcement officials to allow drivers to keep delivering despite the travel restrictions.

54.     At no point did any proposed class member receive a legally sufficient wage statement as required by NYLL § 195(3).

Defendants' Joint Employer Status

55.     Each individual delivery driver who worked for one of the Subcontractor Defendants was jointly employed by Defendant LaserShip and one or more Subcontractor Defendants.

56.     Both LaserShip and the Subcontractor Defendants controlled drivers' day to day activities and the terms and conditions of their employment.

57.     LaserShip controlled the delivery drivers' routes, schedules, and job responsibilities. LaserShip determined how much the drivers were paid.

58.     The Subcontractor Defendants assisted in the day-to-day supervision of delivery drivers' activities.

Plaintiffs' and the Proposed Class and Collective Members' Employee Status

59.     Though characterized as "independent contractors" by Defendants, Plaintiffs' work and the work of all class and collective members was performed under Defendants' total direction and control, thereby rendering them "employees" within the meaning of the FLSA and the NYLL.

60.     LaserShip dictated when, where, and to whom each delivery driver delivered packages.

61.     Delivery drivers took no part in determining the rate of pay they would receive for their services, nor did they determine their schedules. Drivers worked full-time for Lasership.

62.     For some delivery drivers, including Plaintiffs, LaserShip and/or the Subcontractor Defendants owned and controlled the vehicles they used to make deliveries.

63.     Customers could not specifically request delivery services from any particular delivery driver.

64.     Delivery drivers were not responsible for fielding customer complaints. LaserShip was solely responsible for fielding such complaints.

65.     LaserShip and/or the Subcontractor Defendants retained all liability to the shipper for incorrect or damaged deliveries.

66.     If delivery drivers could not show up for work on a given day, they were not responsible for finding a replacement delivery driver or rearranging routes to accommodate their absence.

## INDIVIDUAL FACTUAL ALLEGATIONS

### Daniel West

67.     Plaintiff Daniel West worked as a delivery driver for Defendants LaserShip and So Sure from approximately December 15, 2018, to approximately May 15, 2020.

68.     Plaintiff worked exclusively for Defendants LaserShip and So Sure during this time period.

69.     Defendants LaserShip and So Sure jointly controlled the terms and conditions of Plaintiff's employment and were Plaintiffs' joint employers within the meaning of the FLSA and the NYLL.

70.     Upon his hire, Plaintiff received a LaserShip identification ("ID") card and long-sleeved t-shirts with the LaserShip name and logo on the front. Plaintiff was required to wear the LaserShip t-shirt while delivering packages on his route. He was also required to carry his ID card, which identified him as an independent contractor for LaserShip.

71.     Each day, Plaintiff reported to a warehouse at 10 Midland Avenue which also displayed the LaserShip name and logo.

72.     Plaintiff was one of approximately 10-12 delivery drivers who reported to this warehouse.

73.     To make his deliveries, Plaintiff drove a Ford Transit Connect van registered to and provided to him by So Sure. The van bore the LaserShip name and logo on its exterior.

74.     Plaintiff was not permitted to carry any unauthorized passengers in his delivery van.

75.     Plaintiff was not responsible for any costs associated with the upkeep, repair, or general maintenance of his delivery van. The van was insured by LaserShip and/or So Sure.

76.     If Plaintiff's van needed gas while he was making deliveries, he was not responsible for the cost of the gas. In order to pay for the van's gas, Plaintiff simply drove up to a BP gas station and entered the numerical portion of the van's license plate on the gas pump's keypad. This would activate the gas pump. Plaintiff was instructed to write "So Sure" on any gas station receipts he received, though his supervisor rarely collected them.

77.     To access and upload information about his routes, packages, and deliveries, Plaintiff used a LaserShip proprietary app on his smartphone. This app tracked his location in real time using GPS.

