UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
DANIEL WEST, et. al., on behalf of themselves
and all others similarly situated,

               Plaintiffs,

     -against-                            21-cv-5382 (LTS)(SLC)


LASERSHIP, INC., et. al.,

               Defendants.
-----------------------------------------------------------------------X




**MEMORANDUM OF LAW**
**IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR A COLLECTIVE ACTION**
**<u>PURSUANT TO 29 U.S.C. § 216(b)</u>**



Menken Simpson & Rozger LLP
80 Pine Street, 33rd Floor
New York, New York 10005
Tel. (212) 509-1616

William K. Li Law, PLLC
535 Fifth Avenue, 4th Floor
New York, New York 10017
Tel. (212) 380-8198

## TABLE OF CONTENTS

**I. INTRODUCTION**……………………………………………………1

**II. STATEMENT OF FACTS**…………………………………………2

**III. ARGUMENT**………………………………………………….4

A. **The Remedial Purposes of the FLSA Warrant Prompt and Accurate Notice to Potential Collective Action Members**………………………4

B. **Plaintiffs make the required "modest factual showing" that similarly situated plaintiffs exist**…………………………………………6

C. **Defendants' Arguments Regarding Joint Employment are Irrelevant At This Stage**………………………………………………9

D. **Notice Should Be Sent to All New York Subcontractor Drivers of LaserShip**……………………………………………..10

E. **The Court Should Order that Notice Be Sent to Potential Collective Action Members and Order Defendants to Produce Complete Contact Information for all Putative Collective Action Members**……………………………………………12

F. **The Court Should Order Defendants to Produce Potential Collective Members' Contact Information**……………………………………12

G. **The Court Should Permit Plaintiffs to Send a Notice and a Reminder Notice via Mail, Email, and Text Message**………………………13

H. **The Court Should Order Equitable Tolling of the FLSA Statute of Limitations**………………………………………………14

**IV. CONCLUSION**………………………………………………..17

## <u>TABLE OF AUTHORITIES</u>

*Case*                                                                          *Page(s)*

*Barfield v.  New York City Health & Hosps. Corp.,*
   537 F.3d 132 (2d Cir. 2008) ................................................................................... 9

*Benavides v. Serenity Spa NY Inc.,*
   166 F. Supp. 3d 474 (S.D.N.Y. 2016) .................................................................. 12

*Braunstein v. E. Photographic Labs, Inc.,*
   600 F.2d 335 (2d Cir. 1978) ............................................................................... 5, 6

*Cabrera v. Stephens,*
   2017 WL 4326511 (E.D.N.Y. Sept. 28, 2017) .................................................. 13

*Contrera v. Langer,*
   278 F. Supp. 3d 702 (S.D.N.Y. 2017) ................................................................. 7

*Douglas v. Anthem Prods., LLC,*
   2019 WL 78988 (S.D.N.Y. Jan. 2, 2019) ........................................................... 12

*Encino Motorcars, LLC v. Navarro,*
   136 S. Ct. 2117 (2016) ......................................................................................... 4

*Fasanelli v. Heartland Brewery, Inc.,*
   516 F. Supp. 2d 317 (S.D.N.Y. 2007) ................................................................. 6

*Garcia v. Chipotle Mexican Grill, Inc.,*
   2016 WL 6561302 (S.D.N.Y. Nov. 4, 2016).................................................... 11

*Glatt v. Fox Searchlight Pictures Inc.,*
   2013 WL 4834428 (S.D.N.Y. Aug. 26, 2013)................................................... 14

*Gortat v. Capala Bros., Inc.,*
   2010 WL 1423018 (E.D.N.Y. Apr. 9, 2010) ...................................................... 8

*Gurung v. Malhorta,*
   851 F. Supp. 2d 583 (S.D.N.Y. 2012) ................................................................. 4

*Hamadou v. Hess Corp.,*
   915 F. Supp. 2d 651 (S.D.N.Y. 2013) ............................................................ 6, 10

*Hart v. Crab Addison,*
   2015 WL 365785 (W.D.N.Y. Jan. 27, 2015)..................................................... 15

*Hart v. Rick's Cabaret Int'l, Inc.*,
  967 F. Supp. 2d 901 (S.D.N.Y. 2013) ................................................................... 9

*Hernandez v. City of New York*,
  No. 16-CV-3445(RA), 2017 WL 2829816 (S.D.N.Y. June 29, 2017)...................... 13

*Hoffmann v. Sbarro Inc.*,
  982 F.Supp. 249 (S.D.N.Y. 1997) ................................................................... 5, 6, 7

*Hoffmann-LaRoche, Inc. v. Sperling*,
  493 U.S. 165 (1989) ................................................................................... 5, 6, 12

*Huggins v. Chestnut Holdings Inc.*,
  No. 18-CV-1037 (PAC), 2020 WL 4016070 (S.D.N.Y. July 16, 2020) ..................... 9

*Iavorski v. I.N.S.*,
  232 F.3d 124 (2d Cir.2000) ............................................................................... 14

*Jackson v. Bloomberg, L.P.*,
  298 F.R.D. 152 (S.D.N.Y. 2014)................................................................... 6, 14

