UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
DANIEL WEST, et. al., on behalf of themselves
and all others similarly situated,

                           Plaintiffs,

      -against-                                       21-cv-5382 (LTS)(SLC)

LASERSHIP, INC., et. al.,

                           Defendants.
-------------------------------------------------------------------X

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR A COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)**

# **TABLE OF CONTENTS**

I.     INTRODUCTION ......................................................................................................................... 1

II.    ARGUMENT ............................................................................................................................... 1

  A.   Plaintiffs Have Introduced Sufficient Evidence that Similarly Situated Drivers Exist. ........ 1

     1.   Defendants' Brief Contains Numerous Factual Inaccuracies. ........................................... 2

     2.   The Court Should Follow Second Circuit Precedent in Granting Conditional
     Certification upon a "Modest Factual Showing." ..................................................................... 2

     3.   Plaintiffs Have Introduced Ample Evidence Showing they are Similarly Situated with
     Other Drivers. ............................................................................................................................ 3

  B.   Plaintiffs Have Introduced Sufficient Evidence that Defendants, Including LaserShip,
  violated the FLSA's Minimum Wage and Overtime Provisions. .................................................. 6

  C.   The Court Should Order Equitable Tolling of the FLSA Statute of Limitations .................. 7

  D.   Notice Should Be Sent to All New York Subcontractor Drivers of LaserShip ..................... 9

III.   CONCLUSION .......................................................................................................................... 10

# **TABLE OF AUTHORITIES**

*Cases*

*Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132 (2d Cir. 2008) ............................ 1

*Brock v. Superior Care, Inc.*, 840 F.2d 1054 (2d Cir.1988) ................................................................ 5

*Cabrera v. Stephens*, 2017 WL 4326511 (E.D.N.Y. Sept. 28, 2017) .............................................. 10

*Campbell v. Louisiana*, 523 U.S. 392, 118 S.Ct. 1419, 140 L.Ed.2d 551 (1998) .............................. 8

*Garcia v. Chipotle Mexican Grill, Inc.*, 2016 WL 6561302 (S.D.N.Y. Nov. 4, 2016) ...................... 6

*Gayle v. Harry's Nurses Registry, Inc.*, 594 F. App'x 714 (2d Cir. 2014) .................................... 5, 6

*Gortat v. Capala Bros., Inc.*, 2010 WL 1423018 (E.D.N.Y. Apr. 9, 2010) ....................................... 3

*Guzman v. Bullfrog Pest Mgmt., Inc.*, No. 2:16-cv-02089 (DRH)(ARL), ECF No. 24 (E.D.N.Y. May 5, 2017) .................................................................................................................................. 10

*Huggins v. Chestnut Holdings Inc.*, No. 18-CV-1037 (PAC), 2020 WL 4016070 (S.D.N.Y. July 16, 2020) ................................................................................................................................................ 1

*Kassman v. KPMG LLP*, No. 11 CIV. 03743 LGS, 2015 WL 5178400 (S.D.N.Y. Sept. 4, 2015) ... 9

*Lucas v. JJ's of Macomb, Inc.*, 321 F. Supp. 3d 882 (C.D. Ill. 2018) ................................................ 8

*Martin v. Sprint/united Mgmt. Co.*, No. 15 CIV. 5237 (PAE), 2016 WL 30334 (S.D.N.Y. Jan. 4, 2016) .............................................................................................................................................. 10

*Myers v. Hertz Corp.*, 624 F.3d 537 (2d Cir. 2010) .......................................................................... 5

*Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502 (2d Cir. 2020) .................................................. 3

*Stewart v. Hudson Hall LLC*, No. 20-cv-885 (PGG)(SLC), 2021 WL 1750368 (S.D.N.Y. May 4, 2021) ................................................................................................................................................ 7

*United States v. Cook*, 795 F.2d 987 (Fed. Cir. 1986) ...................................................................... 8

*Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F.Supp.2d 445 (S.D.N.Y. 2011) ............................. 8

