UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL WEST, ROMAINE CLARKE, RYON MORGAN, and SAADALA ABOULESSAN, on behalf of themselves and all others similarly situated,<br><br>                                             Plaintiffs,<br>                    v.<br><br>LASERSHIP, INC. et al.,<br><br>                                             Defendants. | CIVIL ACTION NO. 21 Civ. 5382 (LTS) (SLC)<br><br>**OPINION & ORDER** |

**SARAH L. CAVE,** United States Magistrate Judge.

## I. INTRODUCTION

Plaintiffs Daniel West ("West") and Romaine Clarke ("Clarke," with West, "Plaintiffs"),[1] filed this putative class and collective action seeking to recover unpaid overtime and related relief under the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA"), and the New York Labor Law, §§ 190 et seq. ("NYLL"), against Defendants LaserShip, Inc. ("LaserShip"); So Sure Transports, Inc. ("So Sure"); Richard Grace and Richard LLC ("RGR"); and unnamed entities. (ECF No. 22 (the "FAC")).[2] Following limited discovery (see ECF No. 76), Plaintiffs now move for conditional certification of a collective action and related relief under 29 U.S.C. § 216(b) (ECF No. 101 (the "Motion")), which LaserShip has opposed. (ECF No. 106 (the "Opposition")). For the reasons set forth below, the Motion is GRANTED IN PART and DENIED IN PART.

---

[1] This Opinion and Order does not address the claims of Plaintiffs Ryon Morgan ("Morgan") and Saadala Aboulessan ("Aboulessan"), which have been stayed pending arbitration. (ECF No. 59 at 5).
[2] Plaintiffs dismissed without prejudice their claims against Defendant Steven Trucking, Inc. ("Steven"). (ECF No. 82). The Clerk of the Court has entered a Certificate of Default as to So Sure and RGR (ECF No. 79), leaving LaserShip as the only remaining active Defendant.

## II. BACKGROUND[3]

### A. Factual Background[4]

#### 1. LaserShip's Operations

LaserShip is a transportation and logistics company that assists its customers in "(1) developing solutions to reduce transportation and increase efficiency in the customer's supply chain, . . . and (2) providing warehouse services." (ECF No. 106-3 ¶ 3). Among the services LaserShip "facilitates" for its customers are business-to-business, residential, and on-demand deliveries. (Id. ¶ 5). To service customers in New York State, LaserShip operates nine facilities—also called "branches" or "terminals"—in Albany, Buffalo, Binghamton, Newburgh, Queens, Rochester, Syracuse, Mineola, and Stamford, Connecticut (formerly in Port Chester). (ECF Nos. 102-1 at 3; 106-3 ¶ 16).[5] The products LaserShip delivers for its customers, and its customers' instructions and manner of communication, vary across the nine New York facilities. (ECF No. 106-3 ¶¶ 20–22).

To provide delivery services, "LaserShip contracts with three categories of Delivery Service Providers: Master Contractors, Courier Service Providers (CSPs), and Independent Service Providers (ISPs)." (ECF No. 106-3 ¶ 6). Master Contractors—such as So Sure and RGR—contract directly with LaserShip "and deliver products under LaserShip's interstate motor carrier

---

[3] In deciding the Motion, the Court has considered: (1) the FAC (ECF No. 22), (2) the Declaration of Jason J. Rozger in support of the Motion and exhibits thereto (ECF Nos. 102 – 102-9), (3) Plaintiffs' Memorandum of Law (ECF No. 103), (4) LaserShip's Memorandum of Law and exhibits thereto (ECF Nos. 106 – 106-6), (5) Plaintiffs' reply (ECF No. 111 (the "Reply")), (6) the Declaration of Jason J. Rozger in further support of the Motion and exhibit thereto (ECF Nos. 112 – 112-1), and (7) LaserShip's Notice of Supplemental Authority. (ECF No. 117 – 117-1).
[4] Lasership has disputed Plaintiffs' claims and denied any liability. (ECF Nos. 73; 106). Accordingly, this Factual Background does not represent findings of fact for purposes of any future proceeding.
[5] A LaserShip warehouse in New Jersey also services Manhattan. (ECF No. 102-1 at 8).

