UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
DANIEL WEST, *et al.*, on behalf of themselves
and all others similarly situated,

               Plaintiffs,

      -against-                                    21-cv-5382 (LTS)(SLC)


LASERSHIP, INC., *et al.*,

               Defendants.
--------------------------------------------------------------------X

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ORDER
CLARIFYING REPRESENTATION**

MENKEN SIMPSON & ROZGER LLP
Jason Rozger, Esq.
225 Broadway, Suite 920
New York, New York 10007
Tel. (212) 509-1616
jrozger@nyemployeelaw.com

ATTORNEYS FOR PLAINTIFFS AND
PROPOSED CLASS

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES..............................................................................................ii

I.      INTRODUCTION.........................................................................................................1

II.     FACTS...........................................................................................................................1

III.    ARGUMENT ................................................................................................................4

        A. POINT I: THIS COURT SHOULD CLARIFY THAT THE WEST COUNSEL
           REPRESENTS ALL COLLECTIVE ACTION MEMBERS WHO OPT-IN................4

        B. POINT II:  EFFICIENCY ISSUES RELATED TO ANY HUNTER OPT-IN
           SEPARATE CASES CAN BE ADDRESSED BY COORDINATING DISCOVERY
           AS A RELATED CASE.................................................................................................6

        C. POINT III:  IF THE COURT PERMITS HUNTER COUNSEL TO REMAIN IN
           THIS CASE, IT SHOULD APPOINT WEST COUNSEL AS LEAD COUNSEL .......8

IV.     CONCLUSION ............................................................................................................13

CERTIFICATE OF COMPLIANCE ...............................................................................13

i

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Aguirre v. CDL Last Mile Sols., LLC,*
   No. A-3346-22, 2024 WL 762467 (N.J. Super. Ct. App. Div. Feb. 26, 2024) .......................... 12

*Accardi v. Honeywell Int'l Inc.,*
   No. 1:16-CV-03861 (SDA), 2018 WL 8221681 (S.D.N.Y. Jun. 28, 2018) .............................. 11

*Adams v. Inter-Con Sec. Sys., Inc.,*
   242 F.R.D. 530 (N.D. Cal. 2007) ............................................................................................ 4, 5

*Andryeyeva v. New York Health Care, Inc.,*
   33 N.Y.3d 152, 124 N.E.3d 162 (2019) .................................................................................. 11

*Bassett v. Tennessee Valley Auth.,*
   No. 5:09-CV-39, 2010 WL 3092251 (W.D. Ky. Aug. 5, 2010) ................................................ 5

*Bennett v. SimplexGrinnell LP,*
   No. 11-CV-01854-JST, 2015 WL 12932332 (N.D. Cal. Sept. 3, 2015).................................... 11

*D.H. Blair & Co. v. Gottdiener,*
   462 F.3d 95 (2d Cir. 2006)......................................................................................................... 9

*Deutsche Bank Nat. Tr. Co. v. WMC Mortg., LLC,*
   No. 3:12-CV-1699 CSH, 2014 WL 3824333 (D. Conn. Aug. 4, 2014) .................................... 7

*Fan v. PHL Variable Life Ins. Co.,*
   No. 18 CIV. 1288 (PAC), 2019 WL 10948633 (S.D.N.Y. May 29, 2019) ............................... 10

*Fanatics Collectibles Topco, Inc. v. Panini S.p.A.,*
   No. 23-CV-6895-LTS-VF, 2025 WL 753950 (S.D.N.Y. Mar. 10, 2025) .................................. 7

*Garcia v. Pancho Villa's of Huntington Vill., Inc.,*
   678 F. Supp. 2d 89 (E.D.N.Y. 2010) ........................................................................................ 4

*Gomez v. ERMC Prop. Mgmt. Co., LLC,*
   No. 3:13-CV-01081, 2014 WL 3053210 (N.D. Ohio July 7, 2014) ........................................... 5

*Grenawalt v. AT&T Mobility,*
   No. 11 Civ. 2664 (ALC), 2014 WL 4832318 (S.D.N.Y. Sep. 29, 2014).................................. 11

