UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DANIEL WEST, et al., on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

LASERSHIP, INC., et al.,

Defendants.

CIVIL ACTION NO.: 21 Civ. 5382 (LTS) (SLC)

**OPINION & ORDER**

**SARAH L. CAVE,** United States Magistrate Judge.

## I.INTRODUCTION

In the latest chapter in this collective and putative class action brought by package delivery drivers seeking to recover from Defendant LaserShip, Inc. ("LaserShip") unpaid overtime and related relief under the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA"), and the New York Labor Law, §§ 190 et seq. ("NYLL"), we are faced with an unusual, unfortunate, and unnecessary battle between law firms seeking to represent the Collective that was conditionally certified in the Opinion and Order dated September 5, 2025. See West v. LaserShip, Inc., No. 21 Civ. 5382 (LTS) (SLC), 2025 WL 2555496, at *11, 13 (S.D.N.Y. Sept. 5, 2025) ("West II"); see also West v. LaserShip, Inc., No. 21 Civ. 5382 (LTS) (SLC), 2024 WL 1461403 (S.D.N.Y. Apr. 4, 2024) ("West I").[1]  Menken Simpson & Rozger LLP ("Menken") investigated and filed this action on behalf of Plaintiffs in 2021 and since the Collective was conditionally certified, has filed notices of consent to join the Collective on behalf of over 460 additional drivers.[2]  Outten & Golden LLP ("Outten") are counsel for a nationwide collective of drivers in a parallel, but later-filed, action in

---

[1] Unless stated otherwise, capitalized terms have the same meaning as in West II.  Internal citations and quotation marks are omitted from case citations unless otherwise indicated.
[2] (Dkt. Nos. 1; 221; 222; 223; 224; 225; 226; 227; 228; 229; 231; 232; 238; 239; 240; 242; 244; 247; 248; 249; 250; 254; 260; 261; 264; 265; 266; 267; 268; 269; 272; 273; 274; 275; 276; 277; see Dkt. No. 278).

the Eastern District of Virginia, <u>Hunter v. Lasership, Inc.</u>, 24 Civ. 2345 (E.D. Va.) (the "Hunter Action")), those of whom fall within the Collective (the "Hunter Plaintiffs") were recently transferred to this action.  (Dkt. No. 218-3).  Menken now moves for an order clarifying that it <u>alone</u> represents the Collective (Dkt. No. 215 ("Menken's Motion")), while Outten cross-moves for an order appointing it <u>and</u> Menken as "co-lead counsel" for the Collective and as "interim class counsel."  (Dkt. No. 234 ("Outten's Motion," with Menken's Motion, the "Motions")).

For the reasons set forth below, Menken's Motion is **GRANTED** and Outten's Motion is **DENIED**.

## II.BACKGROUND

We presume the reader's familiarity with the background of this action and the Hunter Action set forth in <u>West I</u> and <u>West II</u> and incorporated here by reference.  <u>See West II</u>, 2025 WL 2555496, at *1–7; <u>West I</u>, 2024 WL 1461403, at *1–6.  We discuss only the additional background necessary to decide the Motions.

### A.  Arrival of the Hunter Plaintiffs

After this Court certified the Collective in <u>West II</u>, Plaintiffs filed a motion to intervene in the Hunter Action for the purpose of seeking to sever and transfer the Hunter Plaintiffs to this action.  (Dkt. No. 218-2 (the "Motion to Intervene")).[3]  On October 10, 2025, the Honorable Anthony J. Trenga (E.D. Va.) entered an order that "deemed transferred" to this Court in this action the Hunter Plaintiffs, <u>i.e.</u>, "[t]he FLSA claims of drivers who delivered packages out of

---

[3] This was Plaintiffs' second motion to intervene in the Hunter Action; in the first, filed on June 13, 2025 and denied on July 23, 2025, they sought to dismiss or transfer the Hunter Action to this Court under the "first to file" rule or, in the alternative, exclude the members of the Collective from the collective certified in the Hunter Action.  (Dkt. Nos. 215-1 ¶¶ 5-7; 215-2 at 14).