78.     Plaintiff was paid via direct deposit from So Sure. He received no paystubs.

79.     No withholdings were taken from Plaintiff's pay.

80.     At the end of the year, Plaintiff received a Form 1099 with So Sure's name on it.

81.     Plaintiff was interviewed for his delivery driver position in December 2018 by Matthew Sohor, President of So Sure.

82.     The interview took place in the LaserShip warehouse located at 10 Midland Avenue. During the interview, Mr. Sohor checked and made a copy of Plaintiffs's driver license.

83.     Plaintiff began his employment with Defendants shortly thereafter.

84.     For his first two days on the job, Plaintiffs was required to shadow another delivery driver.

85.     Once he began his own route, Plaintiff worked on a fixed schedule and was required to report to the warehouse at 7 a.m. each morning, Sunday through Thursday.

86.     The warehouse did not contain a time clock or any other timekeeping mechanisms. Instead, when Plaintiff arrived at the warehouse in the morning, he would text his supervisor to inform him that he had arrived.

87.     Plaintiff West would then load his van with the packages that were placed beside his van before he arrived, scanning each package with his LaserShip app. Plaintiff did not choose the packages he was responsible for delivering.

88.     Nor did Plaintiff West choose his delivery route or the order in which he delivered packages. Plaintiffs' delivery route and schedule were pre-determined and conveyed to him by the LaserShip app, from which he was not permitted to deviate. The LaserShip app also instructed Plaintiffs in which order he was required to deliver his packages.

89.     When Plaintiff West arrived at a particular location to make a delivery, he was required to scan the package with his LaserShip app and then take a photo of the package at its destination. This photo would then automatically upload to the LaserShip app.

90.     Plaintiff would typically complete his route and return to the warehouse between 4 and 5 p.m.

91.     He would then park his assigned van and place the keys to the van in a dedicated key box inside the LaserShip warehouse.

92.     When he left the warehouse to go home, he would text his supervisor to "check out."

93.     Plaintiff resigned from his job with Defendants in or around May 2020. He provided his two weeks' notice to Mr. Sohor.

94.     Over the course of his employment, Plaintiff West worked at least 9-10 hours per day, five days a week, for a total of at least 48-50 hours per week.

95.     During some weeks, Plaintiff West worked more than 50 hours.

96.     When Plaintiff was hired, he was told that he would receive a flat rate of $500 each week. There was no discussion with Defendants about how many hours the $500 per week was meant to compensate.

97.     In reality, Plaintiff's pay varied from $320 to $620, without explanation, for the entirety of his employment.

98.     For at least 52 weeks of Plaintiff's employment (out of a total of at least 66 weeks), he earned $500 or less per week. During these weeks, his regular hourly rate for purposes of the FLSA was no more than $12.50 per hour and sometimes as little as $8 per hour.

99.     In 2018, the New York State minimum wage rate applicable to Westchester County was $11.00 per hour. For those workweeks in 2018 in which Plaintiff worked 48 hours, pursuant to New York State's minimum wage requirements, he was entitled to at least $11 per hour plus at least $16.50 per hour for every hour over 40, for a total of at least $572.

100.    Plaintiff West was not paid the required minimum wage in 2018.

101.    For example, for the week of December 16, 2018, Plaintiffs was paid $420 for at least 48 hours of work, amounting to only $8.75 per hour, with no overtime premium paid.

102.    In 2019, the New York State minimum wage rate applicable to Westchester County was $12.00 per hour. For those workweeks in 2019 in which Plaintiff West worked 48 hours, pursuant to New York State's minimum wage requirements, he was entitled to at least $12 per hour plus at least $18 per hour for every hour over 40, for a total of at least $624.

103.    Plaintiff was not paid the required minimum wage in 2019.

104.    For example, for the weeks of January 6, June 16, July 7, August 4, and October 20, 2019, Plaintiff West was paid $400 per week for at least 48 hours of work, amounting to only $8.33 per hour, with no overtime premium paid.

105.    In addition, for the weeks of May 2, June 23, and September 15, 2019, Plaintiff was paid $320 per week for 48 hours of work, amounting to $6.67 per hour.