*Juarez v. 449 Rest., Inc.*,
  29 F. Supp. 3d 363 (S.D.N.Y. 2014) ................................................................. 10

*Kassman v. KPMG LLP*,
  No. 11 CIV. 03743 LGS, 2015 WL 5178400 (S.D.N.Y. Sept. 4, 2015) ............... 14, 15, 16, 17

*Knox v. John Varvatos Enters. Inc.*,
  2017 WL 4675781 (S.D.N.Y. Oct. 17, 2017)......................................................... 13

*Kucher v. Domino's Pizza, Inc.*,
  2017 WL 2987214 (S.D.N.Y. Feb. 13, 2017) ....................................................... 10

*Lee v. ABC Carpet & Home*,
  236 F.R.D. 193 (S.D.N.Y. 2006)....................................................................... 15

*Lu v. Nails by Ann, Inc.*,
  2016 WL 3094002 (S.D.N.Y. June 1, 2016) ..................................................... 8, 10

*Lynch v. United Servs. Auto. Ass'n*,
  491 F. Supp. 2d 357 (S.D.N.Y. 2007) ............................................................... 5, 6

*Malloy v. Richard Fleischman & Assocs. Inc.*,
  2009 WL 1585979 (S.D.N.Y. June 3, 2009) ........................................................... 7

*Martin v. Sprint/United Mgmt. Co.*,
  2016 WL 30334 (S.D.N.Y. Jan. 4, 2016) ....................................................... 12, 14

*McGlone v. Contract Callers, Inc.*,
    867 F. Supp. 2d 438 (S.D.N.Y. 2012) ............................................................... 15

*Mongiove v. Nate's Corp.*,
    2016 WL 590460 (E.D.N.Y. Feb. 11, 2016) ....................................................... 13

*Myers v. Hertz Corp.*,
    624 F.3d 537 (2d Cir. 2010) ..................................................................... 6, 7, 11

*Nabi v. Hudson Group (HG) Retail, LLC*,
    310 F.R.D. 119 (S.D.N.Y. 2015) ..................................................................... 7, 9

*Ramirez v. M.L. Restaurant Corp.*,
    No. 14-CV-4030 (VEC) 2015 WL 12564227 (S.D.N.Y. March 13, 2015) ............ 11

*Raniere v. Citigroup, Inc.*,
    827 F. Supp. 2d 294 (S.D.N.Y. 2011) ................................................................. 5

*Rosario v. Valentine Ave. Disc. Store, Co.*,
    828 F. Supp. 2d 508 (E.D.N.Y. 2011) ............................................................... 10

*Salomon v. Addrely Industries Inc.*,
    847 F. Supp. 2d 561 (S.D.N.Y. 2012) .................................................................. 7

*Sarikaputar v. Veratip Corp.*,
    2018 WL 4109348 (S.D.N.Y. Aug. 29, 2018) ..................................................... 10

*Scott v. Chipotle Mexican Grill, Inc.*,
    954 F.3d 502 (2d Cir. 2020) ............................................................................... 2

*Taveras v. LSTD,LLC*,
    18-CV-903 (VEC), 2018 WL 4103493 (S.D.N.Y. August 28, 2018) ................... 12

*Trinidad v. Pret A Manger (USA) Ltd.*,
    962 F. Supp. 2d 545 (S.D.N.Y. 2013) ......................................................... 10, 11

*Winfield v. Citibank, N.A.*,
    843 F. Supp. 2d 397 (S.D.N.Y. 2012) ......................................................... 6, 8, 11

*Xuguang Chang v. CK Tours, Inc.*,
    18 Civ. 6174 (PAC), 2019 WL 1873022 (S.D.N.Y. April 26, 2019) .................... 6, 7

*Yahraes v. Rest. Assocs. Events Corp.*,
    2011 WL 844963 (E.D.N.Y. Mar. 8, 2011) ......................................................... 15

*Zerilli–Edelglass v. N.Y.C. Transit Auth.*,
    333 F.3d 74 (2d Cir.2003) ................................................................................. 15

*Zheng v. Liberty Apparel Co. Inc.,* 355 F.3d, 61 (2d Cir. 2003)
  355 F.3d ................................................................................................................. 9

*Statutes*

29 U.S.C. § 206 ...................................................................................................... 4

29 U.S.C. § 207(a) ................................................................................................. 4

29 U.S.C. § 216(b) ........................................................................................... 5, 6, 7

29 U.S.C. § 255(a) ................................................................................................. 5

## I. INTRODUCTION

The Plaintiffs in this case, Daniel West ("West) and Romaine Clarke ("Clarke") are "last mile" delivery drivers who perform an integral job in our modern economy of transporting consumer goods. They work long hours and long weeks delivering packages for Defendant LaserShip Inc. ("LaserShip"), which has ridden the e-commerce wave to establish itself as one of the largest shippers in the industry. LaserShip's business depends on making reliable deliveries of the packages entrusted to it by their customers such as Amazon and Blue Apron, so it is no surprise that Lasership holds its drivers to exacting standards, carefully selects who may deliver its packages, and closely supervises their deliveries. Yet, LaserShip wants the authority to control its drivers, but does not want the responsibility of ensuring that they are paid the minimum and overtime wages they are legally entitled to. In an attempt to absolve itself of this responsibility, LaserShip structures its operations such that many of the delivery drivers work full time for LaserShip, but are nominally employed by a so-called "master contractor" – small-time or even solo operations that work at LaserShip's behest, but lack the liquidity to pay their nominal employees properly, or withstand a wage and hour judgement of any size. Plaintiffs, on behalf of themselves, and a class of similarly situated current and former last mile delivery drivers who worked at LaserShip seek, *inter alia*, unpaid minimum wages in violation of the Fair Labor Standards Act ("FLSA") and/or the New York State Labor Law (the "Labor Law"), unpaid overtime wages in violation of FLSA and Labor Law, plus statutory interest and attorneys' fees and costs.