*Xuguang Chang v. CK Tours, Inc.*, 18 Civ. 6174 (PAC), 2019 WL 1873022 (S.D.N.Y. April 26, 2019) ................................................................................................................................................ 5

*Yahraes v. Rest. Assocs. Events Corp.*, No. 10-CV-935 SLT, 2011 WL 844963 (E.D.N.Y. Mar. 8, 2011) ................................................................................................................................................ 9


*Young v. Cooper Cameron Corp.,* 586 F.3d 201 (2d Cir. 2009) ....................................................... 3

*Zheng v. Liberty Apparel Co. Inc.,* 355 F.3d 61 (2d Cir. 2003) ........................................................ 1


*Barfield v. New York City Health & Hosps. Corp.,*
   537 F.3d 132 (2d Cir. 2008) ........................................................................................................ 1

I. **INTRODUCTION**

Plaintiffs submit this Reply brief in further support of their motion seeking an order certifying this case as a collective action under the FLSA, approving the proposed collective action notice, compelling LaserShip to immediately disclose the names and last known addresses, telephone numbers and emails of all former and current last mile delivery drivers employed by it from June 17, 2018, to the present, and leave to post notice of the collective action at every location in New York State where last mile delivery drivers pick up their packages for delivery. Plaintiffs also seek equitable tolling of the statute of limitations. Defendants' objections fail to counter the overwhelming precedent in this Circuit, consistent with recent decisions from this Court, and Plaintiffs' Motion should therefore be granted in its entirety.

II. **ARGUMENT**

A. ***Plaintiffs Have Introduced Sufficient Evidence that Similarly Situated Drivers Exist.***

As Plaintiffs predicted, Defendants attempt to leapfrog the established process for collective certification and argue the merits of the joint employer issue to which they will surely turn for their defense in the later stages of this case. However, as Defendants admit, *see* Defendants' brief, ECF 106 p. 15, this argument is premature and largely irrelevant at this juncture. *See Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 143-144 (2d Cir. 2008) (joint employer issue premature "[b]ecause of the fact-intensive character of a determination of joint employment."); *Zheng v. Liberty Apparel Co. Inc.,* 355 F.3d 61, 76 n. 13 (2d Cir. 2003) (noting "fact-intensive character of the joint employment inquiry"); *Huggins v. Chestnut Holdings Inc.,* No. 18-CV-1037 (PAC), 2020 WL 4016070, at *1 (S.D.N.Y. July 16, 2020) ("[defendant's joint-employer argument was premature on the motion for conditional certification").

To the extent that issues considered in the joint employment analysis are relevant to the issue of whether Plaintiffs are similarly situated with other drivers for purposes of the instant motion, Plaintiffs have introduced ample evidence that they are similarly situated, as outlined below. However, it is necessary to first address numerous factual inaccuracies in Defendants' brief with regard to their joint employer arguments.

### 1. *Defendants' Brief Contains Numerous Factual Inaccuracies.*

Defendants disingenuously claim that the record shows that "[t]he Delivery Service Providers are solely in charge of (i) hiring/terminating subcontractors; (ii) negotiating payment terms and paying subcontractors; (iii) setting work schedules; (iv) assigning subcontractors their deliveries; (v) communicating with LaserShip regarding the services the subcontractor performs; and (vi) resolving any delivery issues that may arise during the workday." Def. brief, p. 4. In fact, even the parties' limited early discovery has revealed that LaserShip (i) has the right to veto any hiring or firing decision, and must "prequalify" drivers hired by subcontractors. (Ex. 1, ECF No. 102-1, 69-70, 104, 164:10-165:18); (ii) sets the rate of payment to subcontractors by its control over payment to the prime contractors, who have no ability to pay their employees absent payments from LaserShip, *id.* at pp. 71-72; (iii) requires drivers to start deliveries early in the morning once the "sort" of packages into routes is completed, and if the sort is not completed early enough, requires the drivers to help sort the packages (ex. 2, 241:10-20); and (iv) communicates to subcontractors using the prime contractors as its mouthpieces, such as when Plaintiff Clarke received a message from LaserShip through his contractor reminding him to wear his uniform (ex. 9).