authority issued by the Federal Motor Carrier Safety Administration" ("FMCSA"), while the CSPs and ISPs have their own FMCSA authority.  (ECF Nos. 106-3 ¶¶ 7–9, 11; 106-5; see ECF No. 22 ¶¶ 25, 28).  Master Contractors perform deliveries themselves or through individuals they have hired, while CSPs perform delivery services using contractors and ISPs using employees.  (ECF No. 106-3 ¶¶ 7–9; see ECF No. 102-1 at 5).  LaserShip refers to workers hired by Master Contractors, CSPs, or ISPs as "subcontractors[,]" to each of whom it assigns a driver identification number.  (ECF No. 106-3 ¶ 10; see ECF No. 102-1 at 6).  Between June 2018 and October 2022—when LaserShip began using its "Open Force" tracking system—LaserShip contracted with 1,258 Master Contractors, who in turn used nearly 4,000 subcontractors, to provide delivery services in New York.  (ECF No. 106-3 ¶ 11).  In addition, since October 2022, LaserShip has contracted with "at least 20 CSPs and ISPs (each [of] whom hired multiple subcontractors) to provide delivery services in New York[.]"  (Id.)

Delivery Service Providers—Master Contractors, CSPs, and ISPs—negotiate with LaserShip terms of service, including "(1) the rates for performing services[,] (2) the amount of advertising revenue received for their subcontractors wearing LaserShip branded apparel or applying Laser[S]hip logos to their vehicles[,] (3) the service territory[,] and (4) the type of product delivered."  (ECF No. 106-3 ¶ 13).  Under their contracts with LaserShip, "Delivery Service Providers are responsible for (i) hiring/terminat[ing] subcontractors[,] (ii) negotiating payment terms and paying subcontractors[,] (iii) setting work schedules[,] (iv) assigning subcontractors their delivery route for the day[,] and (v) communicating with their subcontractors to resolve any delivery issues that may arise."  (Id. ¶ 14; see ECF No. 106-5 at 4–5).  LaserShip does not maintain timekeeping or payroll records or complete contact information for subcontractors and does not

have policy and procedure manuals or training programs for Delivery Service Providers or subcontractors, but it does maintain in its Electronic Pricing and Commission ("EPC") system a list of the subcontractors' driver identification numbers and delivery information. (ECF Nos. 102-1 at 10; 106-3 ¶¶ 15, 23). LaserShip confirms that subcontractors have a safe driving record and no criminal record. (ECF No. 102-1 at 12–14, 18).

Delivery Service Providers typically receive one day in advance information about the number and type of packages needing delivery, and then choose the vehicle and subcontractor to make the delivery. (ECF No. 106-3 ¶¶ 17, 25). Delivery Service Providers or the subcontractors retrieve packages from either a LaserShip warehouse or a customer location. (Id. ¶ 17). For packages at a LaserShip warehouse, Delivery Service Providers instruct the subcontractors when to arrive at the warehouse to retrieve the packages assigned to them, scan the packages into a phone application, and load the packages into their vehicle for delivery. (Id. ¶ 18). The "Elli" application, which LaserShip developed, is the most common method for Delivery Service Providers and subcontractors to track package loading and provide proof of delivery to LaserShip. (ECF Nos. 102-1 at 20–21; 106-3 ¶ 19). For some packages, such as on-demand deliveries, delivery information is not transmitted through the Elli application but rather by another method from LaserShip to the Delivery Service Provider. (ECF Nos. 106-3 ¶ 19; 106-4 at 37–38).

2. **Plaintiffs' Employment**

   a. **West**

From December 15, 2018 until May 15, 2020, West worked for LaserShip and So Sure as a delivery driver out of LaserShip's Port Chester facility. (ECF Nos. 22 ¶¶ 12, 67, 93; 102-3 at 10;

4

106-1 at 7, 27). After seeing a job posting for an opening with So Sure, West interviewed with and was hired for the delivery driver position by Matthew Sochor ("Sochor"), So Sure's President; West did not interview with anyone from LaserShip. (ECF Nos. 22 ¶ 81; 102-3 at 11–13; 106-1 at 12, 63). After signing a contract with So Sure, West received a LaserShip identification card and shirt bearing the LaserShip logo, which he was required to wear while delivering packages. (ECF Nos. 22 ¶ 70; 106-1 at 40).