*Howard v. Don Coleman Advert. Inc.,*
   No. 16-CV-5060 (JLC), 2017 WL 773695 (S.D.N.Y. Feb. 28, 2017) ...................................... 12

*Huggins v. Chestnut Holdings Inc.,*
No. 18 CIV. 1037 (PAC), 2022 WL 44748 (S.D.N.Y. Jan. 5, 2022) ........................................ 11

*Hunter v. LaserShip, Inc.,*
No. 1:24-CV-02345-AJT-IDD, 2025 WL 1399195 (E.D. Va. May 14, 2025) .............. 1, 2, 9, 10

*Kelly v. Bluegreen Corp.,*
256 F.R.D. 626 (W.D. Wis. 2009) ........................................................................................ 4

*Lau v. Wells Fargo & Co.,*
No. 20-CV-03870 (AJN), 2021 WL 1198964 (S.D.N.Y. Mar. 30, 2021) .................................. 9

*Martinez v. Cargill Meat,*
*Sols.,* 265 F.R.D. 490 (D. Neb. 2009) ................................................................................. 5

*Meseck v. TAK Commc'ns, Inc.,*
No. CIV. 10-965 JRT AJB, 2011 WL 1190579 (D. Minn. Mar. 28, 2011) ............................... 5

*Mota v. Inter Connection Elec., Inc.,*
No. 20 CIV. 7530 (GBD), 2021 WL 3188336 (S.D.N.Y. July 28, 2021) ................................. 12

*Perechu v. Flaum Appetizing Corp.,*
No. 18-CV-1085-SJB, 2021 WL 9564384 (E.D.N.Y. Dec. 17, 2021) ...................................... 11

*Perrin v. Papa John's Int'l, Inc.,*
No. 4:09CV01335 AGF, 2011 WL 4815246 (E.D. Mo. Oct. 11, 2011) ..................................... 5

*Ramos v. SimplexGrinnell LP.,*
796 F. Supp. 2d 346 (E.D.N.Y. 2011) ................................................................................. 11

*Sam v. Stone Sec. Serv., Inc.,*
No. 1:24-CV-5620-GHW, 2025 WL 3269420 (S.D.N.Y. Apr. 10, 2025) ................................. 11

*Slaughter v. Caidan Mgmt. Co., LLC,*
317 F. Supp. 3d 981 (N.D. Ill. 2018) .................................................................................... 5

*Thompson v. World All. Fin. Corp.,* No. CV,
08-4951 AKT, 2010 WL 3394188 (E.D.N.Y. Aug. 20, 2010) ............................................. 9, 12

*Updite v. Delta Beverage Grp., Inc.,*
No. CIV A 06-0593, 2006 WL 3718229 (W.D. La. Dec. 15, 2006) .......................................... 5

*Walton v. Comfort Sys. USA (Syracuse), Inc.,*
155 F.4th 144 (2d Cir. 2025) .............................................................................................. 11

*Williams v. Epic Sec. Corp.,*
368 F. Supp. 3d 651 (S.D.N.Y. 2019) ................................................................................. 11

iii

## <u>Rules</u>

Fed. R. Civ. P. 23 ..................................................................................................... 9-12

Fed. R. Civ. P. 24 ......................................................................................................... 3

Fed. R. Civ. P. 42 ....................................................................................................... 7, 8

Local Civil Rule 7.1(c) ................................................................................................. 14

## <u>Other Authorities</u>

Manual for Complex Litigation (Fourth) § 10.221 ....................................................... 13

## I.    <u>INTRODUCTION</u>

Counsel in the nationwide Fair Labor Standards Act ("FLSA") collective action *Hunter v. Lasership, Inc.,* 24-CV-2345 (E.D. Va), after being ordered to do so by the *Hunter* court, has filed in this case the opt-in forms received in the *Hunter* case for those delivery drivers who are also members of the collective action in this case.  Not content with using the evidence developed in this case to get a nationwide collective action certified in *Hunter*, while a collective action motion in this case was pending, the *Hunter* counsel seeks to usurp the *West* counsel and represent the *Hunter* opt-in plaintiffs in this case.  Such a proposal is unworkable and contrary to the purpose of a collective action, and the Court should issue an order clarifying that any *Hunter* opt-in plaintiffs who wish to be represented by the *Hunter* counsel in New York must file a separate action.  In the alternative, this Court should appoint the undersigned firm as lead counsel for this action.