[LaserShip's] Maspeth and Mineola warehouses" who had previously opted in to the Hunter Action.   (Dkt. No. 218-3 ¶ 1 (the "Transfer Order")).   On October 23, 2025, over Outten's opposition, Judge Trenga granted the Motion to Intervene solely to clarify the Transfer Order, stating:

> . . . I had no intention of designating or authorizing counsel with respect to these opt-in plaintiffs [Hunter Plaintiffs] once they were transferred to the collective in New York.  I really did view it as in the nature of a ministerial act and they would take their place in the collective.  My assumption was that they would just simply be part of that collective and be represented by the plaintiffs' lawyers in that action. . . It seems to me, though, that once those plaintiffs are transferred, that you [Outten] should apply to the court in New York if you think you are entitled to continue representing those people in some fashion.

(Dkt. No. 218-5 at 7–8; see Dkt. No. 218-3).

On November 10, 2025, Outten filed the Transfer Order along with the Hunter Plaintiffs' consent to join forms, in which the Hunter Plaintiffs designated Outten and McGillivary Steele Elkin LLP ("MSE") as their counsel, and notices of appearance on behalf of the Hunter Plaintiffs. (Dkt. Nos. 189–191).

At a conference on November 25, 2025 in which Outten participated, the Court observed that it had "already certified [Menken] as counsel for the [C]ollective[] and for the [P]laintiffs in this case[,]" and expressed "doubt[s] that we need three firms here representing this relatively small collective involving workers at two of the defendants' warehouses[,]" but invited Outten to explain why it "should be allowed to appear as counsel for the newly arriving Hunter [P]laintiffs now that they're part of this [C]ollective for which we already have counsel appointed[.]"  (Dkt. No. 218-6 at 5).   Outten explained that the 108 Hunter Plaintiffs' consent-to-join forms designated Outten as their counsel and did not limit that representation to the Hunter Action. (Id. at 6).   Of the 108 Hunter Plaintiffs, Outten represented that it had "individual retainer

3

agreements with 75[.]" (Id. at 11).  The Court pointed out, however, that "at the time [the Hunter Plaintiffs] made that choice, they didn't know that their case was going to be here in another state, in another district, with another firm that was already representing the [P]laintiffs." (Id. at 14).  For its part, Menken asserted that it represented Plaintiffs and the Collective, and "if someone wanted to choose a different firm who is a collective action member, they can do that, but it has to be a separate case[.]" (Id. at 15).  Menken proposed as an alternative an updated notice to the Collective informing members that they are represented by Menken in this action, but if a member chose different counsel, they would have to bring a separate case.  (Id.).[4]  After it became apparent that a consensual resolution was not possible, the Court set a briefing schedule for the Motions.  (Dkt. Nos. 207; 218-6 at 29–31).

### B. The Motions

#### 1. Menken's Motion

In Menken's Motion, lead attorney Jason J. Rozger, Esq., attests that in seeking collective certification in the Hunter Action, the Hunter Plaintiffs, without notice to Menken, relied in part on the evidence Plaintiffs here submitted in support of the second motion for collective certification.  (Dkt. No. 218 ¶¶ 3–4; see Dkt. Nos. 217 at 15–16; 245 at 7).  See Hunter v. LaserShip, Inc., No. 24 Civ. 2345 (AJT) (IDD), 2025 WL 1399195, at *2 (E.D. Va. May 14, 2025) ("Hunter I") ("Based on the declarations filed in this and the West action, [p]laintiffs contend that they have sufficiently alleged and established at this stage of the litigation that [LaserShip] jointly employs the [p]laintiffs with the Master Contractors[.]").  Menken emphasizes the work that it

---

[4] The most recent notice to the Collective stated: "You can join this lawsuit by representing yourself or by counsel of your own choosing.  To do so, you or your attorney must file the appropriate documents with the Court." (Dkt. No. 206-2 at 2).

4

performed including gathering driver affidavits, obtaining the Contact Information for drivers at three of LaserShip's warehouses, contacting those drivers, responding to LaserShip's discovery requests, and defending the drivers' depositions.  (Dkt. Nos. 217 at 15–16; 245 at 7–8).  See West I, 2024 WL 1461403, at *8 (ordering production of Contact Information).  Menken also describes the "many years of experience" it, along with its predecessor firms, has in "successfully litigating individual, class, and collective wage and hour cases, both in this district and around the country," and lists more than a dozen occasions on which it has been appointed class counsel under Rule 23.  (Dkt. No. 217 at 16–17).  Finally, Menken notes that it "is presently litigating a hotly-contested wage and hour lawsuit in New Jersey on behalf of another putative class of 'last-mile' delivery drivers, as in the present case."  (Id. at 17).