106.    In 2020, the New York State minimum wage rate applicable to Westchester County was $13.00 per hour. For those workweeks in 2020 in which Plaintiffs worked 48 hours, pursuant to New York State's minimum wage requirements, he was entitled to at least $13 per hour plus at least $19.50 per hour for every hour over 40, for a total of at least $676.

107.    Plaintiff West was not paid the required minimum wage in 2020.

108.    For example, for the weeks of January 19, February 1, and March 29, 2020, Plaintiff was paid $400 per week for at least 48 hours of work, amounting to only $8.33 per hour, with no overtime premium paid.

<u>U.S. Department of Labor's Settlement with Defendant LaserShip</u>

109.    On or around February 17, 2021, Plaintiff West received a letter from the United States Department of Labor ("DOL"), Wage and Hour Division, informing him that a settlement had been reached between the DOL and Defendant LaserShip as a result of allegations that LaserShip violated the FLSA between December 30, 2017, and May 31, 2020.

110.    The letter further informed him that, in connection with his employment with LaserShip between December 30, 2017, and May 31, 2020, he was entitled to a gross amount of $476.11 in "back wages" as part of the terms of the settlement.

111.    The letter specified that his "acceptance of this payment of wages due under the FLSA" would preclude any future lawsuit brought under Section 16(b) of the FLSA.

112.    Plaintiff West did not accept the DOL's payment of back wages and instead opted to retain counsel.


<u>Romaine Clarke</u>

113.    Plaintiff Romaine Clarke worked for LaserShip from 2016 until February of 2021, with a 2 1/2 month gap in service.

114.    Plaintiff was a joint employee of Lasership and Defendant Richard Grace and Richard LLC, a LaserShip subcontractor owned by his cousin, Richard Hickling.

115.   At the start of his employment, Plaintiff Clarke made deliveries as a helper to Hickling.  He was paid $600 per week.  There was no discussion with Defendants of how many hours the $600 per week was meant to cover.

116.   Throughout his employment, Plaintiff Clarke was required to wear a LaserShip uniform, used a LaserShip scanner to track packages, and worked at the direction and control of Hickling for the benefit of LaserShip.

117.   Plaintiff worked from LaserShip's warehouse in Ridgewood, New York.  He delivered packages to Jackson Heights and other neighborhoods in Queens.

118.   During the months in 2016 Plaintiff Clarke worked as a helper, he was required to start his workday at 5:00 AM, and worked until approximately 5 or 6:00 PM each day, for a weekly workweek of at least 60 hours.  He was never paid overtime pay.

119.   The equivalent hourly wage for Plaintiff was $15 per hour ($600/40 hours).  For working his minimum 60 hour week as a helper in 2016, Plaintiff was thus entitled to at least an additional $22.75 per hour for the 20 hours overtime, or $455, in addition to the $600 he was paid.

120.   After several months as helper, Plaintiff Clarke began working on his own, driving a van owned by Richard.  At that time, Plaintiff worked an average of 8 hours per day, six days per week, for a minimum of 48 hours per week.  Frequently, Plaintiff worked 11 hours a day. He was paid $120 per day.  This schedule extended into 2017.

121.   While driving for LaserShip, Plaintiff was required to keep to the route set by Lasership, work the days assigned to him by Lasership through Hickling, and work the days assigned to him by Hickling and Lasership.  Plaintiff worked for no one else while driving for Lasership.

122.     Starting in December of 2017, Plaintiff Clarke obtained his own vehicle, and was paid per package delivered.  All the other terms and conditions of his employment remained the same.

123.     While driving his own vehicle for LaserShip, Plaintiff Clarke was paid $800-$900 per week, which increased over time.  Plaintiff's work hours remained the same, and he was never paid an overtime premium for the hours worked greater than 40 per week, which occurred each workweek.