Plaintiffs now move for an order certifying this case as a collective action under the FLSA, approving the proposed collective action notice, compelling LaserShip to immediately disclose the names and last known addresses, telephone numbers and emails of all former and current last mile

delivery drivers employed by it from June 17, 2018 to the present, and leave to post notice of the collective action at in every location in New York State where last mile delivery drivers pickup their packages for delivery as approved by this Court. Plaintiffs also seek equitable tolling of the statute of limitations.   Plaintiffs are promptly making this motion because the information concerning potential additional plaintiffs is urgently required in order to preserve those individuals' claims, for which the statute of limitations is not tolled prior to them opting into this case.  Plaintiffs seek this relief in accordance with the overwhelming precedent in this Circuit, and consistent with recent decisions from this Court, to grant conditional certification of FLSA collective actions after a plaintiff has made a "modest factual showing" to meet his/her "modest" burden. *See Scott v. Chipotle Mexican Grill, Inc.,* 954 F.3d 502 (2d Cir. 2020).

## II. STATEMENT OF FACTS

The facts relevant to this motion are more fully described in the accompanying declaration by Plaintiffs' counsel, the deposition transcripts of Defendant LaserShip and the Plaintiffs West and Clarke, and the other exhibits annexed thereto. LaserShip operates eight "branches," also known as "terminals," in the State of New York from which packages are delivered to recipients in the State of New York.  (Exhibit 1, 30(b)(6) transcript, 14:14-15:12.)  In addition, the Northern New Jersey branch delivers packages to Manhattan (*id.,* 39:21-41:12) and a branch in Connecticut near Port Chester, New York also delivers packages into New York (*id.,* 40:24-41:8).

What LaserShip defines as a "subcontractor"[1] is a delivery driver who works through a "master contractor."  (*Id.,* 25:5-26:3).  "Master Contractors" can also deliver packages (*id.,* 23:10-14) but have signed arbitration agreements with LaserShip (*id.,* 168:11-15) and are consequently

---

[1]  For convenience, Plaintiffs will adopt this definition for purposes of this motion.

not a part of this motion. Each subcontractor is assigned a driver identification number by Lasership. (*Id.,* 26:4-7). Associated with that driver identification number in LaserShip's records is the contact information for each driver; hence LaserShip maintains a list of all subcontractors. (*Id.,* 53:3-21). That driver information number is used in LaserShip's "Electronic Pricing and Commission," or "EPC" database. EPC is used throughout New York State and includes, among other things, delivery information for each package. (*Id.,* 55:23-57:3; 56:22-57:3).

The "Master Contractors" are not required to show any liquidity or ability to pay the subcontractors in their employ (*id.,* 71:22-72:9). LaserShip will reject any subcontractor whom it considers to not have a safe driving record, even if they have a valid driver's license. (*Id.,* 69:29-70:20). LaserShip also conducts a criminal background check on any subcontractor a master contractor proposes to hire for Lasership deliveries (*id.,* 79:6-14), and has the right to instruct a master contractor to not use a subcontractor it considers inappropriate (*id.,* 104:11-22).

Although LaserShip says it does nothing to monitor the subcontractors' working hours (*id.,* 81:8-16), and resolve complaints by drivers about having too many packages to deliver, (*id.,* 98:9-18) LaserShip does keep track of the time of delivery, including the time of the last delivery of the day, with its computer system. (*Id.,* 147:15-148:3). Those systems also keep track of the time the package is accepted by the driver for delivery. (*Id.* 86:4-19). All delivery drivers were required by LaserShip to provide proof of each residential delivery. (*Id.,* 137:15-139:15).

Consistent with LaserShip's hands-off policy towards ensuring its drivers are paid in accordance with the labor laws, Plaintiff Romaine Clarke testified at his deposition that he would deliver packages until 9:30 or 10:00 at night, or midnight during the holiday season (exhibit 2, Clarke transcript, 100:3-13) after starting his day at 5- 5:30 AM (*id.* 93:13-17, 111:10-12, 121:19-122:5). During the busy season, which extended from September to January, he would work six or

seven days per week.  (*Id.*, 240:3-15)*.* Otherwise, he normally delivered six days per week.  (*Id.,* 23:21-23). Mr. Clarke was paid a flat rate of $600 for about seven months at the start of his employment in 2016 (*id.* 78:14:8-16), and later was paid per package.  He was not paid overtime pay for the hours he worked in a week in excess of 40 (*id.,* 45:4-12; 54:14-55:2), but was paid $1.75-$2.00 per package (*id.,* 25:2-4).  He typically delivered 150-190 packages per day (*id.,* 25:5-9).