### 2. *The Court Should Follow Second Circuit Precedent in Granting Conditional Certification upon a "Modest Factual Showing."*

Defendants ask the Court to ignore established Second Circuit precedent to apply a heightened standard to the question whether Plaintiffs have met their burden of showing that similarly situated drivers exist. Defendants admit the Second Circuit has indicated no intention of changing the current standard which grants conditional certification of FLSA collective actions after a plaintiff has made a "modest factual showing" to meet his/her "modest" burden. *See* Def. brief, p. 14. Yet, Defendants ask the Court to ignore this precedent and require Plaintiffs to "prove" that potential opt-in plaintiffs are similarly situated. *Id.* Significantly, Defendants are asking the Court to apply this heightened standard *after* the parties have already engaged in very limited discovery and Plaintiffs have submitted their briefing for the instant motion, essentially changing the rules after most of the game has already been played, yet *before* notice can be sent to potential opt-in plaintiffs.

In keeping with the FLSA's remedial nature, *Young v. Cooper Cameron Corp.,* 586 F.3d 201 (2d Cir. 2009), the Second Circuit applies a low burden to Plaintiffs in the first stage of the collective certification process: "Because the statute of limitations for FLSA claims continues to run for each individual plaintiff until he or she opts in, [] early certification and notice are favored in order to protect plaintiffs' rights." *Gortat v. Capala Bros., Inc.*, 2010 WL 1423018, at *9-10 (E.D.N.Y. Apr. 9, 2010); *see also Scott v. Chipotle Mexican Grill, Inc.,* 954 F.3d 502 (2d Cir. 2020) (reiterating two-step process for certifying FLSA collective actions and finding the district court erred in applying a "heightened" level of scrutiny similar to a Rule 23 class action analysis).

Rather than acquiesce to Defendants' request that the law be adjusted to suit their interests, the Court should apply the Second Circuit's longstanding precedent and grant conditional certification upon a "modest factual showing" that other drivers are similarly situated.

3. <u>Plaintiffs Have Introduced Ample Evidence Showing they are Similarly Situated with Other Drivers.</u>

3

Regardless of which standard the Court applies, Plaintiffs have introduced more than enough evidence to meet their burden at this stage of the litigation to show that similarly situated drivers exist. Plaintiff Clarke, who worked at the three LaserShip warehouses in Queens, testified that there were up to 80 other drivers employed by the same "master contractor" as him (Ex. 2, 17:14-17) and that there were about ten other "master contractors" who employed about 20-30 drivers each at the warehouse (*id.,* 19:12-22) while Plaintiff West, performing similar duties, worked from the Port Chester, New York warehouse (Ex. 3, 14:22-25). LaserShip acknowledges it employed dozens of master contractors in the State of New York (Ex. 1, 59:8-22), each of whom could be the direct employer of a substantial number of subcontractors.

LaserShip's 30(b)(6) witness testified about the common procedures and practices throughout LaserShip's locations in New York State and New York City. (Ex.1, 20:16-23; ex.5, 30(b)(6) deposition notice[1]). Packages are received, sorted, and provided to "master contractors," for delivery through subcontractor drivers, at eight locations throughout the State of New York. (*Id.,* 14:2-15:12; 21:11-22:16). LaserShip keeps common employment records of the driver-subcontractors working from all locations delivering packages in the State of New York (*id.,* 26:4-7; 55:23-57:3; 56:22-57:3). It also maintains records of the time the incoming packages are scanned by the driver at the start of the workday (*id.,* 147:7-25). Yet, LaserShip does nothing to systematically track the working hours of those drivers (*id.,* 81:8-16) or whether the subcontractor drivers were paid properly (*id.,* 28:11-19). Accordingly, Plaintiffs have certainly cleared the low bar of showing there are similarly situated individuals, namely, drivers who worked as subcontractors under LaserShip's business model, who should be given an opportunity to opt into this case.