After a week of training by a So Sure employee, West was assigned a van, which bore LaserShip's logo and was registered to and provided to him by So Sure. (ECF Nos. 22 ¶ 73; 106-1 at 37). He used LaserShip's Elli application on his phone to access his routes, packages, and deliveries. (ECF Nos. 22 ¶¶ 77, 87; 106-1 at 33). He did not communicate with any LaserShip employees at the Port Chester facility. (ECF No. 106-1 at 29, 43). On arriving at a delivery location, West scanned and uploaded to the Elli application a photograph of the packages he was assigned to deliver. (ECF No. 22 ¶ 89). If he encountered issues with a delivery, he communicated with Sochor. (ECF No. 106-1 at 20).

During his employment, West worked seven to nine hours per day, five days per week, for a total of 48–50 hours per week, although some weeks during the holidays, he worked more than 50 hours. (ECF Nos. 102-3 at 17–18; 106-1 at 57–58; see ECF No. 22 ¶¶ 94–95). West reported for work daily at 7:00 a.m. at LaserShip's Port Chester facility. (ECF Nos. 22 ¶¶ 71, 85; 102-3 at 14; 106-1 at 17). So Sure paid him via direct deposit and provided him with year-end Forms 1099. (ECF Nos. 22 ¶¶ 78, 80; 102-3 at 15). When West was hired, Sochor told him he would receive a flat rate of $450 to $500 per week, but his pay in fact varied between $320 to $620 per week. (ECF Nos. 22 ¶¶ 96–97; 106-1 at 12–13). He alleges that he was not paid the

requisite minimum and overtime wages throughout his employment. (ECF No. 22 ¶¶ 98–108). West does not know what other drivers were paid, what hours they worked, or whether they were treated as contractors or employees. (ECF No. 106-1 at 61). When he decided to end his employment in 2020, he did not notify anyone at LaserShip. (ECF No. 106-1 at 27–28). LaserShip did not provide him with any documents in connection with his employment. (ECF No. 106-1 at 52).

On or about February 17, 2021, West received a letter from the United States Department of Labor Wage and Hour Division ("DOL") informing him that DOL and LaserShip had reached a settlement of allegations that LaserShip violated the FLSA between December 30, 2017 and May 31, 2020, as a result of which West was entitled to $476.11 in "back wages." (ECF No. 22 ¶¶ 109–10). Because the letter informed him that acceptance of the payment of $476.11 would preclude a future claim under the FLSA, West did not accept the payment. (Id. ¶¶ 111–12).

### b. Clarke

From 2016 until February 2021 (with a two-and-one-half month gap), Clarke worked as a delivery driver out of LaserShip's Queens and, later, Mineola facilities. (ECF Nos. 22 ¶¶ 113–14, 117; 102-2 at 4; 106-2 at 8, 36, 56).[6] RGR's Richard Hickling ("Hickling") initially hired Clarke in 2016 as a delivery helper at a rate of $600 per week. (ECF Nos. 22 ¶¶ 114–15; 102-2 at 4, 7; 106-2 at 9). Although he worked at least 60 hours per week as a helper, Clarke was not paid

---

[6] Although Plaintiffs state in the Motion that Clarke worked at LaserShip's "Laurel Hill" facility (ECF Nos. 103 at 17; 111 at 10), Clarke did not refer to that facility in his testimony nor have Plaintiffs provided any other support for the assertion that Clarke worked at "Laurel Hill," which is not listed among the nine undisputed LaserShip facilities. (See ECF Nos. 102-2; 106-2; 106-3 ¶ 16).

overtime wages. (ECF No. 22 ¶¶ 118–19). After several months as a helper, Clarke began working on his own, driving a van owned by RGR eight hours per day, six days per week, for a total of 48 hours per week or more, for which he was paid $120 per day. (Id. ¶ 120; see ECF Nos. 102-2 at 17; 106-2 at 16). As a driver, Clarke drove routes that Hickling assigned, and recorded his deliveries on the Elli application. (ECF Nos. 102-2 at 14; 106-2 at 60). In December 2017, Clarke obtained his own vehicle and was paid per package, for a total of $800 to $900 per week, but did not receive an overtime premium for the hours over 40 that he worked. (ECF Nos. 22 ¶¶ 122–23; 102-2 at 7; 106-2 at 25).