## II.    <u>FACTS AND PROCEDURAL HISTORY</u>

As the Court doubtless recalls, the Plaintiffs in both this case and *Hunter* are last mile delivery drivers who delivered packages for LaserShip, Inc. (now doing business as Ontrac Final Mile) and who bring claims for, *inter alia*, unpaid overtime wages in violation of the FLSA. ECF No. 215-1 at ⁋ 2. The *Hunter* plaintiffs, relying in part on the evidence developed and submitted by the Plaintiffs for the renewed conditional certification motion in this case,[1] moved for conditional certification of a national FLSA collective in the Virginia court. ECF No. 215-1 at ⁋ 3. Neither the

---

[1] *Hunter v. LaserShip, Inc*., No. 1:24-CV-02345-AJT-IDD, 2025 WL 1399195, at *4 (E.D. Va. May 14, 2025) ("Based on the Plaintiffs' declarations, and the *West* declarations, the Plaintiffs have made the modest factual showing required at this stage to authorize notice to an identified class of similarly situated persons.") (internal citations omitted).
,

*Hunter* plaintiffs nor the Defendant informed the Plaintiffs of the pending motion. ECF No. 215-1 at ¶ 4. On May 14, 2025, the *Hunter* court certified a nationwide collective of drivers that encompassed the New York collective, which at that time was the subject of a *sub judice* collective action motion. *Hunter,* 2025 WL 1399195, at *7-8.

On June 13, 2025, the *West* plaintiffs filed a motion to intervene in *Hunter* in order to dismiss or transfer this case to New York under the "first to file" rule, or in the alternative, to exclude any drivers who would be part of the *West* collective from the collective in this case. ECF No. 215-1 at ¶ 5. The *Hunter* plaintiffs opposed the motion, and on July 23, 2025, the *Hunter* court denied the *West* plaintiffs' motion. ECF No. 215-1 at ¶ 6. In doing so, the court made it clear that it did not intend to affect the collective action certification in the *West* case, and that if an FLSA collective action was certified in *West,* the court would take appropriate action to ensure any overlapping class members would be a part of the *West* case, ECF No. 215-1 at ¶ 6:

> The Court made clear from the very beginning that it has no intention of usurping or preempting the Southern District from proceeding with this case, and in the event that it decides to certify the New York class, that this court would take appropriate action to either decertify or transfer that group of plaintiffs to the New York court….

ECF No. 215-2 at p. 5, ln. 1-7. The *Hunter* court also made it clear that its decision granting conditional certification was done with the expectation of not impinging on the *West* collective if certified:

> The Court was explicit at the time that in recognition of the pending New York action, it would review, if and when the New York court certified the West plaintiffs as a class, that portion of its own certification, and would decertify or transfer those -- that part of the class to New York. The Court acted out of an interest in protecting the members of that class since the statute of limitations was running …. And certainly Judge Cave in the New York court should be advised that it's the Court's continuing view that if the case is

> certified, the Court would consider decertifying or transferring that
> portion of the class to New York to proceed as it deems appropriate.

ECF No. 215-2 at p. 14, ln. 11-15.

On September 5, 2025, this Court certified an FLSA collective action that comprises a subset of the nationwide collective action certified in *Hunter,* namely those delivery drivers who worked out of two of the Defendant's warehouses in New York from June 18, 2018, until the present. ECF No. 182 at 30.