### 2.  Outten's Motion

In Outten's Motion, Outten asks the Court to deny Menken's Motion, and appoint Menken and Outten as co-lead counsel for the Collective and as interim class counsel. (Dkt. No. 234).  In support, Outten submits two attorney declarations attesting that 75 of the 135 Hunter Plaintiffs have signed individual retainer agreements with Outten and MSE, describing those firms' experience with representing employees in "hundreds" of class and collective employment actions and other complex litigation, awards and recognitions, and the qualifications and experience of the attorneys working on this action.  (Dkt. No. 236 ¶¶ 4–18; 237).  On reply, Outten submitted an additional declaration describing its eDiscovery and Litigation Technology Department and summarizing the work it has performed in the Hunter Action and on behalf of the Hunter Plaintiffs, as well as two declarations from attorneys at other

firms describing their positive experience acting as co-counsel with Outten in other litigation. (Dkt. Nos. 256–58).

### III. DISCUSSION

#### A. Legal Standard

"[T]here is no controlling statute or case law setting forth the criteria for appointment of counsel under Section 216(b)[.]" Thompson v. World Alliance Fin. Corp., No. 08 Civ. 4951 (AKT), 2010 WL 3394188, at *9 n.8 (E.D.N.Y. Aug. 20, 2010). (See Dkt. No. 270 at 4 (noting that Thompson appeared to be the sole case addressing dispute over appointment of counsel at collective stage)). We follow those who have turned to Federal Rule of Civil Procedure 23(g) for guidance in resolving disputes over which plaintiffs' firm should be appointed as lead counsel for a collective under Section 261(b). Id. Under Rule 23(g)(1)(A), the Court considers the following factors: (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class[.]" Fed. R. Civ. P. 23(g)(1)(A). The Rule also permits the Court to consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[.]" Fed. R. Civ. P. 23(g)(1)(B); see Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 375 (S.D.N.Y. 2007) (discussing Rule 23(g) factors in appointing counsel for Section 216(b) collective and Rule 23 class).

#### B. Application

Outten points to no precedent for appointing multiple competing firms as counsel for a collective, nor has our research located one. (Dkt. Nos. 213 at 8–9, 16; 245 at 2, 4–6; 270 at 4).

The only case to address a similar dispute, Thompson, applied the Rule 23(g) factors and chose the firm that had filed the earlier case and in whose favor the factors otherwise weighed. See 2010 WL 3394188, at *8–11. Based on our analysis of the Rule 23(g)(1)(A) factors below, we conclude that Menken is the appropriate firm to represent the Collective and defer any analysis of appointing class counsel until any motion for class certification under Rule 23.

### 1. Work Done Identifying or Investigating Potential Claims

The first consideration under Rule 23(g)(1)(A) is "the work counsel has done in identifying or investigating potential claims in the action." Fed. R. Civ. P. 23(g)(1)(i). Menken argues that it "has done more work for a longer period of time" on behalf of the Plaintiffs and the Collective, and that the work Outten performed in the Hunter Action "was based in large part on the work [Menken] did in this case." (Dkt. No. 245 at 2; see id. at 7). At present, Menken has filed consent-to-join forms on behalf of over 460 members of the Collective.[5]

Outten attests that it "has devoted over 2,000 hours" to the Hunter Action, "including approximately 260 hours to substantial investigative efforts, correspondence with New York drivers, legal analysis of their rights, and representing their rights." (Dkt. No. 256 ¶ 14; see Dkt. No. 236 ¶ 20 (attesting to "hundreds of hours" to litigating wage and hour claims against LaserShip)). Outten represents approximately 135 members of the Collective. (Dkt. No. 256 ¶¶ 11–12).