124.     Defendants never kept records of the time Plaintiff worked each week.

<u>RYON MORGAN</u>

125.     Plaintiff Ryon Morgan began working for Lasership in the summer of 2016.  He was paid directly by LaserShip until some point in the summer of 2017.

126.     Plaintiff Morgan was told by a Lasership manager that he was required to arrive at the Ridgewood warehouse at 6:00 AM.  Upon arrival, Plaintiff would load the packages assigned to him for delivery into his own vehicle.

127.     Plaintiff was given a LaserShip handheld device to use to track packages.  The devise also told Plaintiff what order to deliver the packages.

128.     Plaintiff typically was assigned to deliver two loads of packages per day. Plaintiff was not allowed to decline to deliver any packages or shifts.

129.     Plaintiff Morgan worked from 6 AM to 11 PM, five days per week, or 85 hours. During November and December, Plaintiff typically worked until midnight or 1:00 AM.

130.     Plaintiff was paid $800-$1000 per week, except he was paid more on occasion during November and December.   There was never any discussion with Plaintiff regarding how many hours the pay was to cover.

131.    During 2017, the applicable New York minimum wage was $11 per hour.  For Plaintiff Morgan's minimum 85 hour workweek, the minimum wage, including overtime, was $1,182.50.  Plaintiff was never paid this much in a week.

132.    Plaintiff Morgan was never paid additional money for overtime pay, except for some additional amounts in November and December that did not fully compensate him for the overtime he was owed.

133.    Starting in the summer of 2017, Plaintiff Morgan was paid by Defendant Steven Trucking, Inc.  Plaintiff's job duties and conditions remained the same, but his workload increased, sometimes working until 3:00 AM.

134.    While paid by Steven, Plaintiff Morgan was again never paid overtime for the hours worked over 40 per week.

135.    On or around February 17, 2021, Plaintiff Morgan received a letter from the United States Department of Labor ("DOL"), Wage and Hour Division, informing him that a settlement had been reached between the DOL and Defendant LaserShip as a result of allegations that LaserShip violated the FLSA between December 30, 2017, and May 31, 2020.

136.    The letter further informed him that, in connection with his employment with LaserShip between December 30, 2017, and May 31, 2020, he was entitled to a gross amount of $43,0176.11 in "back wages" as part of the terms of the settlement.

137.    The letter specified that his "acceptance of this payment of wages due under the FLSA" would preclude any future lawsuit brought under Section 16(b) of the FLSA.

138.    Plaintiff Morgan did not accept the DOL's payment of back wages and instead opted to retain counsel.

<u>Saadala Aboulessan</u>

139.    Plaintiff Saadala Aboulessan began work for LaserShip in March of 2016, working from LaserShip's facility at 237 West 29th Street in Manhattan.

140.    Plaintiff was paid directly by LaserShip throughout his employment.

141.    Plaintiff Aboulessan was directed by LaserShip to arrive at the facility by 5:50 AM.  Upon arrival he was given the packages he was to deliver that day.  Plaintiff had no control over the number of packages he was expected to deliver.

142.    Plaintiff used his own vehicle for deliveries.  Lasership directed him to insure the vehicle to the coverage limits chosen by Lasership.

143.    Plaintiff was given a LaserShip handheld device to track deliveries of packages. The device also set the order in which the packages were to be delivered.  In fact, one of Plaintiff's LaserShip managers, Steven Provenzano, once reprimanded Plaintiff when Provenzano discovered through the device's GPS data that Plaintiff had delivered the packages in a different order.

144.    Starting in April 2016 Plaintiff worked from 5:50 AM until 2-3 PM, 5 days per week, for a minimum of 41 hours per week.  Plaintiff never had time for a lunch break.

145.    Plaintiff was paid per package delivered, and was never afforded overtime pay for the hours greater than 40 per week.

146.    Plaintiff was also often paid less than the New York minimum wage.  For his minimum 41 hour workweek in 2016, when the minimum wage was $9 per hour, Plaintiff would be owed at least $373.50.  For example, for the week ending in the check paid on 5/11/16, Plaintiff was paid only $312.18.