Plaintiff Daniel West testified that he started his workday at 7:00 AM (exhibit 3, 26:20-25) and worked a varied schedule with a 7-9 hour day (*id.,* 101:13-19).  During holiday periods, Mr. West would work six days per week (*id.,* 110:2-20).  At his hire, Mr. West's agreed weekly salary was $450-$500 (*id.,* 21:5-8) but he was frequently paid less than that amount per week, and very infrequently slightly more (*id.,* 61:17-62:20; exhibit 4).

Clarke testified that the "master contractor" who supervised him had up to 80 drivers at one time (*id.,* 17:14-17) and he estimated that at the Queens warehouse where he worked at the time there were about ten other master contractors employing 20-30 drivers each (*id.,* 19:12-22).  LaserShip's 30(b)(6) witness testified there were "dozens" of master contractors working for LaserShip in New York State, with ten or "significantly more" per terminal.  (Exhibit 1, 59:8-22).

————————

A. **The Remedial Purposes of the FLSA Warrant Prompt and Accurate Notice to Potential Collective Action Members.**

"The FLSA requires employers to pay their employees at least the federal minimum wage for every hour worked." *Gurung v. Malhorta*, 851 F. Supp. 2d 583, 589 (S.D.N.Y. 2012) (citing 29 U.S.C. § 206).  Additionally, "[t]he FLSA requires employers to pay overtime compensation to covered employees who work more than 40 hours in a given week.  The rate of overtime pay must

be 'not less than one and one-half times the regular rate' of the employee's pay." *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2121 (2016) (quoting 29 U.S.C. § 207(a)).  The FLSA specifically provides that any employer who fails to pay its employees required overtime or minimum wage compensation:

> [s]hall be liable to the employee or employees affected in the amount of their minimum wages, or their unpaid overtime compensation . . . and an additional equal amount as liquidated damages.

29 U.S.C. § 216(b).  The statute also provides for collective actions to recover such damages "by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." *Id.*

Pursuant to 29 U.S.C. § 216(b), individuals who wish to join a collective action must file with the court a written consent that the action may proceed on their behalf within the applicable statute of limitations. *Id.* Under the FLSA, an action seeking unpaid minimum wage, overtime, and/or liquidated damages must be commenced within two years, or within three years where the violation of the statute is willful, as alleged here. 29 U.S.C. § 255(a). "FLSA actions are, consequently, not true representative actions as under Rule 23, but instead those actions brought about by individual employees who affirmatively join a single suit." *Raniere v. Citigroup, Inc.*, 827 F. Supp. 2d 294, 313 (S.D.N.Y. 2011) (*rev'd on other grounds*, *Raniere v. Citigroup, Inc.*, 533 Fed. Appx. 11 (2d Cir. 2013).  Thus, "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b).

Until an absent collective action member opts-in, the statute of limitations on his/her claims continues to run. 29 U.S.C. § 255(a); *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 371 (S.D.N.Y. 2007).  Courts therefore often approve expedited notice to preserve the claims of

collective action members. *See Braunstein v. E. Photographic Labs, Inc.*, 600 F.2d 335, 336 (2d Cir. 1978); *Hoffmann v. Sbarro Inc.*, 982 F. Supp. 249, 262 (S.D.N.Y. 1997). In *Hoffmann-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989), the Supreme Court recognized the importance of "accurate and timely" notice so potential FLSA collective members can take action. Even though 29 U.S.C. § 216(b) does not require parties to obtain judicial approval before seeking to advise other similarly-situated persons of their FLSA rights, district courts routinely expedite and facilitate notice to potential opt-in plaintiffs by "conditionally certifying" the § 216(b) collective. *See, e.g.*, *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010); *Xuguang Chang v. CK Tours, Inc.,* 18 Civ. 6174 (PAC), 2019 WL 1873022, at *1 (S.D.N.Y. April 26, 2019); *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 162 (S.D.N.Y. 2014); *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 670 (S.D.N.Y. 2013); *Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397, 405 (S.D.N.Y. 2012); *Lynch*, 491 F. Supp. 2d at 369.

Conditional certification furthers the FLSA's "broad remedial purpose," *Braunstein*, 600 F.2d at 336, and is justified by a court's "managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." *Hoffmann-LaRoche*, 493 U.S. at 170-71; *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 321 (S.D.N.Y. 2007) ("when determining whether a matter shall proceed as a collective action, courts should be mindful of the remedial purposes of the FLSA").

B. **Plaintiffs make the required "modest factual showing" that similarly situated plaintiffs exist.**

Collective actions under the FLSA are litigated in a two-step process. "The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has

occurred." *Myers*, 624 F.3d at 555; *Hoffman*, 982 F. Supp. at 261. The court may authorize sending this notice after plaintiffs "make a modest factual showing that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law." *Xuguang Chang*, 2019 WL 1873022, at *1 (quoting *Myers*, 624 F.3d at 555) (internal quotation marks omitted).  "The focus of the inquiry is not on whether there has been an actual violation of the law but rather on whether the proposed plaintiffs are 'similarly situated' under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated." *Contrera v. Langer*, 278 F. Supp. 3d 702, 713 (S.D.N.Y. 2017) (citations omitted).