---

[1] The 30(b)(6) notice called for testimony, *inter alia*, related to all individuals who held the same position as Plaintiffs West and Clarke. (Exhibit 5, p. 3., ¶¶ 2-4).

4

Finally, delivering packages is LaserShip's and its subcontractors' primary business function. "[T]he extent to which the work [performed by a putative employee] is an integral part of the employer's business" is a key consideration in determining whether a worker is an employee or independent contractor. *Gayle v. Harry's Nurses Registry, Inc.*, 594 F. App'x 714, 717 (2d Cir. 2014) (quoting *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1058–59 (2d Cir.1988)). In *Gayle*, the Second Circuit found the Plaintiff nurses were employees rather than independent contractors in part because "placing nurses accounts for Harry's only income; the nurses are not just an integral part but the *sine qua non* of Harry's business." *Gayle*, 594 F. App'x 718. Similarly, here the Plaintiff drivers' job duties of delivering packages constitute the entirety of LaserShip's business, not an ancillary function such as IT support or payroll administration which is typically outsourced by companies to contractors with expertise in such areas.

Defendants repeatedly emphasize the unremarkable fact that variations in Plaintiffs' work experiences exist, even among employees of the same provider. This argument misses the point: Plaintiffs are similarly situated in that they have all been misclassified as independent contractors by LaserShip and paid in violation of the FLSA, which meets their burden to "make a modest factual showing that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law." *Xuguang Chang v. CK Tours, Inc.*, 18 Civ. 6174 (PAC), 2019 WL 1873022, at *1 (S.D.N.Y. April 26, 2019) (quoting *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010)) (internal quotation marks omitted). A plaintiff "need not plead the exact same fact scenario at each of the [locations] where he worked in order to establish a common policy or plan." *Garcia v. Chipotle Mexican Grill, Inc.*, 2016 WL 6561302, at *8 (S.D.N.Y. Nov. 4, 2016). In fact, Defendants

5

admit that "*LaserShip's* [] operations vary," i.e., while there are differences among the warehouses, they are all the operations of LaserShip. Def. brief, pp. 6-8.

*Korenblum*, cited by Defendants, is readily distinguishable. As explained in *Gayle*, *supra*, Plaintiffs' function as employees of LaserShip was central to LaserShip's core business of delivering packages, not an ancillary function like the IT contractors in *Korenblum*. Further, in *Korenblum*, the Court denied conditional certification where the record had no evidence that "Citi exerted control over [its] IT vendors' compensation policies, let alone evidence suggesting that Citi dictated that nonbillable hours be uncompensated." Here, Plaintiffs provide ample evidence that LaserShip controlled driver's working conditions through its master contractors. *See supra*, pp. 4-5.

### B. Plaintiffs Have Introduced Sufficient Evidence that Defendants, Including LaserShip, violated the FLSA's Minimum Wage and Overtime Provisions

Contrary to Defendants' assertion, Plaintiffs have presented ample evidence that they and other drivers worked overtime on a regular basis and were not paid properly for these overtime hours, or paid the minimum wage for their first 40 hours of each week worked. First, Defendants incorrectly claim that Plaintiffs' 7-9 hours worked for each of the five days of the week produces an average hours worked per week of 40 or less. *See* Def. MOL, p. 20. In fact, this means that Plaintiffs could have worked up to five hours' overtime each week. Further, both Plaintiffs testified that they regularly worked more than five days per week during the holiday season, which extended from September to January. (Ex.2, 100:3-13, 93:13-17, 111:10-12, 121:19-122:5; ex.3, 110:2-20.)

Here, Plaintiffs have adequately shown that Defendants employed subcontractor drivers throughout the State of New York and had uniform unlawful pay policies across the state. The two named Plaintiffs worked at four different locations - the Laurel Hill, Queens, JFK, and Mineola branches for Plaintiff Clarke, and the Port Chester location for Plaintiff West. Defendants' 30(b)(6)

6

testimony covered operations throughout the State of New York, and for all individuals with the same job as Plaintiffs West and Clarke. (Pl. MOL Ex. 5, 30(b)(6) deposition notice). Plaintiffs also provided more than enough evidence of LaserShip's common unlawful policy of not tracking drivers' working hours, or paying overtime when hours exceed 40 per week. *See supra*; *see also* Pl. MOL, pp. 2-4. Therefore, the Court should permit Plaintiffs to distribute notice to all subcontractors who delivered packages for LaserShip throughout the State of New York.