Hickling, not LaserShip, paid Clarke's wages, and Hickling or his wife, not LaserShip, gave Clarke instructions about which days to report and the deliveries he was to make. (ECF Nos. 102-2 at 5–6, 12; 106-2 at 10, 55–56, 75, 84, 92, 108, 112). If he encountered any issues with his hours, pay, or deliveries, he communicated with Hickling. (ECF No. 106-2 at 25, 112). Clarke received Forms 1099 from RGR, not LaserShip. (Id. at 94, 104). Clarke estimated that Hickling employed over 80 other drivers, whom Clarke saw each day but did not interact with and was not aware how they were paid. (ECF Nos. 102-2 at 5, 8, 11, 16; 106-2 at 66–67). Clarke has not spoken with subcontractors from any LaserShip facility other than the Queens facility. (ECF No. 106-2 at 117–20).

### B. Procedural Background

On June 17, 2021, West filed the original complaint, naming LaserShip and So Sure. (ECF No. 1). On September 7, 2021, the FAC was filed, adding Clarke, Morgan, and Aboulessan

as plaintiffs and adding RGR and Steven as defendants. (ECF No. 22).[7] On September 17, 2021, LaserShip moved to compel arbitration as to Morgan and Aboulessan and to dismiss Plaintiffs' claims under the first-to-file rule, citing a previously-filed putative collective action alleging misclassification of subcontractors. (ECF Nos. 25 (the "MTC"); 28 (the "MTD"); see also ECF No. 29 at 4 (citing Yuan v. LaserShip, Inc., No. 20 Civ. 5484 (AMD) (RER) (E.D.N.Y.) (the "Yuan Action"))). On January 10, 2023, after LaserShip was dismissed with prejudice from the Yuan Action, LaserShip voluntarily withdrew the MTD. (ECF No. 55). On February 9, 2023, the Honorable Laura Taylor Swain stayed discovery pending a decision on the MTC. (ECF No. 58). On February 13, 2023, Chief Judge Swain granted the MTC and stayed the claims of Morgan and Aboulessan, and thereafter referred the action to the undersigned for general pretrial supervision. (ECF Nos. 59–60). On March 1, 2023, LaserShip filed an Answer, which it subsequently amended. (ECF Nos. 62; 73).

On May 3, 2023, following a conference with the parties, the Court entered an initial case management plan that limited the scope of discovery to West and Clarke, LaserShip's employment policies and procedures, and a Federal Rule of Civil Procedure 30(b)(6) deposition of LaserShip (together, "Phase I Discovery"). (ECF No. 76; see ECF min. entry May 3, 2023). Shortly thereafter, a certificate of default was entered as to So Sure and RGR, and Plaintiffs voluntarily dismissed their claims against Steven without prejudice. (ECF Nos. 79; 81–82). At the parties' request, the Court extended the Phase I Discovery deadline four times over nine months. (ECF Nos. 87; 95–100; 104; 105). During Phase I Discovery, Plaintiffs and LaserShip served and

---

[7] The Clerk of the Court initially rejected the FAC due to filing deficiencies. (ECF Nos. 18; 19; ECF min. entries Aug. 30 & Sept. 3, 2021).

responded to interrogatories and requests for production, produced nearly 2,500 pages of documents, and deposed West, Clarke, and LaserShip's Rule 30(b)(6) representative. (ECF No. 106-6; see ECF Nos. 102-1 – 102-3; 102-5; 106-1 – 106-2; 106-4).