The *West* plaintiffs then moved again in *Hunter* for leave to intervene, pursuant to Fed. R. Civ. P. 24(a), or in the alternative Fed. R. Civ. P. 24(b), for the purpose of moving the *Hunter* court to transfer that portion of that case's FLSA collective that are part of the collective certified in this case, to this case. ECF No. 215-3. The *Hunter* plaintiffs opposed the *West* plaintiffs' motion to intervene as moot, because after the motion was filed, ECF No. 215-1 at 6, the *Hunter* plaintiffs had filed an unopposed motion to transfer the overlapping opt-ins to the *West* case, which was granted. ECF No. 215-4. The *Hunter* court nevertheless granted the *West* plaintiff's motion to intervene for the purpose of clarifying the order transferring the New York opt-in plaintiffs to the *West* case. ECF No. 215-5. On the record, the *Hunter* court clarified that its view was that the *Hunter* counsel would have no role in the *West* case, but that decision was ultimately this Court's:

> I had no intention of designating or authorizing counsel with respect
> to these opt-in plaintiffs once they were transferred to the collective
> in New York. I really did view it as in the nature of a  ministerial act
> and they would take their place in the collective. My assumption was
> that they would just simply be part of that collective and be
> represented by the plaintiffs' lawyers in that action.  I understand your
> point. It seems to me, though, that once those plaintiffs are
> transferred, that you should apply to the court in New York if you

3

> think you are entitled to continue representing those people in some
> fashion.

ECF No. 215-6 at 7-8. Following this decision, the *Hunter* counsel filed the overlapping *Hunter*

consent forms in this case, ECF Nos. 189 and 210, along with their appearances, and indicated they

consider themselves to be representing those opt-ins in this case, ECF No. 192, and representing

that they had "individual retainer agreements with 75 people." ECF No. 215-7 at 11, ln. 3-4.

### III.    ARGUMENT

### POINT I: THIS COURT SHOULD CLARIFY THAT THE *WEST* COUNSEL REPRESENTS ALL COLLECTIVE ACTION MEMBERS WHO OPT-IN

As the Court acknowledged at the November 25, 2025 conference, the *Hunter* plaintiffs can

cite no authority for a court appointing multiple firms to represent one collective action. ECF No.

215-7 at 8-9. While there are cases holding that a collective action notice should include a statement

that an opt-in plaintiff may retain their own counsel in the lawsuit, *see, e.g., Garcia v. Pancho

Villa's of Huntington Vill., Inc.,* 678 F. Supp. 2d 89, 95 (E.D.N.Y. 2010) ("plaintiffs are directed to

modify the proposed Notice so that potential plaintiffs are informed that they may retain their own

counsel, should they choose to join the within litigation, as an alternative to plaintiffs' counsel's

firm"), there are none holding that multiple, competing firms can be appointed counsel for a

collective action in the same case. The reason for this was aptly summarized by *Adams v. Inter-

Con Sec. Sys., Inc.,* 242 F.R.D. 530 (N.D. Cal. 2007), which held that:

> Suggesting that a plaintiff may opt in and bring her own lawyer along
> would lead to confusion, inefficiency and cumbersome proceedings.
> If a class member wishes to have her own lawyer, she need not opt
> in; she can hire her own lawyer and proceed with her own action.
> Having a class action with numerous counsel for plaintiffs who by
> opting in are class members would make the lawsuit unwieldy, if not
> impracticable.

4

*Adams*, 242 F.R.D. at 541. Indeed, the weight of authority recognizes that FLSA opt-in plaintiffs who seek to retain their own counsel must do so in a separate action. *See Kelly v. Bluegreen Corp*., 256 F.R.D. 626, 632 (W.D. Wis. 2009) ("Anyone who knows how lawyers work knows that a collective action allowing each opt-in plaintiff to have his or her own lawyer is simply not workable. Potential plaintiffs who want a different lawyer are free to take action on [their] own") (cleaned up); *Meseck v. TAK Commc'ns, Inc*., No. CIV. 10-965 JRT AJB, 2011 WL 1190579, at *8 (D. Minn. Mar. 28, 2011) (same); *Updite v. Delta Beverage Grp., Inc.*, No. CIV A 06-0593, 2006 WL 3718229, at *9 (W.D. La. Dec. 15, 2006) (approving class notice stating "I acknowledge that I have been advised that I may, instead of filing the Consent, hire an attorney of my choice and file a separate suit."); *Perrin v. Papa John's Int'l, Inc.*, No. 4:09CV01335 AGF, 2011 WL 4815246, at *5 (E.D. Mo. Oct. 11, 2011) (approving class notice stating retaining own lawyer would require separate lawsuit); *Bassett v. Tennessee Valley Auth.,* No. 5:09-CV-39, 2010 WL 3092251, at *4 (W.D. Ky. Aug. 5, 2010) ("Additional counsel would only serve to complicate the procedural issues of this case."); *Martinez v. Cargill Meat Sols.,* 265 F.R.D. 490, 500 (D. Neb. 2009) ("In the interest of ease of case management and progression within this court, any individual plaintiffs seeking FLSA recovery under the core of operative facts at issue in this litigation, but through the representation of different counsel, can file a separate action."). If a class member wishes to have her own lawyer, she need not opt in; she can hire her own lawyer and proceed with her own action."); *Gomez v. ERMC Prop. Mgmt. Co., LLC*, No. 3:13-CV-01081, 2014 WL 3053210, at *2 (N.D. Ohio July 7, 2014) ("bringing additional counsel into this lawsuit likely would defeat the efficient operation of the litigation."); *see also Slaughter v. Caidan Mgmt. Co., LLC*, 317 F. Supp.