While we acknowledge Outten's substantial efforts in the Hunter Action, we note that Outten filed the Hunter Action in 2024, whereas Menken filed this action in June 2021, reflecting

---

[5] (Dkt. Nos. 1; 221; 222; 223; 224; 225; 226; 227; 228; 229; 231; 232; 238; 239; 240; 242; 244; 247; 248; 249; 250; 254; 260; 261; 264; 265; 266; 267; 268; 269; 272; 273; 274; 275; 276; 277; see Dkt. No. 278).

that Menken's identification and investigation work on behalf of Plaintiffs and the Collective stretches back approximately five years, three years longer than Outten's. (See Dkt. No. 1; Hunter Action, Dkt. No. 1). In addition, while Outten's work has been nationwide and Menken's has focused on New York, we credit Menken's argument that "the extensive driver affidavits and documents Plaintiffs filed with their renewed collective action motion" in this action (Dkt. No. 245 at 7) were no small contributing factor to Outten's success in certifying a nationwide collective in the Hunter Action. See Hunter I, 2025 WL 1399195, at *4.

Accordingly, because Menken's work in identifying and investigating potential claims stretches back longer and inured to the benefit of Outten in the Hunter Action, we conclude that the first Rule 23(g) factor weighs in favor of Menken. See Thompson, 2010 WL 3394188, at *9–10 (finding that work performed by firm that filed earlier of two wage-and-hour actions weighed in favor of appointing that firm as counsel for collective); see also In re Coinbase Customer Data Sec. Breach Litig., No. 25 Md. 3153 (ER), 2025 WL 3496322, at *3 (S.D.N.Y. Dec. 5, 2025) (selecting firm that had "put more effort into identifying and investigating potential claims in this action.").

### 2. Experience and Knowledge in Complex Litigation Involving Similar Claims

Considering the second and third Rule 23(g) factors together — experience handling complex litigation involving similar claims and knowledge of the applicable law, see Thompson, 2010 WL 3394188, at *10 (considering second and third factors together) — both Menken and Outten point to many examples over many years of their handling of wage-and-hour cases, whether individual, class, or collective, in this District and elsewhere. (Dkt. Nos. 217 at 16–17; 236 ¶¶ 10–13). We find that both Motions "feature attorneys with laudable expertise in handling class actions in general" and collective wage-and-hour litigations on behalf of last-mile delivery

drivers in particular, such that the second and third factors do not weigh strongly for or against either firm. In re London Silver Fixing, Ltd., Antitrust Litig., Nos. 14 Md. 2573 (VEC) et al., 2014 WL 12993538, at *1 (S.D.N.Y. Nov. 25, 2014) (finding that second and third factors were not decisive in Rule 23(g)(1)(A) analysis).

### 3. Resources

As to the fourth factor — resources counsel will commit to representing the Collective — again, the firms are quite comparable. Menken has vigorously litigated this action on behalf of Plaintiffs for almost five years, handled motion practice, conducted discovery, and progressed the case toward resolution, in the process of which it "expended, and will expend, substantial sums of money investigating the case and disseminating the collective action notice to over 4,000 individual delivery drivers." (Dkt. No. 217 at 17). Over at least two years, Outten has similarly devoted and will continue to devote substantial resources to the Hunter Plaintiffs' claims as well as those of the nationwide collective in the Hunter Action. (Dkt. Nos. 236 ¶¶ 19–20; 256 ¶¶ 11–16). One distinction between the firms is the existence of Outten's five-person eDiscovery group, which presumably would assist Outten with electronic discovery in this action going forward. (Dkt. Nos. 236 ¶ 19; 256 ¶¶ 4–10). While this additional resource weighs slightly in favor of Outten, we find ultimately that the relative size of the two firms is not determinative given the Court's experience to date with Menken's dedication of sufficient resources to this action and the relative size of the Collective in comparison to the Hunter Action. See London Silver Fixing, 2014 WL 12993538, at *1–2 (selecting firm as interim lead counsel in antitrust class action despite it being "smaller than the other three firms" seeking appointment).