147.     In about August of 2016, Plaintiff began working from Lasership's Ridgewood, New York warehouse.  While at that facility, Plaintiffs' weekly hours increased, with his typical schedule from 5:50 AM until 3 PM at the earliest, or on occasion at 12:30 AM the next day.

148.     While working from Ridgewood, Plaintiff was also never afforded overtime pay, despite working more than 40 hours each week.

149.     At no point did any of the named Plaintiffs ever receive a legally sufficient wage statement notice as required by NYLL § 195(3).

150.     GPS records maintained by Defendant LaserShip may allow Plaintiffs to calculate their hours worked per week with greater specificity than set forth herein.


## FIRST CAUSE OF ACTION
### Fair Labor Standards Act – Unpaid Minimum Wages

151.     Plaintiffs repeat and reallege all of the above allegations as though fully set forth herein.

152.     Defendants have engaged in a widespread pattern and practice of violating the FLSA, as detailed in this Complaint.

153.     Plaintiffs consents to be a party to this action, pursuant to 29 U.S.C. § 216(b).

154.     At all times relevant to this action, Plaintiffs and Collective Members were employed by Defendants within the meaning of the FLSA, 29 U.S.C. § 203(d).

155.     At all times relevant to this action, Plaintiffs and Collective Members were engaged in commerce and the corporate Defendants were enterprises engaged in commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

156.    Defendants violated the rights of Plaintiffs and Collective Members by failing to pay them for each hour worked in each discrete work week, in violation of the FLSA, 29 U.S.C. §§ 201 *et seq.*

157.    Defendants are liable to Plaintiffs and Collective Members for their unpaid minimum wages, plus an additional equal amount as liquidated damages, reasonable attorney's fees and costs, and any other appropriate relief pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**Fair Labor Standards Act – Unpaid Overtime Wages**

158.    Plaintiffs repeat and reallege all of the above allegations as though fully set forth herein.

159.    Defendants have engaged in a widespread pattern and practice of violating the FLSA, as detailed in this Complaint.

160.    Plaintiffs consents to be a party to this action, pursuant to 29 U.S.C. § 216(b).

161.    At all times relevant to this action, Plaintiffs and Collective Members were employed by Defendants within the meaning of the FLSA, 29 U.S.C. § 203(d).

162.    At all times relevant to this action, Plaintiffs and Collective Members were engaged in commerce and the corporate Defendants were enterprises engaged in commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

163.    Defendants violated the rights of Plaintiffs and Collective Members by failing to pay them overtime compensation at a rate of one and one-half times their regular rate of pay for each hour worked in excess of 40 per week, in violation of the FLSA, 29 U.S.C. § 207(a)(1).

164.    Defendants' failure to pay Plaintiffs and Collective Members overtime compensation was willful within the meaning of the FLSA, 29 U.S.C. § 255.

165.    Defendants are liable to Plaintiffs and Collective Members for their unpaid overtime compensation, plus an additional equal amount as liquidated damages, reasonable attorney's fees and costs, and any other appropriate relief pursuant to 29 U.S.C. § 216(b).

### THIRD CAUSE OF ACTION
**New York Labor Law – Unpaid Minimum Wages**

166.    Plaintiffs repeat and reallege all of the above allegations as though fully set forth herein.

167.    Defendants have engaged in a widespread pattern and practice of violating the NYLL, as detailed in this Complaint.

168.    Defendants violated the rights of Plaintiffs and Class Members by failing to pay them the minimum wage for each hour worked in each discrete work week, in violation of the NYLL.

169.    Defendants are liable to Plaintiffs and Class Members for their unpaid minimum wages, plus an additional equal amount as liquidated damages, reasonable attorney's fees and costs, and any other appropriate relief pursuant to NYLL § 198(1-a).