A plaintiff's burden at this first stage is "minimal." *Xuguang Chang*, 2019 WL 1873022, at *1;  *Myers*, 624 F.3d at 555 (citations omitted) ("The modest factual showing . . . should remain a low standard of proof."). At this stage, "[t]he burden on plaintiff is not a stringent one, and the Court need only reach a preliminary determination that potential plaintiffs are 'similarly situated.'" *Hoffmann*, 982 F.Supp. at 261.  Indeed, "the purpose of this first stage is merely to determine *whether* "similarly situated" plaintiffs do in fact exist."  *Myers v. Hertz Corp.,* 624 F.3d 537, 555 (2d Cir. 2010) (citation omitted, emphasis in original).

Accordingly, because of this lenient standard, "the court typically grants conditional certification." *Malloy v. Richard Fleischman & Assocs. Inc.*, 2009 WL 1585979, at *2 (S.D.N.Y. June 3, 2009) (quotation omitted).  It is "[a]t the second stage, when the court has a more developed record, the named plaintiffs must prove that the plaintiffs who have opted in are in fact similarly situated to the named plaintiffs." *Nabi v. Hudson Group (HG) Retail, LLC*, 310 F.R.D. 119, 122 (S.D.N.Y. 2015) (quotation omitted); *accord,  Salomon v. Adderley Indus., Inc.,* 847 F. Supp. 2d 561, 564 (S.D.N.Y. 2012) ("In the second stage of analysis, following discovery, a court determines

whether the 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs.").

There are good reasons why the first stage burden is low: "Because the statute of limitations for FLSA claims continues to run for each individual plaintiff until he or she opts in, [] early certification and notice are favored in order to protect plaintiffs' rights." *Gortat v. Capala Bros., Inc.*, 2010 WL 1423018, at *9-10 (E.D.N.Y. Apr. 9, 2010). Concomitant with the minimal burden and the fact that the members of the collective action are not yet before the court, "the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations" at the conditional certification stage. *Lu v. Nails by Ann, Inc.*, 2016 WL 3094002, at *2 (S.D.N.Y. June 1, 2016) (citations omitted). Courts therefore do not weigh the merits of the underlying claims in determining whether potential opt-ins are similarly situated. *Winfield*, 843 F. Supp. 2d at 407 n.6 (defendants' "declarations do not undermine the plaintiffs' showing in the first stage of the conditional certification process.").

Here, Plaintiffs provide ample evidence that there are other LaserShip drivers who are similarly situated. Plaintiff Clarke, who worked at the three Lasership warehouses in Queens, testified that there were up to 80 other drivers employed by the same "master contractor" as him (exhibit 2, 17:14-17) and that there were about ten other "master contractors" who employed about 20-30 drivers each at the warehouse (*id.,* 19:12-22) while Plaintiff West, performing similar duties, worked from the Port Chester, New York warehouse (exhibit 3, 14:22-25). LaserShip acknowledges it employed dozens of master contractors in the State of New York (exhibit 1, 59:8-22), each of whom could be the direct employer of a substantial number of subcontractors.

LaserShip's 30(b)(6) witness testified about the common procedures and practices throughout LaserShip's locations in New York State and New York City. (Exhibit 1, 20:16-23;

8

exhibit 5, 30(b)(6) deposition notice[2]). Packages are received, sorted and provided to "master contractors," for delivery through subcontractor drivers, at eight locations throughout the State of New York. (*Id.,* 14:2-15:12; 21:11-22:16). LaserShip keeps common employment records of the driver-subcontractors working from all of the locations delivering packages in the State of New York (*id.,* 26:4-7; 55:23-57:3; 56:22-57:3). It also maintains records of the time the incoming packages are scanned by the driver at the start of the workday (*id.,* 142:13-20), and the time the last package is delivered (*id.,* 147:7-25). Yet, LaserShip does nothing to systematically track the working hours of those drivers (*id.,* 81:8-16) or whether the subcontractor drivers were paid properly (*id.,* 28:11-19). Accordingly, Plaintiffs have certainly cleared the low bar of showing that there are similarly-situated individuals, namely drivers who worked as subcontractors under LaserShip's business model, who should be given an opportunity to join this lawsuit.

**Defendant's Arguments Regarding Joint Employment are Irrelevant At This Stage**

Defendant LaserShip will likely argue it is not a joint employer of who it calls "subcontractors." Although there is ample evidence LaserShip dictated the employment terms to such a degree that the question could easily be decided in Plaintiffs' favor at this junction, it is nevertheless inappropriate for the Court to decide the issue now. As the Second Circuit has recognized, the determination of joint employer status is rarely appropriate to make at the summary judgment stage, "[b]ecause of the fact-intensive character of a determination of joint employment." *Barfield v. New York City Health & Hosps. Corp.,* 537 F.3d 132, 143-144 (2d Cir. 2008); *see also Zheng v. Liberty Apparel Co. Inc.,* 355 F.3d 61, 76 n. 13 (2d Cir. 2003) (noting "fact-intensive character of the joint employment inquiry") *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901,

---

[2] The 30(b)(6) notice called for testimony, *inter alia*, related to all individuals who held the same position as Plaintiffs West and Clarke. (Exhibit 5, p. 3., ¶¶ 2-4).