*Stewart v. Hudson Hall LLC*, No. 20-cv-885 (PGG)(SLC), 2021 WL 1750368, at *8 (S.D.N.Y. May 4, 2021), cited by Defendants, does not counsel a different result in this case. In *Stewart*, the lone named plaintiff did not provide a single example of any employee other than himself whom Defendants did not pay proper overtime wages, and the Defendants introduced evidence showing they *had* paid overtime to both the plaintiff and 48 other employees. *Id.* Here, the evidence after only limited discovery includes the testimony of two named Plaintiffs who worked at four different locations, and testified that there were dozens of other workers at the same locations performing the same job duties and working under the same policies. *See* Pl. MOL, pp. 3-4.

### C. The Court Should Order Equitable Tolling of the FLSA Statute of Limitations.

Defendants first argue, in a single sentence of their twenty-five page brief, that Plaintiffs lack standing to seek equitable tolling on behalf of potential plaintiffs who have not yet opted into this case, citing *United States v. Cook*, 795 F.2d 987, 994 (Fed. Cir. 1986). In fact, numerous courts have granted equitable tolling in this precise circumstance. In *Lucas v. JJ's of Macomb, Inc.*, 321 F. Supp. 3d 882, 889–90 (C.D. Ill. 2018), the Court explained that *Cook* did "not establish that tolling the statute of limitations before conditional certification is necessarily advisory," and found that the plaintiffs met the three required conditions for asserting the rights of third parties: (1) the plaintiff

7

has an injury in fact; 2) there was some hindrance to the third parties in asserting their own rights; and 3) the plaintiff shares a close relationship to the third parties." *Id.* (quoting *Campbell v. Louisiana*, 523 U.S. 392, 397, 118 S.Ct. 1419, 140 L.Ed.2d 551 (1998)). Similarly, here, (1) Plaintiffs have sufficiently alleged they have suffered the injury of unpaid overtime and minimum wages, (2) the extraordinary circumstances detailed above have caused a delay that poses a hindrance to the rights of potential opt-ins who have not received notice due to the delay and whose claims may expire before they do receive notice; and (3) Plaintiffs are sufficiently closely related to the potential opt-ins because they share the common issues and interests that render them similarly situated for purposes of this motion. *See Lucas*, 321 F.Supp.2d at 890.

Defendants' next one-sentence argument, supported only by citation to *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F.Supp.2d 445, 450 (S.D.N.Y. 2011), is similarly unavailing. In *Whitehorn*, the Court denied equitable tolling at the certification stage because it was not clear whether any potential plaintiffs would be barred from the action due to the delay in sending the notice. Here, the two named Plaintiffs began working for Defendants, and being harmed by their unlawful pay policies, in 2016 and 2018. *See* First Am. Compl., ECF No. 22 at ¶¶ 67, 113. This means that anyone who was working in the same conditions as Plaintiffs at the time they began their positions will already be left with reduced damages due to the statute of limitations, and with each day that passes their damages will be further reduced. Therefore, there is no question that the delay in sending notice here has practical consequences for an unknown number of opt-in Plaintiffs.

Finally, contrary to Defendants' claims that Plaintiffs were dilatory in filing the instant motion, Plaintiffs have moved for conditional certification as quickly as possible. As noted in Plaintiffs' Memorandum of Law in Support of the instant Motion ("Pl. MOL"), both "the delay caused

8

by the time required for a court to rule on a motion" and the delay caused by Defendants' "vigorous opposition at every juncture" may justify equitable tolling. *See* Pl. MOL, pp. 15-16 (collecting cases, including quoting *Yahraes v. Rest. Assocs. Events Corp.*, No. 10-CV-935 SLT, 2011 WL 844963 at *2 (E.D.N.Y. Mar. 8, 2011) and *Kassman v. KPMG LLP*, No. 11 CIV. 03743 LGS, 2015 WL 5178400, at *7 (S.D.N.Y. Sept. 4, 2015) for the within quoted language).