On October 30, 2023, Plaintiffs filed the Motion, in which they ask the Court to provide notice to a collective comprised of all subcontractor delivery drivers at all nine of LaserShip's New York locations from June 17, 2018 to the present (the "Proposed Collective"). (ECF Nos. 101–03). Plaintiffs also ask the Court to compel LaserShip to disclose the names and contact information for members of the Proposed Collective, distribute notice of this action (the "Proposed Notice"), and equitably toll the statute of limitations as of September 17, 2021. (ECF Nos. 101 at 1–2; 102-6 – 102-9; 103 at 10–23). Pursuant to the briefing schedule that the Court adopted, on November 30, 2023, LaserShip filed the Opposition (ECF Nos. 106 – 106-6), and on December 22, 2023, Plaintiffs filed the Reply. (ECF Nos. 111–12).

### III. DISCUSSION

#### A. Legal Standard

Section 216(b) of the FLSA provides, in pertinent part:

> An action to recover . . . liability . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). While FLSA does not prescribe any procedures for approval of actions brought collectively by those who are "similarly situated," courts have long construed § 216(b) to grant district courts the authority to order that notice be given to potential plaintiffs informing them of the option to join the suit. See Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 169 (1989)

9

("[D]istrict courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs."); Braunstein v. E. Photographic Labs., Inc., 600 F.2d 335, 336 (2d Cir. 1978) (per curiam) ("Although one might read the [FLSA], by deliberate omission, as not providing for notice . . . it makes more sense, in light of the 'opt-in' provision of § 16(b) of the Act, 29 U.S.C. § 216(b), to read the statute as permitting, rather than prohibiting, notice in an appropriate case.").[8]  Although orders authorizing notice are sometimes referred to as orders "certifying" a collective action, FLSA does not contain a certification mechanism.  See Myers v. Hertz Corp., 624 F.3d 537, 555 n.10 (2d Cir. 2010).  Thus, where a court refers to "certifying" a collective action, it means only that the court has exercised its discretionary power "to facilitate the sending of notice" to similarly situated individuals.  Id.  The recognition of a collective action is thus equivalent to a "'case management' tool for district courts to employ in 'appropriate cases.'"  Id. (quoting Hoffmann-La Roche, 493 U.S. at 169).

The Second Circuit has approved a two-step process to evaluate whether to approve a collective action.  Myers, 624 F.3d at 554–55.  First, the court must make "an initial determination" whether to send notice to potential opt-in plaintiffs who may be "similarly situated" to the named plaintiffs as to whether the alleged FLSA violation occurred.  Id. at 555; see Damassia v. Duane Reade, Inc., No. 04 Civ. 8819 (GEL), 2006 WL 2853971, at *3 (S.D.N.Y. Oct. 5, 2006).  A plaintiff must make a "modest factual showing" that he and the potential opt-in plaintiffs "together were victims of a common policy or plan that violated the law."  Myers, 624 F.3d at 555 (quoting Hoffman v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997)).  At this first stage, the case has not typically "had the benefit of full discovery,"

---

[8] Internal citations and quotation marks are omitted from case citations unless otherwise indicated.

10

and thus courts consider the pleadings as well as supporting affidavits from the named plaintiff to evaluate whether he has made the "modest factual showing" that he is similarly situated to potential opt-in plaintiffs vis-à-vis the defendants' allegedly unlawful employment practices. Korenblum v. Citigroup, Inc., 195 F. Supp. 3d 475, 480 (S.D.N.Y. 2016); see Almonte v. Marina Ice Cream Corp., No. 16 Civ. 660 (GBD), 2016 WL 7217258, at *1 (S.D.N.Y. Dec. 8, 2016). "For similar reasons, courts do 'not resolve factual disputes, decide ultimate issues on the merits, or make credibility determinations' at the first stage." Korenblum, 195 F. Supp. 3d at 480 (quoting In re Penthouse Exec. Club Comp. Litig., No. 10 Civ. 1145 (NRB), 2010 WL 4340255, at *2 (S.D.N.Y. Oct. 27, 2010)).

At the second step, on a more complete record following discovery, the district court determines whether a "collective action" may proceed based on the named plaintiff having shown that the plaintiffs who opted in are actually "similarly situated" to him. Myers, 624 F.3d at 555. If the court is not convinced, it may "de-certify" the action and dismiss the opt-in plaintiffs' claims without prejudice. Id.