3d 981, 992 (N.D. Ill. 2018) (stating potential plaintiffs who want their own counsel can file own lawsuit).

Because, as set forth above, there can be only one counsel in this FLSA collective action, and the *West* counsel are already representing the collective in this case, this Court should simply issue an order clarifying that the undersigned *West* counsel are counsel for the collective in this case, that the *Hunter* counsel may appear in this case only for the limited purpose of filing the *Hunter* opt-in forms that overlap with the collective in this case, and that they have no further role in the representation of the Plaintiffs and collective action members in this case.  That was the procedure anticipated by the court in *Hunter* in declining to follow the first-to file rule against the *Hunter* plaintiffs; Judge Trenga made that clear on the record when he held "I had no intention of designating or authorizing counsel with respect to these opt-in plaintiffs once they were transferred to the collective in New York …. My assumption was that they would just simply be part of that collective and be represented by the plaintiffs' lawyers in that action."  ECF No. 215-6 at 7-8.  Thus, in claiming a role in this lawsuit, the *Hunter* plaintiffs seek to take advantage of Judge Trenga misunderstanding their intentions; had the *Hunter* plaintiffs revealed their plan to circumvent the first-to-file rule in order to arrogate this case to themselves, Judge Trenga's decision in that respect may have been very different.  If in fact some of the overlapping *Hunter* opt-in plaintiffs have a genuine desire to be represented by the *Hunter* counsel, they may withdraw from the *West* case and file their own lawsuit.  As shown below, the Court could prevent inefficiency and duplication of effort in such an instance by deeming the new lawsuit a related case and directing the parties to coordinate discovery.

**POINT II: EFFICIENCY ISSUES RELATED TO ANY *HUNTER* OPT-IN SEPARATE CASES CAN BE ADDRESSED BY COORDINATING DISCOVERY AS A RELATED CASE**

At the November 25, 2025 conference, the Court expressed concern at the prospect of the overlapping *Hunter* opt-ins who desired separate counsel having a separate lawsuit ECF No. 215-6 at 16-18.  The Court has numerous tools available to alleviate any inefficiency, inconsistency, or duplication of effort that might ensue from having a separate lawsuit for those *Hunter* opt-ins who desire one.

Fed. R. Civ. P. 42(a)(3) provides that where actions before the court involve a common question of fact, the court may, short of consolidation, "issue any other orders to avoid unnecessary cost or delay."  Such an order could consist of an order coordinating the discovery, in the discretion of the Court.  *See Deutsche Bank Nat. Tr. Co. v. WMC Mortg., LLC,* No. 3:12-CV-1699 CSH, 2014 WL 3824333, at *1 (D. Conn. Aug. 4, 2014) ("Consolidation of cases limited to discovery purposes falls under that subsection of the Rule. The issue is entrusted to the trial judges's [sic] discretion…."); *Fanatics Collectibles Topco, Inc. v. Panini S.p.A.,* No. 23-CV-6895-LTS-VF, 2025 WL 753950, at *9 (S.D.N.Y. Mar. 10, 2025) ("coordination of discovery and other appropriate pretrial matters between these related cases will be sufficient to ensure efficient case management at this stage").