9

### 4. Other Matters Pertinent to the Firms' Ability to Represent the Collective

Of the four Rule 23(g)(1)(A) factors, the first weighs in favor of Menken, the second and third are neutral, and the fourth weighs slightly in favor of Outten but not decisively so. We therefore turn to "other matter[s] pertinent" to the firms' ability to represent the Collective. Fed. R. Civ. P. 23(g)(1)(B). In this regard, we have efficiency concerns about Outten's proposed representation. As noted above, Outten's Motion proposes that not one, not two, but three firms — Menken, Outten, and MSE — coordinate in the representation of the Collective. (Dkt. No. 234). The Collective, however, involves drivers from only two of LaserShip's New York warehouses. See West II, 2025 WL 2555496, at *11, 13. While there has been some suggestion that a potential class in this action may include drivers from LaserShip's other New York warehouses, (see Dkt. No. 236 ¶ 8; see generally Dkt. No. 103), no such class has been formally proposed, let alone certified, and even if it were, we are skeptical that three firms are necessary to fairly and adequately represent even a statewide class. In this Court's observation, Menken has to date proved itself in broad contact with members of the Collective, having filed over 460 consent-to-join forms, nearly four times as many as Outten.[6] In contrast, although Menken's filings in this matter were a matter of public record, Outten's use in the Hunter Action of the materials Menken submitted in support of the second collective motion, without notice to or permission of Menken, is, at a minimum, discourteous, and has led to a level of animosity and distrust between the firms that renders us highly skeptical of their ability to collaborate efficiently and cohesively without regular Court intervention. (See Dkt. No. 270 at 6). While Outten touts

---

[6] (Dkt. Nos. 1; 221; 222; 223; 224; 225; 226; 227; 228; 229; 231; 232; 238; 239; 240; 242; 244; 247; 248; 249; 250; 254; 260; 261; 264; 265; 266; 267; 268; 269; 272; 273; 274; 275; 276; 277; see Dkt. No. 278).

10

its ability to "work[] in collaboration with other firms[,]" (Dkt. No. 256 ¶ 10; see Dkt. Nos. 257–58), this case has not been an example, as its involvement has required two additional court conferences, (Dkt. Nos. 213; 270), and this round of Motions, which have diverted the Court's and the parties' resources away from progressing this action toward a resolution.

We appropriately factor into our analysis these concerns about efficiency, see Coinbase, 2025 WL 3496322, at *3, and given those concerns, conclude that the totality of the factors under Rule 23(g)(1)(A) and (B) weigh in favor of designating Menken as lead counsel for the Collective.

### 5. Outten's Request for Appointment of Interim Class Counsel

Under Rule 23(g)(3), the Court "may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). "The designation of interim class counsel is especially encouraged in cases . . . where there are multiple, overlapping class actions that require extensive pretrial coordination." In re LIBOR-Based Fin. Instruments Antitrust Litig., No. 11 Md. 2262 (NRB), 2011 WL 5980198, at *2 (S.D.N.Y. Nov. 29, 2011) (appointing interim class counsel for 23 related antitrust actions); see Estate of Sherlip v. Morgan Stanley, No. 24 Civ. 4571 (VEC), 2025 WL 2097872, at *5 (S.D.N.Y. July 25, 2025) (appointing interim class counsel for five putative class actions against financial institutions related to their cash sweep practices); London Silver, 2014 WL 12993538, at *2 (appointing interim class counsel for eight cases in multi-district antitrust litigation). Interim class counsel in complicated cases "may be helpful in clarifying responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement."

In re Bank of Am. Corp. Sec., Derivative & ERISA Litig., 258 F.R.D. 260, 270–71 (S.D.N.Y. 2009) (citation modified).

Given the grant of Menken's Motion and designation of that firm as lead counsel for the Collective as well as the size of the Collective and Menken's track record of capably and efficiently managing the claims of the Collective to date, we do not deem appointment of interim class counsel necessary.  This action, which, at present, involves claims of drivers at only two of LaserShip's New York warehouses, is of a much more manageable scale and character than the cases above, involving five or more putative class actions against large financial institutions. Accordingly, Outten's request that we appoint interim class counsel is denied.

### IV. CONCLUSION

For the reasons set forth above, Menken's Motion is **GRANTED** and Outten's Motion is **DENIED**.  The Clerk of the Court is respectfully directed to close Dkt. Nos. 215, 216, and 234.

Dated:        New York, New York
              March 5, 2026

SO ORDERED.

_____
SARAH L. CAVE
United States Magistrate Judge

12