### FOURTH CAUSE OF ACTION
**New York Labor Law – Unpaid Overtime Wages**

170.    Plaintiffs repeat and reallege all of the above allegations as though fully set forth herein.

171.    NYLL § 160 requires employers to compensate their employees at a rate not less than one and one-half times their regular rate of pay for hours worked in excess of 40 per week.

172.    Defendants have engaged in a widespread pattern and practice of violating the NYLL, as detailed in this Complaint, by failing to pay overtime at a rate of one and one-half of Plaintiffs and Class Members' regular rate of pay for all hours worked over 40 per week.

173.     Defendants' violation was willful and lasted for the duration of all relevant time periods.

174.     Defendants are liable to Plaintiffs and Class Members for their unpaid overtime wages, plus an additional equal amount as liquidated damages, reasonable attorney's fees and costs, and any other appropriate relief pursuant to NYLL § 198(1-a).

## FIFTH CAUSE OF ACTION
### New York Labor Law – Failure to Provide Wage Statements

175.     Plaintiffs repeat and reallege all of the above allegations as though fully set forth herein.

176.     Pursuant to NYLL § 195(3), every employer is required to

furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.

177.     Defendants knowingly failed to comply with this provision by failing to provide Plaintiffs and Class Members with wage statements meeting the requirements laid out in ¶ 123.

178.     NYLL § 198(1)(d) provides that any employee not provided appropriate wage statements may collect damages of $250 for each work day that the violation occurred or continued to occur, up to a total of $5,000 per employee (together with reasonable costs and attorney's fees as well as appropriate injunctive and/or declaratory relief).

179.     During the course of Plaintiffs and Class Members' employment, Defendants consistently and willfully failed to provide them with adequate wage statements as required by New York law.

180.    Defendants are therefore liable to Plaintiffs and Class Members in the amount of $5,000 per employee, plus reasonable attorney's fees and costs and any other relief appropriate under NYLL § 198.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, prays for the following relief:

a.  That, at the earliest possible time, Plaintiffs through their counsel be permitted to give notice of this collective action, or that the Court issue such notice of this collective action, or that the Court issue such notice to all persons who are presently, or have at any time during the three years immediately preceding the filing of this suit, up through and including the date of the Court's issuance of court-supervised notice, been employed by Defendants. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper hourly compensation and overtime wages;

b.  Certification of this case as a class action pursuant to Fed. R. Civ. P. 23;

c.  Designation of the named Plaintiffs as class representative and designation of counsel of record as class counsel;

d.  Unpaid wages, attorneys' fees, costs, and interest pursuant to 29 U.S.C. §§ 201 *et seq.*;

e.  An additional and equal amount in unpaid wages as liquidated damages pursuant to 29 U.S.C. §§ 201 *et seq.*;

f.  Statutory damages pursuant to NYLL §§ 198(1)(b) and (d);

g.  Statutory damages pursuant to NYLL § 195.1; and

25

h.  Issuance of a declaratory judgement that the practices complained of herein are unlawful

under the FLSA and NYLL and a permanent injunction against Defendants' continued

engagement in such practices.

**JURY TRIAL DEMAND**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury on all questions of fact

raised by the Complaint.


Dated:  New York, New York
        August 27, 2021

                                        MENKEN SIMPSON & ROZGER LLP

                                        *s/ Bruce E. Menken*
                                        *s/ Jason Rozger*
                                        *s/ Raya F. Saksouk*
                                        80 Pine St., 33rd Fl.
                                        T: 212-509-1616
                                        F: 212-509-8088
                                        bmenken@nyemployeelaw.com
                                        jrozger@nyemployeelaw.com
                                        rsaksouk@nyemployeelaw.com


                                        WILLIAM K. LI LAW, PLLC
                                        _____
                                        William Li
                                        200 Park Ave., Ste. 1700
                                        New York, NY 10166
                                        T: 212-380-8198
                                        wli@wlilaw.com


                                        *Attorneys for Plaintiffs and the Rule 23
                                        Proposed Class and FLSA Proposed
                                        Collective*