941 (S.D.N.Y. 2013); *see also Huggins v. Chestnut Holdings Inc.,* No. 18-CV-1037 (PAC), 2020 WL 4016070, at *1 (S.D.N.Y. July 16, 2020) ("[defendant's joint-employer argument was premature on the motion for conditional certification"). Concomitant with the minimal burden and the fact that the members of the collective action are not yet before the court, "the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations" at the conditional certification stage. *Lu v. Nails by Ann, Inc.*, 2016 WL 3094002, at *2 (S.D.N.Y. June 1, 2016) (citations omitted).

### D.    Notice Should Be Sent to All New York Subcontractor Drivers of LaserShip

"When a proposed collective action encompasses employees of multiple businesses or locations, the Court 'must determine which [locations or businesses] had employees that were 'similarly situated' with regard to the allegedly unlawful overtime policies' before facilitating notice to those employees." *Sarikaputar v. Veratip Corp.*, 2018 WL 4109348, at *4 (S.D.N.Y. Aug. 29, 2018) (quoting *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 557 (S.D.N.Y. 2013)).  To make this determination, "courts consider whether the plaintiffs have made an adequate factual showing to support an inference that . . . a uniform policy or practice exists, and whether the locations share common ownership or management." *Trinidad*, 962 F. Supp. 2d at 558 (citing *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 662 (S.D.N.Y. 2013)); *see also*, *e.g.*, *Rosario v. Valentine Ave. Disc. Store, Co.*, 828 F. Supp. 2d 508, 516–17 (E.D.N.Y. 2011) (finding that, where plaintiffs provided some evidence of common ownership and control of all twenty-seven of defendant's stores, as well as evidence that the same wage and hour violation had occurred consistently at eight of defendant's stores, notice was appropriate to all of the stores).

Indeed, "[c]ourts in this Circuit frequently authorize notice to employees of . . . locations where the named plaintiffs did not work, even in the absence of any declaration by an employee

who worked at that location….Such notice is appropriate so 'long as there is sufficient evidence that…employees [at other locations] were subject to the same allegedly unlawful policies.'" *Kucher v. Domino's Pizza, Inc.*, 2017 WL 2987214, at *6 (S.D.N.Y. Feb. 13, 2017) (quoting *Juarez v. 449 Rest., Inc.*, 29 F. Supp. 3d 363, 370–71 (S.D.N.Y. 2014)). A plaintiff "need not plead the exact same fact scenario at each of the [locations] where he worked in order to establish a common policy or plan." *Garcia v. Chipotle Mexican Grill, Inc.*, 2016 WL 6561302, at *8 (S.D.N.Y. Nov. 4, 2016); *see also Trinidad*, 962 F. Supp. 2d at 558 (where declarants worked at ten of thirty-three commonly owned restaurants, the court asked whether it could "extrapolate from" evidence of violations at these stores to other stores, "based on whether there [were] sufficient allegations of a common policy of violating overtimes rules that extends to other stores").

Here, Plaintiffs have adequately shown that Defendants employed subcontractor drivers throughout the State of New York, and had uniform pay policies - or the lack thereof - towards them.  The two named Plaintiffs worked at four different locations - the Laurel Hill, Queens, JFK, and Mineola branches for Plaintiff Clarke, and the Port Chester location for Plaintiff West.  Defendants' 30(b)(6) testimony covered operations throughout the State of New York, and for all individuals with the same job as Plaintiffs West and Clarke.  (Exhibit 5, 30(b)(6) deposition notice).  Plaintiffs also provided more than enough evidence of LaserShip's common unlawful policy of not tracking drivers' working hours, or paying overtime when hours exceed 40 per week.  Therefore, the Court should permit Plaintiffs to distribute notice to all subcontractors who delivered packages for LaserShip throughout the State of New York.

**E.    The Court Should Order that Notice Be Sent to Potential Collective Action Members and Order Defendants to Produce Complete Contact Information for all Putative Collective Action Members**

Based on the foregoing, the Court should authorize Plaintiffs to disseminate notice to putative members of the collective. *See Myers*, 624 F.3d at 555; *Ramirez*, 2015 WL 12564227, at *2; *Winfield*, 843 F. Supp. 2d at 400-05.  A proposed Notice of Lawsuit and Consent to Join form ("Notice") is attached as Exhibit 6 to the Rozger Declaration.  This Notice provides clear instructions on how to opt in and accurately states the prohibition against retaliation or discrimination for participation in an FLSA action. The Notice further explains the responsibilities that opt-in plaintiffs incur including, *inter alia*, providing information relating to their employment with Defendants, appearing for a deposition, or testifying in court, and also repeatedly and unequivocally indicates that the recipient of the Notice is not necessarily entitled to monetary recovery. The Notice is "timely, accurate, and informative," meeting all legal requirements. *See Hoffmann-LaRoche, Inc.*, 493 U.S. at 172.