Here, Defendants' unsuccessful motion to dismiss Plaintiffs' claims was "the first in a series of extraordinary circumstances" that have delayed the sending of notice to potential opt-in plaintiffs. Defendants should not be allowed to benefit, in the form of potential opt-in Plaintiffs' reduced damages, from this unnecessary delay.

Further, Plaintiffs have acted with reasonable diligence during the time since Defendants' motion to dismiss was withdrawn on January 4, 2023. Following that withdrawal, but before LaserShip's motion to compel arbitration was decided, discovery was stayed. (Docket # 58). Once arbitration was compelled as to two of the four Plaintiffs herein, Plaintiffs have diligently pursued "phase I" discovery in this case, holding depositions of the two remaining Plaintiffs and Defendants' 30(b)(6) representative. Therefore, Plaintiffs have acted with reasonable diligence, and the Court should grant equitable tolling from September 17, 2021, the date Defendants' unsuccessful motion to dismiss was filed.

### D. *Notice Should Be Sent to All New York Subcontractor Drivers of LaserShip*

Defendants seek to delay this matter even further by requesting 21 days to meet and confer with Plaintiffs regarding their objections to the notice proposed by Plaintiffs. It is not necessary to spend three weeks discussing these objections, and likely even longer briefing them given Defendants seem to anticipate submitting outstanding issues to the Court for resolution. Defendants have

9

already enumerated their objections to Plaintiffs' standard proposed notice in their brief and their objections are largely unfounded. *See Cabrera v. Stephens*, 2017 WL 4326511, at *8 (E.D.N.Y. Sept. 28, 2017) ("Practical requests such as [emails and text messaging] reasonably further the purpose of notice of a collective action under the FLSA;"); *Guzman v. Bullfrog Pest Mgmt., Inc.*, No. 2:16-cv-02089 (DRH)(ARL), ECF No. 24 (E.D.N.Y. May 5, 2017) (granting plaintiffs' request to distribute notice and reminder notice via email and text message "given that Plaintiffs assert that the primary method of communication between employees and the main office was through cellular phones, either via text message or email"); *Martin v. Sprint/united Mgmt. Co.*, No. 15 CIV. 5237 (PAE), 2016 WL 30334, at *19 (S.D.N.Y. Jan. 4, 2016) ("[C]ourts in this Circuit routinely approve email distribution of notice and consent forms in FLSA cases.").

Further, the potential issues raised by Defendants with identifying contact information for some plaintiffs are not necessary to resolve before the Court approves the form and content of the notice. If there are issues with obtaining contact information for certain subcontractors, those issues can be resolved separately. The logistics of notice do not need to delay approval of the form and content of the notice.

### III.  CONCLUSION

Based on the foregoing, Plaintiffs' Motion for an order certifying this case as a collective action under the FLSA, approving the proposed collective action notice, compelling LaserShip to immediately disclose the names and last known addresses, telephone numbers and emails of all former and current last mile delivery drivers employed by it from June 17, 2018 to the present, granting leave to post notice of the collective action at in every location in New York State where last mile delivery drivers pickup their packages for delivery, and for equitable tolling of the statute of limitations beginning on September 17, 2021, be granted.

Dated: New York, New York
December 22, 2023

                                      MENKEN SIMPSON & ROZGER LLP

By:       /s/
      Jason Rozger
      80 Pine Street, 33rd Floor
      New York, New York 10005
      Tel. (212) 509-1616
      jrozger@nyemployeelaw.com

WILLIAM K LI LAW, PLLC

William Li, Esq.
535 Fifth Avenue, 4th Floor.
New York, NY 10017
Tel: (212) 380-8198
wli@wlilaw.com

ATTORNEYS FOR PLAINTIFFS

11