At the first step, a plaintiff's "burden of proof is low, [but] it is not non-existent—certification is not automatic.'" Romero v. H.B. Auto. Grp., Inc., No. 11 Civ. 386 (CM), 2012 WL 1514810, at *10 (S.D.N.Y. May 1, 2012); see Guan Ming Lin v. Benihana Nat'l Corp., 755 F. Supp. 2d 504, 509 (S.D.N.Y. 2010) (explaining that "plaintiff's supporting allegations must be specific, not conclusory"). A plaintiff cannot satisfy his burden at the conditional certification stage "by unsupported assertions," Myers, 624 F.3d at 555, or with "conclusory allegation[s.]" Morales v. Plantworks, Inc., No. 05 Civ. 2349 (DC), 2006 WL 278154, at *3 (S.D.N.Y. Feb. 2, 2006).

"Evidence is required." Peralta v. CB Hosp. & Events, LLC, No. 22 Civ. 10805 (GHW) (BCM), 2024 WL 916523, at *4 (S.D.N.Y. Mar. 4, 2024).

Where the parties have completed, or substantially completed, conditional collective certification discovery, courts in this District have applied "'a modest plus'" standard of review to motions under FLSA § 216(b). Korenblum, 195 F. Supp. 3d at 482 (quoting Creely v. HCR ManorCare, Inc., 789 F. Supp. 2d 819, 826 (N.D. Ohio 2011)); see Brown v. Barnes & Noble, Inc., No. 16 Civ. 7333 (RA), 2019 WL 5188941, at *2 (S.D.N.Y. Oct. 15, 2019) (finding that "modest plus" approach "made eminent sense" where parties had completed six months of discovery "targeted to conditional certification"). In applying the "modest plus" standard of review, courts "look beyond the pleadings and affidavits submitted by Plaintiffs and will consider the evidence submitted by both parties, albeit with an understanding 'that the body of evidence is necessarily incomplete.'" Korenblum, 195 F. Supp. 3d at 482 (quoting Creely, 789 F. Supp. 2d at 826). In reviewing the parties' evidence, "the Court still will not decide the ultimate merits of the case or issues better suited for a decertification motion." Id. Rather, the Court continues to assess whether "'it is more likely that a group of similarly situated individuals may be uncovered by soliciting opt-in plaintiffs'—in other words, that Plaintiffs have, through discovery, 'advanced the ball down the field.'" Id. (quoting Creely, 789 F. Supp. 2d at 827).

Notwithstanding the Second Circuit's precedent, LaserShip asks the Court to apply a "heightened" standard adopted by the Fifth and Sixth Circuits, which requires a plaintiff to "prove" that putative opt-in plaintiffs are similarly situated to the named plaintiffs. (ECF No. 106 at 19 (citing Swales v. KLLM Transp. Servs., L.L.C., 985 F.3d 430 (5th Cir. 2021) and Clark v. A&L Homecare & Training Ctr., LLC, 68 F.4th 1003 (6th Cir. 2023)). Apart from stating that this Court

"should" follow the heightened approach (ECF No. 106 at 19), LaserShip provides no authority from the Second Circuit—or any district court within it—applying such a heightened approach. The Court therefore declines LaserShip's request to apply a "heightened" standard, and instead, because the parties here engaged in nine months of discovery, including document production and depositions of both Plaintiffs and LaserShip's Rule 30(b)(6) representative (see § II.B, supra), applies the Second Circuit's "modest plus" standard.

### B. Application

Applying the "modest plus" standard, the Court finds that Plaintiffs have not shown that they are similarly situated to other members of the Proposed Collective, and therefore have not met their burden to show that conditional certification is warranted at this time.