In addition, a separate case for the *Hunter* opt-in plaintiffs would surely be a "related case" under the Court's Rules of the Division of Business Among District Judges, Rule 13(a), since the actions would concern the same or substantially similar parties, property, transactions, or events, and there would be substantial factual overlap.  This would allow the case to be heard by the same judges and would facilitate the coordination of discovery.  *Id.* at Rule 13(B)(2).

Given these tools, the Court's concerns that separate cases would be inefficient or unduly duplicative can be alleviated. The Court can direct the parties to coordinate discovery so that, for example, depositions are taken for both parties at the same time, and discovery requests can be coordinated to prevent duplication. Discovery disputes, on notice to counsel in both cases, could be resolved as to both cases. Inconsistent rulings would also be avoided. At the same time, separate cases would avoid conflicts between counsel concerning case management and strategy, and would avoid disputes over attorney's fees should the case settle or be determined in Plaintiffs' favor.

In addition, one specific concern the Court expressed, that multiple cases would ensue if the Court permitted separate cases, ECF No. 215-7 at 17-18, could be alleviated by consolidating all separate *Hunter* opt-out cases into one action under Rule 42(a). In any event, *Hunter* counsel would not have an interest in filing more than one separate action for the opt-outs who desired separate counsel and their own action. Thus, should the Court grant the Plaintiff's motion, the most likely outcome is that the collective action in this case proceeds alongside whichever opt-ins from the *Hunter* case, if any, wish to maintain their own, separate lawsuit. Such an outcome, given the impossibility of having multiple counsel representing the same collective action, is reasonable, protects the rights of all parties, and allows the Court to coordinate discovery and ameliorate any inefficiency and duplication.

## POINT III: IF THE COURT PERMITS *HUNTER* COUNSEL TO REMAIN IN THIS CASE, IT SHOULD APPOINT *WEST* COUNSEL AS LEAD COUNSEL

In the alternative, if the Court is not willing to allow the *Hunter* opt-ins desiring separate counsel to bring those claims in a separate lawsuit, then this Court should clarify that the *West* counsel are the lead counsel in this lawsuit.[2] There is a dearth of caselaw considering the standards

---

[2] *Hunter* counsel has not indicated a desire to be lead counsel in this case. ECF No. 192.

8

to apply in deciding between competing attorneys seeking to represent FLSA collectives. This is because in the usual course of proceedings, where there are competing FLSA collective actions filed, the first-to-file rule results in the cases being consolidated, or the later-filed case being stayed or dismissed, thus obviating the need for such a determination.[3]  In this case, because the *Hunter* plaintiffs opposed the application of the first-to-file rule which the *Hunter* court accepted, *see Hunter,* 2025 WL 1399195 at *5, and because the *Hunter* counsel insists on representing the *Hunter* New York opt-ins in this lawsuit, absent severance into separate cases, the Court should make a "lead counsel" decision in this FLSA collective action.

One case in this Circuit has examined this question.  In *Thompson v. World All. Fin. Corp.,* No. CV 08-4951 AKT, 2010 WL 3394188 (E.D.N.Y. Aug. 20, 2010), the court conditionally certified an FLSA collective action in a case that consolidated two separately filed and similar FLSA putative collective actions that were filed seven months apart.  *Id.* at *2-3.  The *Thompson* court, recognizing that "there is no controlling statute or case law setting forth the criteria for appointment of counsel under Section 216(b)," applied the standards for appointing class counsel under F.R.C.P. 23(g) by analogy, and held that the attorney for the earlier-filed case would be designated lead counsel for the FLSA collective. *Id*. at 9 n. 8.

---

[3]  The first-to-file rule requires that "where there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience or special circumstances giving priority to the second." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006). The rule is routinely applied to competing FLSA collective actions, resulting in the second-filed case being consolidated, dismissed, or stayed.  *Lau v. Wells Fargo & Co.,* No. 20-CV-03870 (AJN), 2021 WL 1198964, at *2 (S.D.N.Y. Mar. 30, 2021) (collecting cases).