**F.    The Court Should Order Defendants to Produce Potential Collective Members' Contact Information.**

Accordingly, in addition to certifying the collective action, Plaintiffs request that the Court also order Defendants to produce the following within fourteen days of its Order:

> A computer-readable data file containing the names, last known mailing addresses, all known home and mobile telephone numbers, all known email addresses, work locations and dates of employment, of all potential collective action members who worked delivering packages as a subcontractor for LaserShip at any point at any location in the State of New York from June 17, 2018 to the present.

*See, e.g.*, *Taveras v. LSTD, LLC,* No. 18-CV-903 (VEC), 2018 WL 4103493, at *2 (S.D.N.Y. Aug. 28, 2018) (citing *Benavides v. Serenity Spa NY Inc.*, 166 F. Supp. 3d 474, 488 (S.D.N.Y. 2016) and *Martin v. Sprint/United Mgmt. Co.*, 2016 WL 30334, at *19-20 (S.D.N.Y. Jan. 4, 2016) (collecting

cases)) ("Courts in this District commonly grant requests for the production of names, mailing addresses, email addresses, telephone numbers, and dates of employment in connection with the conditional certification of a FLSA collective action."); *Douglas v. Anthem Prods., LLC*, 2019 WL 78988, at *5 (S.D.N.Y. Jan. 2, 2019) (ordering "Defendants [to] produce contact information for all potential members of the collective").

**G.    The Court Should Permit Plaintiffs to Send a Notice and a Reminder Notice via Mail, Email, and Text Message.**

Plaintiffs request that the Court allow them to send reminder notices to potential opt-in plaintiffs thirty days after the original mailing of notice and opt-in forms to remind any potential collective members who have not yet opted into the case of the impending deadline for their response, which would be sixty days after sending the original notice. *See Hernandez v. City of New York,* No. 16-CV-3445(RA), 2017 WL 2829816, at *9 (S.D.N.Y. June 29, 2017) (approving a sixty-day notice period and recognizing that "[c]ourts in the Second Circuit generally provide opt-in periods of 60 days"). Courts routinely approve this request. *See, e.g.*, *Knox v. John Varvatos Enters. Inc.*, 2017 WL 4675781, at *15 (S.D.N.Y. Oct. 17, 2017) ("[M]any courts in this district have permitted sending a reminder notice."). Thus, because reminder notices help to "facilitate[] the remedial goals of the FLSA by protecting potential class members against their claims being extinguished by the running limitations period," the Court should authorize Plaintiffs to send a reminder notice here. *Mongiove v. Nate's Corp.*, 2016 WL 590460, at *7 (E.D.N.Y. Feb. 11, 2016).

Plaintiffs should also be permitted to send the original and reminder notices via email, and also to send a text message and reminder text message containing a link to the notices on Plaintiffs' Counsels' website, because many potential plaintiffs may have changed residences since their employment with Defendants ended.  Both Plaintiffs testified they communicated with their

"master contractors" through text messages. (Exhibit 2, 28:13-29-1; exhibit 3, 32:11-15). *See Cabrera v. Stephens*, 2017 WL 4326511, at *8 (E.D.N.Y. Sept. 28, 2017) ("Practical requests such as [emails and text messaging] reasonably further the purpose of notice of a collective action under the FLSA;") *Guzman v. Bullfrog Pest Mgmt., Inc.*, No. 2:16-cv-02089 (DRH)(ARL), ECF No. 24 (E.D.N.Y. May 5, 2017) (granting plaintiffs' request to distribute notice and reminder notice via email and text message "given that Plaintiffs assert that the primary method of communication between employees and the main office was through cellular phones, either via text message or email"); *Martin*, 2016 WL 30334, at *19 ("[C]ourts in this Circuit routinely approve email distribution of notice and consent forms in FLSA cases."). A proposed subject line and body of the email, which shall contain the FLSA collective action notice (and reminder notice, when appropriate) as an email attachment, is attached as Exhibit 7, and a proposed text message is attached as Exhibit 8.

Thus, Plaintiffs request that this Court authorize them to send an email and reminder email with the appropriate notice as an attachment, and a text message and reminder text message containing a link to the original and reminder notices on Plaintiffs' Counsels' websites.

**H.    The Court Should Order Equitable Tolling of the FLSA Statute of Limitations.**

Should the Court grant the instant motion, Plaintiffs respectfully request that, to avoid inequitable circumstances, the FLSA statute of limitations be tolled from September 17, 2021, the date Defendants filed their unsuccessful motion to dismiss, until the Court decides the instant motion. Notwithstanding the FLSA's timeliness requirements, district courts have the discretion to apply equitable tolling to the statute of limitations "as necessary to avoid inequitable circumstances." *Kassman v. KPMG LLP*, No. 11 CIV. 03743 LGS, 2015 WL 5178400, at *3 (S.D.N.Y. Sept. 4, 2015) (quoting *Iavorski v. I.N.S.*, 232 F.3d 124, 129 (2d Cir.2000)). District

14

courts in this Circuit have increasingly granted requests for equitable tolling to avoid the prejudice to actual or potential opt-in plaintiffs that can arise from the unique procedural posture of such cases. *See, e.g.*, *Jackson*, 298 F.R.D. at 170-71 (tolling the statute of limitations as of the date of the filing of the plaintiff's motion); *Glatt v. Fox Searchlight Pictures Inc.*, 2013 WL 4834428, at *2 (S.D.N.Y. Aug. 26, 2013) (tolling statute of limitations as of the date the plaintiff was originally scheduled to file her motion for conditional certification).