As noted above, "[a]t this stage of the litigation, Plaintiffs need only proffer substantial allegations of a factual nexus between them and potential opt-in plaintiffs with regard to [an] FLSA violation." Taveras v. D & J Real Est. Mgmt. II, LLC, 324 F.R.D. 39, 41 (S.D.N.Y. 2018). "In cases involving employees at multiple business locations, 'courts consider whether the plaintiffs have made an adequate factual showing to support an inference that . . . a uniform policy or practice exists, and whether the locations share common ownership or management.'" Peralta, 2024 WL 916523, at *5 (quoting Trinidad v. Pret A Manger (USA) Ltd., 962 F. Supp. 2d 545, 558 (S.D.N.Y. 2013)). Plaintiffs argue that they are similarly situated to other subcontractor delivery drivers across all nine New York LaserShip facilities "in that they have all been misclassified as independent contractors by LaserShip and paid in violation of the FLSA[.]" (ECF No. 111 at 9). LaserShip responds that Plaintiffs have not shown, and cannot show, that they are similarly situated to "the 4,000 subcontractor drivers [who] worked for 130+ different

Delivery Service Providers who offered different compensation and other service terms, including different schedules, routes, equipment, expenses, and other material terms." (ECF No. 106 at 23).

The Court finds that Plaintiffs' evidence fails to meet their modest burden. As an initial matter, the Court notes that while Plaintiffs have supplied their deposition testimony, they have not, as is customary in support of a motion for conditional certification under the FLSA, submitted affidavits. See, e.g., Curry v. P&G Auditors & Consultants, LLC, No. 20 Civ. 6985( LTS) (SLC), 2021 WL 2414968, at *7 (S.D.N.Y. June 14, 2021) (noting that, at conditional certification stage, "courts consider the pleadings as well as supporting affidavits from the named plaintiff to evaluate whether he has made the 'modest factual showing' that he is similarly situated to potential opt-in plaintiffs vis-à-vis the defendants' unlawful employment practices") (quoting Korenblum, 195 F. Supp. 3d at 480). Some district courts in the Second Circuit have denied conditional collective motions based only on a named plaintiff's deposition testimony without other evidence showing the plaintiff's awareness of the circumstances of other similarly situated employees. See, e.g., Jenkins v. TJX Cos., 853 F. Supp. 2d 317, 321 (E.D.N.Y. 2012) (denying collective motion where named plaintiff provided only his "own deposition testimony, discussing his own personal experience[,]" without "other affidavits, depositions, or even hearsay evidence that he was actually aware of other" similarly situated employees).

The absence of affidavits or declarations from Plaintiffs would not itself warrant denial of the Motion, if their deposition testimony and other evidence adequately established that they were similarly situated to other members of the Proposed Collective. Despite having had nine months of discovery, however, Plaintiffs' evidence fails to do so. In his testimony, West admitted

that he did not communicate with any other drivers at the Port Chester facility, and did not know what other drivers were paid, what hours they worked, or whether they were treated as contractors or employees. (ECF No. 106-1 at 29, 43, 61). Similarly, Clarke did not substantively interact with any of the other drivers at the Queens and Mineola facilities and was not aware how they were paid. (ECF Nos. 102-2 at 5, 7, 11, 16; 106-2 at 66–67, 117—20). While the FAC alleges that Plaintiffs and the members of the Proposed Collective "worked fixed schedules in exchange for a flat weekly salary that amounted to less than the minimum wage and did not include overtime premiums" (ECF No. 22 ¶ 47), Plaintiffs did not in their deposition testimony or elsewhere "mention a single specific conversation that [they] had with any of [their] coworkers about [LaserShip's] compensation practices." Yang v. Asia Mkt. Corp., No. 17 Civ. 6886 (VEC), 2018 WL 2227607, at *2 (S.D.N.Y. Apr. 3, 2018) (denying conditional certification based on "extraordinarily general and vague" declaration by plaintiff); see Peralta, 2024 WL 916523, at *6 (denying conditional certification where the plaintiff's affidavit did "not identify a single coworker—by name, nickname, description, or otherwise—who worked more than 40 hours per week without any overtime premiums, or who complained about that"); Lopez v. St. Luke's Roosevelt Hosp. Ctr., No. 23 Civ. 2880 (JPC) (GS), 2024 WL 836480, at *5–6 (S.D.N.Y. Feb. 28, 2024) (denying conditional certification where plaintiff's affidavit contained only "conclusory allegations" about other employees' alleged unpaid overtime "[w]ithout more specific factual assertions"); Huertero-Morales v. Raguboy Corp., No. 17 Civ. 2429 (JCF), 2017 WL 4046337, at *2 (S.D.N.Y. Sept. 12, 2017) (denying conditional certification where plaintiff "provide[d] no details about his conversations with other employees and provide[d] no affidavits from other employees corroborating his claims"); Sanchez v. JMP Ventures, L.L.C., No. 13 Civ. 7264 (KBF), 2014 WL