The factors applied by the *Thompson* court were:

> (1) the work counsel has done in identifying or investigating potential claims in the action;
> (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action;
> (3) counsel's knowledge of the applicable law; and
> (4) the resources counsel will commit to representing the class.

*Id.* at *8–9. If the Court accepts that Rule 23(g)(1)(A) is sufficiently analogous to be applied to this issue, it should find that while *Hunter* counsel and *West* counsel are both experienced, knowledgeable, and have the resources to litigate a collective action such as this, here, as in *Thompson*, the extensive work counsel did in the first-filed *West* case to identify, investigate and litigate the claims in this action – work that made the *Hunter* collective certification possible – means the balance decisively tips in the *West* counsels' favor.

### The Work Counsel Has Done in Identifying or Investigating Potential Claims in the Action

This factor favors the counsel who has "engaged in more work" identifying and investigating the claims in the action. *Fan v. PHL Variable Life Ins. Co.,* No. 18 CIV. 1288 (PAC), 2019 WL 10948633, at *4 (S.D.N.Y. May 29, 2019). *West* counsel investigated the delivery drivers' claims prior to filing the initial Complaint in 2021 and continued to do so during the pendency of the action through documentary discovery and taking the 30(b)(6) deposition of Defendant, as well as by obtaining the contact information for the drivers working from the locations at issue in 2024. ECF No. 119. This required *West* counsel to overcome Defendant's Rule 72 objection to that production. ECF No. 129. *West* counsel used that contact information to locate witnesses, documentary evidence, and opt-in plaintiffs that not only supported, ECF Nos. 147-148, the collective action certification in this case, but allowed the *Hunter* plaintiffs to certify a nationwide collective action in that case. *Hunter,* 2025 WL 1399195 at *4. The *West* counsel also

successfully defended the Defendants' motion to dismiss the complaint, ECF Nos. 28, 29, 42, which was ultimately withdrawn, ECF No. 55, and opposed Defendant's motion to compel arbitration as to some of the named Plaintiffs. ECF No. 41.  All of this investigation and work done by *West* counsel was done before the *Hunter* counsel filed their case December 23, 2024.  In addition, all of the above work was performed in the service if this case, while the vast majority of the work done by the *Hunter* counsel was done in the service of their case, which also brings claims under Virginia state law.  Accordingly, this factor overwhelmingly favors the *West* counsel.

### *Hunter and West Counsel Have Comparable Experience, Knowledge, and Resources*

*West* counsel, Menken Simpson & Rozger LLP, along with its predecessor firms, has many years of experience successfully litigating individual, class and collective wage and hour cases, both in this district and around the country, and in the trial and appellate courts, and the firm has repeatedly been appointed class counsel under Rule 23.  *See, e.g., Walton v. Comfort Sys. USA (Syracuse), Inc.,* 155 F.4th 144 (2d Cir. 2025); *Andryeyeva v. New York Health Care, Inc.,* 33 N.Y.3d 152, 124 N.E.3d 162 (2019) (class counsel); *Ramos v. SimplexGrinnell LP.*, 796 F. Supp. 2d 346 (E.D.N.Y. 2011) (class counsel); *Williams v. Epic Sec. Corp*., 368 F. Supp. 3d 651 (S.D.N.Y. 2019) (noting partner Bruce Menken's "vast experience practicing wage-and-hour cases"); *Bennett v. SimplexGrinnell LP,* No. 11-CV-01854-JST, 2015 WL 12932332 (N.D. Cal. Sept. 3, 2015) (class counsel); *Accardi v. Honeywell Int'l Inc.*, No. 1:16-CV-03861 (SDA), 2018 WL 8221681 (S.D.N.Y. Jun. 28, 2018) (class counsel); *Rodriguez v. SimplexGrinnell LP,* No. 16C9605 (N.D. Ill.) (class counsel); *Tetley v. Johnson Controls Inc.,* 21-CV-3800 (JGK) (S.D.N.Y. Jun. 26, 2023) (class counsel); *Grenawalt v. AT&T Mobility*, No. 11 Civ. 2664 (ALC), 2014 WL 4832318 (S.D.N.Y. Sep. 29, 2014) (class counsel); *Sam v. Stone Sec. Serv., Inc.,* No.