To determine whether to apply the principle of equitable tolling, the district court must consider whether the plaintiff (1) "has proved that the circumstances are so extraordinary that the doctrine should apply" and (2) "has acted with reasonable diligence during the time period []he seeks to have tolled." *Kassman*, 2015 WL 5178400, at *4 (quoting *Zerilli–Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80–81 (2d Cir.2003)). If the delay in filing was caused by circumstances outside the control of the party seeking equitable tolling, then the court need not engage in an individual inquiry as to the diligence of each Plaintiff. *Kassman*, 2015 WL 5178400 at *6-7.

Courts have specifically acknowledged that "the delay caused by the time required for a court to rule on a motion [] may be deemed an 'extraordinary circumstance' justifying application of the equitable tolling doctrine." *Yahraes v. Rest. Assocs. Events Corp.*, No. 10-CV-935 SLT, 2011 WL 844963 at *2 (E.D.N.Y. Mar. 8, 2011) (granting equitable tolling as of the dates of service and refiling of conditional certification motion); *Hart v. Crab Addison*, 2015 WL 365785, at *5 (W.D.N.Y. Jan. 27, 2015) (holding that "equitable tolling may be appropriate where "the delay [] may adversely affect the rights of [collective] members who may have no notice of th[e] lawsuit"); *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012) (equitable tolling as of date of filing of conditional certification motion which took four months to decide); *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 199–200 (S.D.N.Y. 2006) (equitable tolling where "the Court

directed Plaintiff after he had filed his complaint to postpone any motions for collective or class action until after its decision regarding summary judgment").

A defendant's "vigorous opposition at every juncture, as well as [] resistance to providing information necessary for the class certification motion" may also justify equitable tolling. *Kassman*, 2015 WL 5178400, at *7. Delays caused by a defendant may warrant equitable tolling, even without any evidence of bad faith. See *Yahraes,* 2011 WL 844963 at *3 ("attribut[ing] no trickery or wrongdoing on the part of defendants" but noting that "defendants' actions re-briefing the certification motion, seeking to defer certification in anticipation of dispositive motions, and failing to produce documents ... have frustrated plaintiffs' diligent attempts to ensure that claims did not expire.").

In *Kassman*, the Court held that the statute of limitations on the plaintiffs' FLSA claim should be equitably tolled from the date on which the defendant's motion to dismiss became fully briefed, because the delay in adjudicating that motion was "the first in a series of extraordinary circumstances that delayed the sending of notice." 2015 WL 5178400, at *8 (quotation omitted). The Court found that the plaintiffs had diligently pursued their claims where "[t]he delay also was caused by not so extraordinary circumstances outside the opt-in plaintiffs' control – namely Defendant's vigorous opposition at every juncture, as well as Defendant's resistance to providing information necessary for the class certification motion." *Id.* At *7.

Here, Defendants' unsuccessful motion to dismiss Plaintiffs' claims was "the first in a series of extraordinary circumstances" that have delayed the sending of notice to potential opt-in plaintiffs. Defendants should not be allowed to benefit, in the form of potential opt-in Plaintiffs' reduced damages, from this unnecessary delay.

16

Further, Plaintiffs have acted with reasonable diligence during the time since Defendant's motion to dismiss was withdrawn on January 4, 2023. Following that withdrawal, but before LaserShip's motion to compel arbitration was decided, discovery was stayed. (Docket # 58). Once arbitration was compelled as to two of the four Plaintiffs herein, Plaintiffs have diligently pursued "phase I" discovery in this case, with the depositions of the two remaining Plaintiffs and a 30(b)(6) deposition of LaserShip being held. The parties are also diligently working through issues related to documentary discovery. Since the delay in filing was caused by circumstances outside Plaintiffs' control, the Court need not engage in an individual inquiry as to the diligence of each Plaintiff. *Kassman*, 2015 WL 5178400 at *6-7. Therefore, Plaintiffs have acted with reasonable diligence, and the Court should therefore grant equitable tolling from September 17, 2021, the date Defendants' unsuccessful motion to dismiss was filed.

## IV. CONCLUSION

Based on the foregoing, Plaintiffs' Motion for an order certifying this case as a collective action under the FLSA, approving the proposed collective action notice, compelling LaserShip to immediately disclose the names and last known addresses, telephone numbers and emails of all former and current last mile delivery drivers employed by it from June 17, 2018 to the present, granting leave to post notice of the collective action at in every location in New York State where last mile delivery drivers pickup their packages for delivery, and for equitable tolling of the statute of limitations beginning on September 17, 2021, be granted.

Dated: New York, New York
      October 30, 2023

17

MENKEN SIMPSON & ROZGER LLP


By:      _____/s/_____
         Jason Rozger
         80 Pine Street, 33rd Floor
         New York, New York 10005
         Tel. (212) 509-1616
         jrozger@nyemployeelaw.com


WILLIAM K LI LAW, PLLC


William Li, Esq.
535 Fifth Avenue, 4th Floor.
New York, NY 10017
Tel: (212) 380-8198
wli@wlilaw.com


ATTORNEYS FOR PLAINTIFFS