465542, at *2 (S.D.N.Y. Jan. 27, 2014) (denying conditional certification where plaintiff did not "provide any detail as to a single such observation or conversation" with any other employees at locations where he worked).  Neither West nor Clarke named even a single other employee at the facilities where they worked who were similarly deprived of overtime under the FLSA. Accordingly, by failing to submit sufficient evidence that other drivers at the facilities where they worked had "any factual nexus similar to Plaintiffs[,]" Plaintiffs have not "clear[ed] the 'modest factual showing' required by the Second Circuit."  Fu v. Mee May Corp., No. 15 Civ. 4549 (KPF), 2016 WL 1588132, at *4 (S.D.N.Y. Apr. 20, 2016) (denying conditional certification); see Guan Ming Lin, 755 F. Supp. 2d at 510–11 (S.D.N.Y. 2010) (denying conditional certification of collective overtime claim where plaintiffs admitted that they were not aware of other employees who had not been paid proper overtime wages).

In sum, the Court does not hold that a collective may never be conditionally certified in this action, but rather that, at this time, Plaintiffs have failed to meet their "modest showing" to justify the notice and opt-in process under the FLSA.  See Castro v. Spice Place, Inc., No. 07 Civ. 4657 (RWS), 2009 WL 229952, at *5 (S.D.N.Y. Jan. 30, 2009) (denying conditional certification with leave to renew); Mendoza v. Casa de Cambio Delgado, Inc., No. 07 Civ. 2579 (HB), 2008 WL 938584, at *4 (S.D.N.Y. Apr. 7, 2008) (same).  "In light of the remedial purpose of the FLSA and the Court's broad discretionary power," however, the Court will GRANT Plaintiffs' request to direct LaserShip to produce the names and contact information, including address, phone number(s), and email addresses, for subcontractor drivers who worked at the Queens, Mineola, and Port Chester facilities from June 17, 2018 to the present.  Morales, 2006 WL 278154, at *4 (denying conditional certification but granting discovery of contact information of employees

who worked in same position as plaintiffs); see Mata v. Foodbridge LLC, No. 14 Civ. 8754 (ER), 2015 WL 3457293, at *4 (S.D.N.Y. June 1, 2015) (denying conditional certification but granting discovery of names, job titles, contact information, and dates of employment of 17 co-workers named in plaintiff's declaration); Guan Ming Lin, 755 F. Supp. 2d at 513-14 (denying conditional certification but granting discovery of names, addresses, and telephone numbers of delivery persons employed within the past three years); Flores v. Osaka Health Spa, Inc., No. 05 Civ. 962 (VM) (KNF), 2006 WL 695675, at *4 (S.D.N.Y. Mar. 16, 2006) (denying conditional certification but granting discovery of names of persons employed in same position as plaintiff during three years before action commenced).  The parties shall meet and confer to agree on the most efficient format for production of this information.

### IV. CONCLUSION

For the reasons set forth above, the Motion is GRANTED IN PART and DENIED IN PART as follows:

(1) Plaintiffs' request for conditional certification and court-authorized notice to the Proposed Collective is DENIED WITHOUT PREJUDICE to renewal.

(2) LaserShip shall produce to Plaintiffs the names, last known addresses, telephone numbers, and email addresses for subcontractor drivers at the Queens, Mineola, and Port Chester locations from June 17, 2018 to the present (the "Contact Information"), to the extent that the Contact Information is in LaserShip's possession, custody, and control.  The parties shall meet and confer to agree on the most efficient format of production of this information and a reasonable timeline to complete the production.

(3) By **May 6, 2024**, the parties shall file a joint letter reporting on the status of the production of the Contact Information and any remaining discovery in this action.

The Clerk of the Court is respectfully directed to close ECF No. 101.

Dated:     New York, New York
           April 4, 2024

                                                    SO ORDERED.

                                                    **SARAH L. CAVE**
                                                    **United States Magistrate Judge**