11

1:24-CV-5620-GHW, 2025 WL 3269420, at *1 (S.D.N.Y. Apr. 10, 2025); *Huggins v. Chestnut Holdings Inc.,* No. 18 CIV. 1037 (PAC), 2022 WL 44748 (S.D.N.Y. Jan. 5, 2022); *Perechu v. Flaum Appetizing Corp.,* No. 18-CV-1085-SJB, 2021 WL 9564384, at *1 (E.D.N.Y. Dec. 17, 2021); *Mota v. Inter Connection Elec., Inc.,* No. 20 CIV. 7530 (GBD), 2021 WL 3188336, at *1 (S.D.N.Y. July 28, 2021); *Howard v. Don Coleman Advert. Inc.,* No. 16-CV-5060 (JLC), 2017 WL 773695, at *1 (S.D.N.Y. Feb. 28, 2017).  Notably, the firm is presently litigating a hotly-contested wage and hour lawsuit in New Jersey on behalf of another putative class of "last mile" delivery drivers, as in the present case.  *Aguirre v. CDL Last Mile Sols., LLC,* No. A-3346-22, 2024 WL 762467 (N.J. Super. Ct. App. Div. Feb. 26, 2024), *cert. denied,* 257 N.J. 589, 315 A.3d 1216 (2024), and *cert. denied,* 257 N.J. 590, 315 A.3d 1216 (2024).  *West* counsel accordingly has extensive knowledge not just of wage and hour cases generally, but specific and relevant experience litigating on behalf of delivery drivers.

Thus, *West* counsel has extensive relevant experience, and deep knowledge of the relevant law.  Counsel has also devoted substantial time and resources to this case, as the extensive discovery and motion practice already done in this case shows.  *West* counsel has also expended, and will expend, substantial sums of money investigating the case and disseminating the collective action notice to over 4,000 individual delivery drivers.  *West* counsel accordingly makes a strong showing on the second, third and fourth Rule 23(g)(1)(A) factors.  While the *Hunter* counsel is undoubtedly similarly experienced and knowledgeable, and able to commit resources, the fact that *West* counsel has committed substantially more work, over substantially more time, in this first-filed case, renders *West* counsel the only appropriate choice for lead counsel in this matter.  *See Thompson,*  2010 WL 3394188, at *9.

The Court should therefore order that *West* counsel be lead counsel and be responsible for formulating and presenting positions on substantive and procedural issues during the litigation, presenting arguments to the court, working with opposing counsel in developing and implementing a litigation plan, initiating and organizing discovery requests and responses, conducting the principal examination of deponents, employing experts, arranging for support services, and seeing that schedules are met. *See* Manual for Complex Litigation (Fourth) § 10.221.

## IV.    <u>CONCLUSION</u>

This Court should issue an order clarifying that any *Hunter* opt-in plaintiffs who wish to be represented by the *Hunter* counsel in New York must file a separate action.  In the alternative, this Court should appoint the undersigned firm as lead counsel for this action.

Dated: New York, New York
       December 19, 2025


                                        MENKEN SIMPSON & ROZGER LLP


                           By:     _____/s/_____
                                   Jason Rozger
                                   225 Broadway, Suite 920
                                   New York, New York 10007
                                   Tel. (212) 509-1616
                                   jrozger@nyemployeelaw.com

                                   ATTORNEYS FOR PLAINTIFFS AND
                                   PROPOSED CLASS

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Jason Rozger, hereby certify that the foregoing Memorandum of Law, containing 4,068 words, is in compliance with Local Civil Rule 7.1(c) ("Length of Memoranda of Law") of the Southern District of New York.

Dated: New York, New York
       December 19, 2025

<div align="center" style="margin-left:40%">

MENKEN SIMPSON & ROZGER LLP

By:    _____/s/_____
       Jason Rozger
       225 Broadway, Suite 920
       New York, New York 10007
       Tel. (212) 509-1616
       jrozger@nyemployeelaw.com

</div>

14